UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIANA SIEGAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-04306 |
| GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY, | ) ) ) ) | Hon. Sharon J. Coleman |
| Defendants. | ) ) ) | |

**GEICO'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants GEICO Casualty Company, GEICO Indemnity Company and GEICO General

Insurance Company (collectively, "GEICO"), by and through its attorneys Duane Morris LLP,

respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 12(b)(6),

for dismissal of Plaintiff's Complaint with prejudice and, in support thereof, state as follows:

## INTRODUCTION

Plaintiff has auto insurance through GEICO. During the pandemic, GEICO advised that it

would give its policyholders a "15% discount on new and renewal policies." (Cmplnt, ¶ 4.)

Plaintiff renewed her policy with GEICO in the midst of the pandemic for the period beginning

June 1, 2020, and received this discount. Plaintiff has not alleged that GEICO violated any

statutory mandate. Instead, Plaintiff now contends that a 15% discount over a six-month period,

which continues for policies issued or renewed through Oct. 8, 2020, is inadequate. Plaintiff

argues that this purported inadequacy somehow breached her insurance contract (Count I), unjustly

enriched GEICO (Count II), frustrated the purpose of the policy (Count III), and violated the

Illinois Consumer Fraud Act (Counts IV and V).  Plaintiff also seeks to certify a class of GEICO policyholders for the same claims.

The Complaint should be dismissed because it fails to state a claim as a matter of law. GEICO did not breach any term of its insurance contract, and it provided full transparency to Plaintiff on her discount.  GEICO voluntarily provided this discount to its policyholders.  GEICO was under no contractual, statutory, or regulatory duty to make any "giveback" at all.

Furthermore, GEICO never made a false or deceptive statement about the "giveback."  It offered and gave a 15% discount, and provided a "Giveback Estimator" for policyholders to view their discounts to the dollar.  No reasonable policyholder would have understood the discount to be anything other than 15%.  The unjust enrichment claim fails too because it is premised on GEICO's statements that were, in fact, true and honored.  And, finally, there is no actual damage from the discount.  Instead, Plaintiff benefited from the discount and renewed her policy in the midst of the pandemic with full access to the amount of premium being charged (which dropped from $945.57 to $900.66 on renewal, and then which was reduced further by the 15% discount to $765.56, as alleged in the Complaint at ¶ 28).

At root, Plaintiff is asking the Court to allow a jury trial to retroactively reform clear and unambiguous policy terms, and to change the auto insurance premiums of thousands of Illinois policyholders.  This is far out of bounds.  There is no legal basis for retroactive contract reformation and recalculation of premium. This is especially so where Plaintiff could have canceled her auto insurance policy at any time, received a *pro rata* refund, and signed up with another insurer for a different deal.

Such a Complaint has an unfair one-sided perspective.  Plaintiff considers only the circumstance of unexpectedly lesser auto-damage losses.  But this is the realm of insurance:

2

unexpected events run in both directions. In the next year, or even during the remainder of Plaintiff's current policy period, there may be unexpectedly greater auto-damage losses due to great floods, wildfires, hail storms, or more sophisticated auto theft enterprises, to name just some of the fortuities of insurance risk. If there are unexpectedly greater auto-damage losses from such events, one can be sure that there will be no class-action complaints seeking to retroactively ***increase*** auto-insurance premiums because GEICO had to pay more than it expected to pay. It is not fair or prudent – and it is certainly not legal – to revise insurance premiums after the fact in either direction. Indeed, one of Plaintiff's cars could be wrecked or stolen tomorrow, and GEICO could not (and would not) then seek to retroactively increase her premium on the basis of the unexpected event.

Such regulatory issues about premiums and rating are for the state legislature. And, here, the state legislature has decided that "open competition in auto insurance rates is workable and beneficial." *Corbin v. Allstate Corp.,* 140 N.E.3d 810, 813 (5th Dist. 2019). The General Assembly could have chosen to enact statutes that would allow lawsuits for retroactive changes to premiums in auto insurance. The default rule, as in any commercial transaction, however, is that the purchase price does not later change unless there is a term in the contract that dictates that result.

### THE COMPLAINT'S ALLEGATIONS

Plaintiff is a Chicago resident who had two GEICO auto insurance policies. (Cmplnt, ¶ 9). Plaintiff does not allege that GEICO violated a single term of her insurance policies. Plaintiff does not allege that GEICO violated a single insurance statute or regulation. Instead, Plaintiff's complaint is that GEICO's 15% discount for six months was not large enough.

The Complaint details the spread of COVID-19 and the Illinois Governor's stay-at-home orders. (*Id.,* ¶¶ 10-16). Third parties reported decreased driving during the pandemic. (*Id.,* ¶¶ 17-

3

20).   GEICO allegedly collected "excessive premiums" which "led to a substantial windfall in profits."  (*Id.*, ¶ 21).   A third party allegedly estimated that "at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall" for roughly ***six weeks***.  (*Id.*, ¶ 22).

Plaintiff then complains about the "GEICO Giveback" during the pandemic, which covers ***six months***.  (*Id.*, ¶ 24).   Under the "GEICO Giveback," GEICO advised policyholders that it will provide a 15% discount on new and renewal policies for a six-month period.  (*Id.*)   GEICO's website explained:

> *How much is the credit?*
>
> The credit will be 15% of your posted new business or renewal amount that are not issued through a required ceded or AIP insurance plan.  See "What is a ceded or AIP insurance plan for ceded policies"?  Current policyholders do not need to do anything to receive this credit.
>
> *How will I get the credit?*
>
> You don't need to do anything.  It will be automatically applied to your next renewal, or if you purchase a new policy, to your second payment.  We encourage you to monitor your policy on the GEICO Mobile app or geico.com.  Once the credit has been applied, you will be able to verify it online.

Exhibit 1 (GEICO website FAQs on the Giveback).

GEICO also provided the "GEICO Giveback Credit Estimator" on its website:

> The GEICO Giveback Credit Estimator
>
> GEICO is providing a 15% credit to our GEICO Auto, Motorcycle, and RV policyholders. Existing policyholders who qualify for the credit can use this tool to determine the date and approximate credit amount you'll receive.
>
> What is the length of your policy?
>
>  6 months

☐ 12 months

Current Policy Effective Date?

How much is your total premium?

$ [        ]

Calculate

Exhibit 1 (GEICO website).

Plaintiff received the 15% discount.  (*Id*., ¶ 29) ("GEICO only gave Plaintiff an inadequate 15% credit").  Plaintiff alleges that GEICO's "refund program was inadequate."  (*Id*.).  In support, Plaintiff alleges that the Consumer Federation of America found that GEICO should give at least a 30% refund for the six-***week*** period of mid-March to the end of April.  (*Id*., ¶ 22).  Even though Plaintiff is comparing the CFA's six-***week*** "calculation" to GEICO's six-***month*** discount, Plaintiff alleges her premiums were "unconscionably excessive."  (*Id*., ¶ 9).

Plaintiff alleges one purportedly false statement by GEICO from its website: "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."  (*Id*., ¶ 26).  Plaintiff does not explain why or how this statement is purportedly false, and does not specify what this statement should have said instead.

At any time, Plaintiff has had the right under her auto insurance policy to cancel her auto insurance policy, and receive a *pro rata* refund.  Her policy states:

**6. CANCELLATION BY THE INSURED**
*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be pro-rated.

See Exhibit 2 at page 34 of 40.

Finally, Plaintiff alleges the presence of thousands of similarly-situated policyholders in Illinois. (*Id.*, ¶ 30). Plaintiff seeks the certification of a class based on purportedly common questions of law and fact involving the "full refund" of "excessive auto premiums" to these other GEICO policyholders. (*Id.*, ¶ 35).

**ARGUMENT**

A motion to dismiss considers the legal sufficiency of claims in the light of allegations accepted as true in the Complaint. Materials incorporated by reference may also be considered. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). Here, those materials include Plaintiff's auto insurance policy and GEICO's website explanation of its Giveback Program.

## I. THE CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED.

Count I is for "Breach of Contract – Violation of the Covenant of Fair Dealing and Good Faith." Plaintiff does not point to any term of the insurance policy as being violated. Instead, Plaintiff alleges that GEICO engaged in "opportunistic advantage-taking and lack of cooperation." (Cmplnt, ¶ 44).

"It is settled law in Illinois [] that a breach of good faith and fair dealing cannot be an independent cause of action." *7-Eleven, Inc. v. Shakti Chicago, Inc.*, 2019 WL 3387001, at *3 (N.D. Ill. July 26, 2019) (Coleman) (dismissal for failure to state a claim); *Fair Isaac Corporation v. Trans Union,* 2019 WL 1436018, at *3 (N.D. Ill. March 30, 2019) (Coleman) (same). To establish a breach of the implied duty of good faith, "a party must demonstrate that 'the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith....'" *Fair Isaac*, 2019 WL 1436018, at *3

6

(*citing LaSalle Bank Nat'l Assoc. v. Paramount Properties*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008)(St. Eve)).

Here, there are no such allegations in the Complaint. Plaintiff points to no term in the insurance policy that was allegedly breached –much less any term in the insurance policy that confers discretion that was allegedly exercised by GEICO in bad faith. The claim for breach of contract should thus be dismissed.

## II.    THE "FRUSTRATION OF PURPOSE" CLAIM SHOULD BE DISMISSED.

Count III is for "Frustration of Purpose." This is not a stand-alone claim under Illinois law. Instead, it is a rarely-invoked affirmative defense to enforcement of a contract:

> Under Illinois law the defense [of frustration of purpose] is not to be applied liberally and the party seeking rescission must show that (1) the frustrating event was not reasonably foreseeable and (2) the value of counterperformance has been totally destroyed by the frustrating event….

*U.S. v. Southwestern Elec. Co-op., Inc.*, 869 F.2d 310, 315 (7th Cir. 1989) (upholding dismissal of doctrine's application as a contractual defense).

The doctrine has no place here. Plaintiff could have cancelled her insurance policy if she had believed its "value had been totally destroyed" at any point during the pandemic. Under the terms of her policy (incorporated by reference), she has had the right to cancel, and to receive a *pro rata* refund. She has obviously elected to retain her policy.

Equally obvious, her autos remained insured throughout the time period of her initial and renewal policies, whether while parked on the street, garaged, or when driven. There is no allegation that she received no value from her insurance. Nor could there plausibly be. She does not allege that she did not drive her cars. None of the shut-down orders recited in the Complaint prohibited her from driving her cars anyway.

Just because she had no insurance claim during this period does not mean that she received no value. Certainly GEICO had no contractual right to retroactively surcharge her premium if Plaintiff had been in a car accident and suffered collision damage or personal injury. *See, e.g., Springfield Oil Drilling Corp. v. Weiss*, 2003 WL 22025006 at \*7 (N.D. Ill. Aug. 28, 2003) (Pallmeyer) (rejecting frustration of purpose doctrine "as the event did not totally or almost totally destroy the value of the parties' performance").

The "frustration of purpose" count should be dismissed.

### III.   THE ICFA CLAIM FOR DECEPTION SHOULD BE DISMISSED.

There are two claims under Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act. The elements of a deception claim (Count V) under the Illinois Consumer Fraud Act are as follows:

> (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception…. [A] complaint made pursuant to the ICFA must be pled with the same specificity as that required under common law fraud.

*Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (internal quotation mark and citations omitted). "When analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Id*. at 884.

### A.   THERE WAS NO FALSE OR DECEPTIVE STATEMENT.

GEICO notified policyholders of a 15% discount upon renewal, for a six-month period, and that is exactly what GEICO delivered to Plaintiff. This was a plain and truthful statement.

GEICO's website stated that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." (Cmplnt, ¶ 26). Plaintiff

argues that this statement is false because GEICO has not "fully pass[ed] the savings on" and "GEICO does not disclose the amount of its excessive profits." (*Id.*) This is sheer invention. There is no false statement.

The message is plain that policyholders will receive a 15% discount on policies issued ore renewed over a six-month period, which continues to run through October 7, 2020. The website announced the genesis of the Giveback Program in the reduced driving from the shelter-in-place orders, and then specified a 15% discount. The website also provided a "GEICO Giveback Estimator" for policyholders to calculate exactly how much of a discount they were due to receive, which would thus enable them to make an informed decision of whether to renew their policy, or cancel and switch to another auto insurer.

Courts have routinely considered the context of statements in rejecting allegations of falsity under the ICFA. *Toulon v. Continental Casualty*, 877 F.3d 725, 735-36 (7th Cir. 2017) (upholding dismissal of ICFA claim on the basis of the full context of the language in the insurance policy); *Bober v. Glaxo Wellcome* PLC, 246 F.3d 934, 938-39 (7th Cir. 2001) (upholding dismissal of ICFA claim because information available on the website would dispel any alleged issue of deception); *Killeen v. McDonald's Corporation*, 317 F. Supp. 3d 1012, 1013-14 (N.D. Ill. 2018) (Bucko) (granting motion to dismiss an ICFA claim where available price information allowed consumer to see that "Extra Value Meal" could cost more than separate orders of same items).

### B. A REASONABLE POLICYHOLDER WOULD EXPECT THE ADVERTISED 15% DISCOUNT.

No reasonable policyholder would have read the general statement that GEICO is "passing these savings on [due to reduced driving]" to form an expectation from that statement alone that the "savings" would be a definite percentage. Instead, GEICO explicitly and transparently set forth the discount percentage (15%) and time period (six months) of its Giveback Program.

Therefore, no reasonable consumer would have done anything other than accept that 15% as the amount of the discount, over the indicated six-month period, and then use the "GEICO Giveback Estimator" to compute his or her future savings on that basis.

It is telling that Plaintiff does not provide a definite percentage, and instead provides general speculative guestimates from an activist organization whose comments are limited to a six-week period rather than a six-month period. Terms like "savings" and "profits" and "earnings" are general accounting concepts that have underlying inputs that require definition, and here those statements were explicitly explained and qualified with the details of the Giveback Program. It is a truism that the realm of insurance, or assumption of risk, is inherently speculative because an insurer will know its premiums (one side of the ledger) for a particular line of business in a particular period, but not know its losses for that period until the accident history (litigation) is fully resolved (the other side of the ledger). The Consumer Federation (or any organization, for that matter), can only pretend to know, and invite speculation over, what the "savings" are for policies current in 2020. What was and is known, however, are the precise terms of Plaintiff's policy, the $180 reduction in her premium at renewal, and the details of GEICO's Give Back Program, which were set forth on its website along with the premium calculator.

Courts routinely dismiss ICFA claims from the perspective of the "reasonable consumer." *See, e.g., Galanis v. Starbucks Corporation*, 2016 WL 6037962, at *3 (N.D. Il. Oct. 14 2016) (Durkin) (dismissing ICFA claim on the basis that the reasonable consumer would expect the ice in an iced drink to reduce the volume of the fluid content advertised for the size of the drink). Even if Plaintiff claimed to be confused by the GEICO website in some way, it would still not be actionable under the ICFA. Alleged confusion is insufficient. *Abramov v. Home Depot, Inc.*, 2018 WL 1252105, at *3 (N.D. Ill. March 12, 2018) (Coleman) (granting motion to dismiss ICFA claim)

("Here, at most, Abramov has alleged that the product label in question is ambiguous and that it might confuse consumers as to a material fact. This allegation is insufficient to establish that the label in this case, which is truthful, is nevertheless misleading and legally actionable under ICFA.").

Plaintiff's allegation is especially deficient because she had access to the "GEICO Giveback Estimator," whereby she could calculate her expected discount to the dollar. *Id*. ("This [the insufficiency of the allegation] is especially so in this case because, here, Abramov had physical access to the board in question, and therefore had access to all of the information that he needed to determine its actual dimensions."). Given GEICO's transparency and clarity of the discount amount and percentage, it was not reasonable for Plaintiff to expect more than the advertised 15% discount she received.

### C.    PLAINTIFF DOES NOT ALLEGE MATERIALITY.

Plaintiff fails to allege that she would not have renewed her GEICO policies if she had known that the discount would be only 15%. This element is absent, which is fatal to her ICFA claim.

As explained by the Seventh Circuit:

> Another reason why Toulon failed to state a claim for omission of a material fact under [the Illinois Consumer Fraud Act] is that she did not plead that she would not have bought the Policy if she had known about the premium increase after the expiration of the rate-stabilization period. "An omission is 'material' if the plaintiff would have acted differently had it been aware of it, or if it concerned the type of information upon which it would be expected to rely in making its decision to act."

*Toulon*, 877 F.3d at 740 (citation omitted).

This is no mere technicality. Plaintiff does not even suggest that there was any material reliance. Furthermore, Plaintiff would not be expected to rely on something that she was not

contractually entitled to. GEICO voluntarily proposed and instituted the 15% discount. No policyholder had to do anything in order to be entitled to it upon renewal. Any policyholder was free to cancel or non-renew with GEICO, and to sign up with another auto insurer in Illinois.

### D. PLAINTIFF DOES NOT ALLEGE DAMAGE.

Yet another element of an ICFA claim is missing from the Complaint. Plaintiff does not allege that, but for the alleged deception, she "could have shopped around and obtained a better price in the marketplace." *Kim v. Carter's Inc*., 598 F.3d 362, 366 (7th Cir. 2010). Instead, GEICO voluntarily offered and instituted a 15% discount, and Plaintiff received it.

Plaintiff "got the benefit of [her] bargain and suffered no actual pecuniary harm." *Kim*, 598 F.3d at 366 (affirming dismissal of ICFA claim upon a motion to dismiss). *See also DOD Techs. v. Mesirow Ins. Servs., Inc*., 381 Ill. App. 3d 1042 (1st App. 2008) (finding no actual damages where an insured failed to allege "that it would have bargained for better insurance prices" had it known of an insurance broker's undisclosed commission costs).

For these reasons, the claims under the Illinois Consumer Fraud Act should be dismissed.

## IV. THE ICFA UNFAIRNESS CLAIM SHOULD ALSO BE DISMISSED.

There is a separate count (Count IV) under the ICFA for "unfairness." The standard is very high. A defendant's conduct must (1) violate public policy; (2) be so oppressive the consumer has little choice to submit; and (3) cause consumers substantial injury. *Siegel v. Shell Oil Co*, 612 F.3d 932, 935 (7th Cir. 2010). This claim should be dismissed for several reasons set forth below.

### A. THERE WAS NO DECEPTIVE OR FALSE STATEMENT.

Even though Plaintiff purports to state a separate claim under the ICFA for unfairness, Plaintiff repeats the same allegation of a purportedly false statement to support this ICFA claim. (Cmplnt ¶ 57) ("GEICO falsely claims to its customers that it is providing substantial and full

relief through its refund program and does not disclose that its refund program does not, in fact, provide full relief"). For the reasons stated in Section III above, GEICO made no false or deceptive statement. Instead, it explicitly set forth the terms of the Giveback Program: a 15% credit over a six-month period, as plainly reflected in the premium reduction Plaintiff received on her June 1, 2020 renewal. (Cmplnt ¶ 29). This claim should thus be dismissed.

## B. NO STATUTE OR LAW WAS ALLEGEDLY VIOLATED.

To sustain an unfairness claim, Plaintiff must also allege the violation of a "standard of conduct contained within Illinois' statutes or common law." *Ware v. Samsung Electronics America Inc.*, 2019 WL 2341399, at *3 (N.D. Ill. June 3, 2019) (Coleman); *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *6 (N.D. Ill. June 9, 2020) (Blakey) ("a practice offends public policy where 'the practice violates statutory or administrative rules establishing a certain standard of conduct'") (citation omitted).

The Complaint is devoid of any such allegation. There is no Illinois statutory or administrative duty alleged to have been violated. Thus this claim should be dismissed. *See, e.g., Ware*, 2019 WL 2341399, at *3 (granting motion to dismiss ICFA fairness claim where there was no Illinois statutory or common law violation alleged); *Washington*, 2020 WL 3058118, at *6 (granting motion to dismiss ICFA fairness claim because no administrative rule prohibited the conduct).

Even if the Complaint contained a "[c]onclusory assertion[] of 'industry norm,'" it would not suffice. *Ware*, 2019 WL 2341399, at *2. *See also Marchetti v. Chicago Title Insurance Co.*, 2015 WL 196222, at *4 (N.D. Ill. Jan. 14, 2015) (Coleman) ("The [ICFA] does not apply to simple breach of contract claims….").

13

### C.     PLAINTIFF HAS HAD A READY ALTERNATIVE.

Courts consider a practice "immoral, unethical, oppressive, or unscrupulous" if it "so oppressive as to leave the consumer with little alternative except to submit to it." *Batson v. Live Nation Entertainment, Inc*., 746 F.3d 827, 833 (7th Cir. 2014) (citation omitted). Plaintiff makes no effort to try to satisfy this standard. Dismissal is appropriate. *Washington*, 2020 WL 3058118, at *6 (granting motion to dismiss ICFA claim on that basis).

Plaintiff's ability to cancel her policy at any time is fatal to her claim of oppression. GEICO has not forced her to remain as a policyholder. Her policy gives her the clear right to cancel and receive a *pro rata* refund, and instead, she chose to renew her policy in the midst of the pandemic for $180 less than the prior policy period. Where consumers have ready options, the unfairness claim should be dismissed. *See, e.g., Batson*, F.3d at 833 (upholding dismissal of ICFA claim because the plaintiff was willing to pay the full ticket price and could have opted for other entertainment); *Washington*, 2020 WL 3058118, at *7 ("Washington could have avoided paying the modest resort fees by, among other things, choosing a different hotel or opting for an Airbnb.").

For these reasons, the ICFA claim for unfairness should be dismissed.

## V.     THE UNJUST ENRICHMENT CLAIM SHOULD ALSO BE DISMISSED.

Plaintiff alleges that "GEICO has unjustly retained a benefit" by its alleged "failure to fully refund excessive auto insurance premiums." (Cmplnt, ¶ 47). There are two reasons why this claim for unjust enrichment fails.

### A.     IT FALLS WITH THE ICFA CLAIMS.

"When an unjust enrichment claim is premised on an allegedly fraudulent representation, … that claim inherently fails if the representation in question is not fraudulent." *Abramov v. Home Depot, Inc.*, 2018 WL 1252105 (N.D. Ill. March 12, 2018) (Coleman) (*citing Ass'n Benefit Servs.*,

*Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7ᵗʰ Cir. 2007). Because the Consumer Fraud Act claims are premised on a purportedly false statement on GEICO's website, and because there is no such false statement (for the reasons discussed above), the claim for unjust enrichment should also be dismissed.

### B.    THE INSURANCE POLICY PREEMPTS THE UNJUST ENRICHMENT CLAIM.

An unjust enrichment claim is also incompatible with the existence of an insurance policy between an insurer and its policyholder. As explained by the Seventh Circuit:

> An additional reason why Toulon's claim for unjust enrichment was properly dismissed was because there was an actual contract that governed her relationship with Continental. 'A claim for unjust enrichment is "based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application."' There is no question that a contract for insurance governs the relationship between Toulon and Continental…. For this additional reason, the district court was correct to dismiss her claim for unjust enrichment.

*Toulon v. Continental Casualty Co.*, 877 F.3d 725 (7ᵗʰ Cir. 2017) (citations omitted).

### CONCLUSION

For these reasons, GEICO respectfully requests that this Honorable Court dismiss the Complaint with prejudice, and enter any other relief deemed necessary and proper.

*/s/ Lisa T. Scruggs*
Lisa T. Scruggs (#6256650)
Ronald M. Lepinskas (#6216428)

DUANE MORRIS, LLP
190 South LaSalle, Suite 3600
Chicago, IL 60603
ltscruggs@duanemorris.com
rmlepinskas@duanemorris.com

Damon N. Vocke
(*Admission To Be Sought Pro Hac Vice*)

DUANE MORRIS LLP

15

1540 Broadway
New York, NY 10036-4086
dnvocke@duanemorris.com

DM1\11320782.7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 3, 2020, she caused the foregoing document to be electronically filed with the Court using the CM/ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Lisa T. Scruggs*

17

# EXHIBIT 1



# FAQs About The GEICO Giveback

Last Updated: July 23, 2020

## There's nothing you need to do to get the credit.

GEICO will apply all credits automatically at renewal for auto, motorcycle, and RV policies. Your credit will be reflected on your paperwork at renewal between:

- 04/08/2020 – 10/07/2020 for 6-month policies
- 04/08/2020 – 04/07/2021 for 12-month policies

You can estimate your credit amount and see when to expect it with The GEICO Giveback Estimator (/about/coronavirus/estimator/).

## When will I get the credit?                                                    ⌄

You will get the credit when your policy renews; it will apply to your first payment. Any additional credit you receive will be applied to the next payment. For new policies that qualify, it will apply to your second payment.

## What if I'm driving less?                                                       ⌄

We know that shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers.

## How much is the credit? ⌃

The credit will be 15% of your posted new business or renewal amount that are not issued through a required ceded or AIP insurance plan. See "What is a ceded or AIP insurance plan for ceded policies?" Current policyholders do not need to do anything to receive this credit.

## If I'm paying in full, why am I getting a refund? ⌄

We are working hard to apply the credit to every policy that qualifies. If you have already paid your renewal premium in full, or paid in full for a new GEICO policy, when the credit is applied, you will receive a refund due to the credit. We appreciate your patience.

## I'm an essential worker and still driving. Will I still get the discount? ⌄

Absolutely! We're in this together, and we thank you for all you're doing. We know some people are still driving but we're giving the 15% credit to every eligible customer.

## Why are we doing this? ⌄

GEICO is giving back to our customers during this critical time because we are all in this together. We value our customers and understand how this pandemic has created challenges for all of us. We also know that shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers.

## What if my policy renewed prior to April 8, 2020? ⌄

You won't miss out. The credit will be applied to your next renewal which should fall within The GEICO Giveback time period.

---

## Are you going to increase my rates to offset this? ⌄

No. Rates are determined by many factors and in no way would we ever increase our rates due to offering a policy benefit. We are in this together and The GEICO Giveback offers a 15% policy credit to our customers.

---

## What if my policy renewed since April 8, 2020, and I have already made a payment? ⌄

Thank you for being a loyal GEICO customer! The 15% credit of your total policy premium will be applied. If you paid in full, a refund will be issued for the difference in your total premium. Others on payment plans, the 15% credit will still apply to your total policy premium applied to the next payment due.

---

## How will I get the credit? ⌄

You don't need to do anything. It will be automatically applied to your next renewal or, if you purchase a new policy, to your second payment. We encourage you to monitor your policy on the GEICO Mobile app or geico.com. Once the credit has been applied, you will be able to verify it online.

## What if the credit is larger than my monthly payment? ⌄

If the credit is greater than the monthly payment, any additional credit will be applied to the next payment due.

## Can you credit my policy now? ⌄

The GEICO Giveback will give you a 15% credit on your total 6-month or 12-month premium when your policy renews. In the meantime, we are providing as much flexibility as possible with current bills.

## Will I get the credit if I have a 12-month policy? ⌄

Yes. Eligible customers who have 12-month policies will receive the credit at their next renewal. The credit will be applied as those policies come up for renewal between April 8, 2020 and April 7, 2021, in addition to, new 12-month policies purchased with an effective date between April 8, 2020 and October 7, 2020.

## What do you mean by renewal? ⌄

For example, you may have policy with a 6-month term. At the end of the 6-month period, the policy may be renewed to provide continuous coverage.

## What if I can't pay my bill today?

⌄

We will continue to offer payment options to meet your needs.

---

## Are taxes, fees, or surcharges eligible for the credit?

⌄

Taxes, fees, or surcharges included in the 6-month or 12-month premium are eligible for the 15% credit. Examples of taxes, fees, or surcharges that do not qualify for the credit include, but are not limited to:

- California Fraud Assessment Recoupment Fee
- California Reissue Fee
- Certificate of Financial Responsibility (CFR) Filing Fees
- Colorado Auto Theft Prevention Fee
- Kentucky City Tax
- Kentucky Surcharge Fee
- Minnesota Auto Theft Prevention Surcharge
- North Carolina Commercial Recoupment Fee
- North Carolina Clean Risk Allocation Fee
- New York Law Enforcement Fee
- Returned Check Fee
- Service Charges
- Texas Theft Prevention Charge

---

## Which policy types does The GEICO Giveback apply to?

⌄

The GEICO Giveback applies to GEICO Personal Auto, Motorcycle, and RV policies that are not issued through a required ceded or AIP insurance plan.

---

## Will I be able to see this on my bill?

⌄

Yes.

---

## Can this be applied to what I owe? ⌄

When your policy renews, the credit will be applied to your renewal premium or any outstanding balance on that policy.

---

## What is a ceded or AIP insurance plan? ⌄

Ceded policies are reinsured by the North Carolina Reinsurance Facility (NCRF) for applicants who do not meet our voluntary underwriting standards. It is a state-mandated program established to assure automobile coverage to qualified North Carolina drivers who cannot obtain coverage elsewhere.

AIP insurance plans apply when a driver or vehicle owner cannot qualify for insurance in the regular market. He or she must get coverage through a state assigned risk plan which specifies that each company must accept a proportionate share of these drivers/owners.

Ceded* and AIP policies do not qualify for the credit because the premium collected on these policies are remitted to the state or Reinsurance Facility and not retained by GEICO.

*Premiums for voluntary coverages retained by GEICO on North Carolina ceded policies qualify for The GEICO Giveback. A 15% credit will apply to collision, other than collision, towing and labor, extended transportation expense coverage, mechanical breakdown insurance, and customizing equipment and coverage for audio, visual, and data electronic equipment premiums, if carried, on these policies.

---

# Have questions about Payment Assistance?

Review our list of frequently asked questions ( /about/coronavirus/payment-assistance/)

Review our list of frequently asked questions about coronavirus payment assistance.)

Case: 1:20-cv-04306 Document #: 18 Filed: 09/03/20 Page 25 of 103 PageID #:195

# Download GEICO Mobile to get the latest info.

The fastest way to get answers for policy questions, COVID-19, and The GEICO Giveback. We're here for you 24/7.

 (https://itunes.apple.com/us/app/id331763096) 
(https://play.google.com/store/apps/details?id=com.geico.mobile)

App Store is a trademark of Apple Inc. Android and Google Play are trademarks of Google Inc.



Sign eForms

/



Home (/) > About GEICO | Corporate Links and Resources (/about/) > COVID-19: GEICO is Here to Help (/about/coronavirus/)

# The GEICO Giveback Credit Estimator

GEICO is providing a 15% credit to our GEICO Auto, Motorcycle, and RV policyholders. Existing policyholders who qualify for the credit can use this tool to determine the date and approximate credit amount you'll receive.

## What is the length of your policy?

◯ 6 months

◯ 12 months

## Current Policy Effective Date

MM/DD/YYYY 📅

## How much is your total premium?

$ 0.00

**CALCULATE**

Still have questions? Refer to our FAQs about The GEICO Giveback (/about/coronavirus/giveback/).

The GEICO Giveback estimator is an educational tool to help you estimate the amount you'll receive as a credit and the date it will be applied to your next renewal. The information provided is not intended to recommend specific insurance coverage. The amounts displayed in the estimator are based on the amount entered as your current premium, and could increase or decrease based on your renewal premium amount. Please also note that this tool does not present every coverage option, tax, or fee for each state and situation.

# EXHIBIT 2



**Policy Number:  4494-61-34-92**
**GEICO CASUALTY COMPANY**

One GEICO Center
Macon, GA 31295-0001

April 28, 2020



Ms BRIANA COOPER
970 LUCINDA DR
BUFFALO GROVE IL  60089-1459

Dear Briana Cooper,

Thank you for being part of the GEICO family!

You're ready for **renewal!** Enclosed in this packet are your policy renewal documents.

## Policy Summary
**Policy Term:**              06-01-20  -  12-01-20

**New Premium:**            $900.66
**Prior Premium:**           $945.57
**Your Total Discounts:**    $166.20  Review your discounts at geico.com


**Thanks for Being Paperless**
Not only are you reducing the amount of
mail you receive, but you're also
helping the environment.


**Use the GEICO Mobile App**
45 out of 50 states
accept Digital ID Cards!
(Excludes CT, NM, NH, VA, MA & DC)


**Stick with GEICO**
Saving customers money
for over 75 years.


**24/7 Access**
Claims and Service accessibility
with 97% customer satisfaction.

Sincerely,

William E. Roberts
President

COVER_LTR_0_INC (11-18)

It's never been easier to contact GEICO!      Mobile App     **1-800-841-3000**      geico.com

 **GEICO**®

Policy Number: 4494-61-34-92

Dear Policyholder,

Policy Identification Cards (Insurance ID Cards) have been provided for each insured vehicle.

**Any driver covered on your policy can present the attached ID Cards as valid proof of insurance. You do not need a separate ID Card for each driver.** For your convenience, we have listed all Active Drivers on this policy below.

This letter is for informational purposes only and is not official proof of insurance. Please notify us promptly of any changes in your address to be sure you receive all important policy documents. Prompt notification will enable us to better serve you. If you need additional ID Cards for a new vehicle, vehicle registration or just another card for your records, you can log into the GEICO Mobile app or visit geico.com.

Ms BRIANA COOPER
970 LUCINDA DR
BUFFALO GROVE IL  60089-1459

Briana Cooper

---

**Need Additional ID Cards?**



**Visit geico.com**



**Download the GEICO Mobile app**

**You can Print, Share and Save your ID Cards**

IDCOVLTR (08-19)

*2000014494613492120220004505*

**GEICO**
geico.com
**ILLINOIS INSURANCE CARD**
**1-800-841-3000**

GEICO CASUALTY COMPANY
One GEICO Center • Macon, GA 31295-0001

COMPANY CODE: 41491

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 4494-61-34-92 | 06-01-20 | 12-01-20 |

| YEAR | MAKE | MODEL | VEHICLE ID NO. |
|---|---|---|---|
| 2015 | M BENZ | GLA250 | WDCTG4GB0FJ082655 |

INSURED:
BRIANA COOPER

**GEICO**
geico.com
**ILLINOIS INSURANCE CARD**
**1-800-841-3000**

GEICO CASUALTY COMPANY
One GEICO Center • Macon, GA 31295-0001

COMPANY CODE: 41491

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 4494-61-34-92 | 06-01-20 | 12-01-20 |

| YEAR | MAKE | MODEL | VEHICLE ID NO. |
|---|---|---|---|
| 2015 | M BENZ | GLA250 | WDCTG4GB0FJ082655 |

INSURED:
BRIANA COOPER

## Important Information

Here are your Policy Identification Cards. Two cards have been provided for each vehicle insured. Please destroy your old cards when the new cards become effective.

Due to space limitations on the ID card, only the Named Insured and the Co-insured are listed. For a full list of drivers covered under this policy, please reference the Drivers section of your Declarations Page (page 7).

Please notify us promptly of any change in your address to be sure you receive all important policy documents. Prompt notification will enable us to service you better.

Your policy is recorded under the name and policy number shown on the card.

If you would like additional ID cards, you can go online to **geico.com** or call us at **1-800-841-3000.**

Ms BRIANA COOPER
970 LUCINDA DR
BUFFALO GROVE IL  60089-1459

VOID

VOID

VOID

VOID

*200021449461349212022004506*

**THE INSURANCE POLICY REPRESENTED BY THIS IDENTIFICATION CARD DOES NOT REPRESENT ANY DRIVER WHO HAS BEEN EXCLUDED FROM THIS POLICY. EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

**What to do at the time of an accident.**

- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

---

*Need a tow or roadside assistance?*
Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

---

U-4-IL (01-13)

**THE INSURANCE POLICY REPRESENTED BY THIS IDENTIFICATION CARD DOES NOT REPRESENT ANY DRIVER WHO HAS BEEN EXCLUDED FROM THIS POLICY. EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

**What to do at the time of an accident.**

- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

---

*Need a tow or roadside assistance?*
Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

---

U-4-IL (01-13)



**Tel:** 1-800-841-3000

geico.com

**GEICO CASUALTY COMPANY**
One GEICO Center
Macon, GA 31295-0001

Date Issued: April 28, 2020

Ms BRIANA COOPER
970 LUCINDA DR
BUFFALO GROVE IL  60089-1459

Email Address: cooper.briana87@gmail.com

# Declarations Page

This is a description of your coverage.
Please retain for your records.

## Policy Number: 4494-61-34-92
## Coverage Period:

06-01-20 through 12-01-20
12:01 a.m. local time at the address of the named insured.

| **Named Insured** | **Additional Drivers** |
|---|---|
| Briana Cooper | None |

| **Vehicle** | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|
| 1 2015  M Benz    Gla250 | WDCTG4GB0FJ082655 | Buffalo Grove IL 60089 | Wells Fargo Dealer Svcs |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** |
|---|---|---|
| Bodily Injury Liability | | |
|   Each Person/Each Occurrence | $50,000/$100,000 | $190.41 |
| Property Damage Liability | $25,000 | $193.94 |
| Medical Payments | $1,000 | $10.83 |
| Uninsured Motorists | | |
|   Each Person/Each Occurrence | $50,000/$100,000 | $17.04 |
| Underinsured Motorist | | |
|   Each Person/Each Occurrence | $50,000/$100,000 | $8.80 |
| Comprehensive | $500 Ded | $54.53 |
| Collision | $500 Ded | $366.08 |
| Emergency Road Service | Ers Full | $12.20 |
| Rental Reimbursement | $50 Per Day | $46.83 |
| | $1,500 Max | - |
| **Total Six Month Premium** | | **$900.66** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

T-V

*200001449461349212022004507*

## Discounts

| The total value of your discounts is | $166.20 |
|---|---|
| Restraint | $4.64 |
| Seat Belt | $0.57 |
| Anti-Theft | $2.87 |
| Good Driver | $110.72 |
| Persistency | $28.13 |
| Anti-Lock Brake | $19.27 |

### The following discounts have also been applied

| Driving Experience | Included |
|---|---|
| Financial Responsibility | Included |

**Contract Type:** A30IL
**Contract Amendments:** ALL VEHICLES - A30IL

**Unit Endorsements:**     A431IL (VEH 1); CC1102 (VEH 1); CC115 (VEH 1); UE316I (VEH 1)

---

### Important Policy Information

-We welcome you to our GEICO family in the Auto Voluntary C20 rate program.

-Congratulations! You have earned the free Accident Forgiveness benefit. That means we will waive the surcharge associated with the first at-fault accident caused by an eligible driver on your policy.

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-GEICO complies with the Illinois Religious Freedom Protection and Civil Union Act, which recognizes civil union rights.

-A credit or discount has been applied to this policy: Financial Responsibility.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

GEICO CASUALTY COMPANY

## COMPLAINT DEPARTMENT ADDRESSES FOR ILLINOIS POLICYHOLDERS

If you have a complaint at any time concerning your insurance policy, you may contact us at the address given below.

Automobile Department:

Regional Vice President
GEICO
One GEICO Center
Macon, GA  31295-0001
Telephone Number:  1-800-841-3000

Motorcycle Department:

Director
GEICO Motorcycle
One GEICO Landing
Virginia Beach, VA  23454
Telephone Number:  1-800-841-3000

Assigned Risk Department:

Regional Vice President
GEICO
PO Box 9015
Woodbury, NY  11797-9015
Telephone Number:  1-800-645-7264

GEICO Umbrella Department:

Manager
GEICO Umbrella Department
One GEICO Boulevard
Fredericksburg, VA 22412
Telephone Number:  1-866-272-5192

Or, if you wish to contact the Illinois State Department of Insurance, write to:

PUBLIC SERVICE DIVISION
Department of Insurance
320 West Washington Street
Springfield, IL  62767-0001

M326 (05-18)

## IMPORTANT INFORMATION ABOUT YOUR COVERAGES

Now is a good time to consider all the coverage options available to you and decide whether you want to make any changes to your coverages. You have the right to increase your coverage, decrease your coverage, change your deductibles, reject certain coverages, or you can add any coverage previously rejected. Please be aware that some coverages are required by law and cannot be rejected.

Adjusting your coverages could result in either an increase or decrease in your six month premium. You can quickly adjust your coverages and see the impact on your premium by logging into **geico.com** or accessing your policy through the **GEICO mobile app**.

## WE OFFER OPTIONAL COMPREHENSIVE AND COLLISION COVERAGE DEDUCTIBLES

Higher deductibles can be an economical way to offset increasing insurance costs. The more you increase your deductibles, the more you can lower the cost of your insurance. If you avoid having accidents, the lower rates you pay by carrying higher deductibles can amount to a substantial savings over the years.

GEICO is accessible to you 24 hours a day, 365 days a year to ensure that we are always available to serve you.

*20000144846134921202200450⁹*

GEICO CASUALTY COMPANY

ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number: 4494-61-34-92

Effective Date: 06-01-20

Any covered **loss** under the Physical Damage Coverages of the policy will be paid jointly to the **insured** and the Lienholder in the Declarations. We may settle a claim at our option by separate payment to the **insured** and the Lienholder. The Lienholder's interest will not be protected:

1. When fraud, misrepresentation, or material omission has knowingly been committed by or at the direction of any **insured**; or

2. In any case of conversion, embezzlement, or secretion to the vehicle(s) by or at the direction of any **insured**, or any owner of the vehicle(s); or

3. When intentional damage has knowingly been committed to the vehicle(s) by or at the direction of any **insured**, or any owner of the vehicles(s). This exclusion does not apply to the interest of an innocent co-insured who did not cooperate in or contribute to the creation of the **loss** if the **loss** arose out of a pattern of criminal domestic violence and the perpetrator of the **loss** is criminally prosecuted for the act causing the **loss**.

4. For any **loss** or damage caused by, or reasonably expected to result from, a criminal act or omission of any **insured** or any owner of the vehicle(s). This applies regardless of whether any **insured**, or any owner of the vehicle(s) is actually charged with, or convicted of a crime. For the purpose of this clause, criminal acts or omissions do not include traffic violations.

The Lienholder has no greater rights under the provisions of the policy than any **insured**.

The Lienholder must notify us if they become aware of any increased hazard or change of ownership of the vehicle(s) or they will lose all rights under this policy.

If any **insured** fails to file with us a Proof of Loss within 91 days after the **loss**, the Lienholder must do so within the following 60 days.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of our payment to the Lienholder. If the policy is in effect as to the Lienholder but has been canceled as to any **insured**, the Lienholder must assign the loan to us to the extent of our payment, if we ask.

We will notify the Lienholder at least 10 days and not less than the notice period required by law before we cancel their interest in the policy.

This endorsement forms a part of **your** policy. It is effective at 12:01 A.M. local time at **your** address on the effective date shown above.

Government Employees Insurance Company
GEICO General Insurance Company
GEICO Indemnity Company
GEICO Casualty Company
GEICO Insurance Agency, Inc.

GEICO Advantage Insurance Company
GEICO Choice Insurance Company
GEICO Secure Insurance Company

# GEICO.
## PRIVACY NOTICE

## GEICO Respects Your Privacy

Protecting your privacy is very important to us. Policyholders like you have trusted us with their insurance needs since 1936, and we take our obligation to safeguard and secure your personal information very seriously. We want you to understand how we protect your privacy and when we collect and use your information.

## The Information We Collect

Non-public personally identifiable information ("Information") is information that identifies you and is not available to the general public. The following sections tell you more about how and when we collect your information.

## Information We Obtain From You

During the quoting, application, or claims handling processes you may give us Information such as your:

- name
- address
- phone number
- email address
- Social Security number
- driver's license number
- date of birth

If you gave us your email address, GEICO may use it from time to time to notify you of such things as new services, special offers, or to confirm transactions. You can log in to your account at geico.com, click on "Update Email Preferences" on the right side of the screen and choose the level of communication you'd like to receive from us. If you have not yet enrolled online, you will need to enroll with geico.com to update your email preferences.

## Information About Your Transactions

We may collect information about your transactions and experiences with us and others, such as your payment history, claims, coverage, and vehicle changes.

## Information From Third Parties

We may receive information about you from consumer reporting agencies, which provide us with motor vehicle reports, claim reports, and/or credit information where permitted by law. When you ask for a rate quotation, we may obtain credit information if permitted by applicable state law.

Our sales and service representatives do not have access to the details of your credit information. Other companies who view your credit report will not see the GEICO inquiry. It will be visible only to you. Our inquiry will not affect your credit score or credit rating. If you commit to purchase a policy with GEICO, we will also confirm your motor vehicle record and claims history.

As permitted by law, we may also review your motor vehicle record, claims history, and/or credit information in connection with any renewal.

## The Information We Disclose

Information about our customers or former customers will only be disclosed as permitted or required by law. Information about you that has been collected is maintained in your policy and/or claims records.

We use this information to process and service your policy; to settle claims; with your consent; or as directed by you. We may also disclose it to persons or organizations as necessary to perform transactions you request or authorize. Information about our former customers and about individuals who have obtained quotes from us is safeguarded to the same extent as information about our current policyholders.

Following are some examples of how we may disclose Information:

We must exchange Information about you with our agents, investigators, appraisers, attorneys, and other persons who are or will become involved in processing your application and servicing your policy or any claims you may make.

When you are involved in a claim, policy information is provided to adjusters and the businesses that will repair your vehicle.

We may share information with persons or organizations that we have determined need the Information to perform a business, professional, or insurance function for us. These include businesses that help us with administrative functions. If the law in your state permits, we may share Information with financial institutions with which we have a joint marketing agreement. All of these entities are obligated to keep the Information that we provide to them confidential and to use the Information only for the purpose for which the Information was provided.

Information may be provided to organizations conducting actuarial research or audits. In this case, you will not be individually identified in any research report. The organization must agree not to redisclose the Information and the Information will be returned to us or destroyed when it is no longer needed.

We may also share your Information for other permitted purposes, including:

- with another insurance company if you are involved in an accident with their insured
- with our reinsurers
- with insurance-support organizations that detect and prevent fraud
- among the GEICO companies listed above and other subsidiaries of GEICO Corporation to offer you additional products and services
- with consumer reporting agencies as permitted by law
- with medical professionals or institutions in order to verify coverage or conduct operations or services audits
- with state insurance departments or other governmental or law enforcement authorities if required by law or to protect our legal interests or in cases of suspected fraud or illegal activities
- if ordered by a subpoena, search warrant or other court order

**Confidentiality and Security**

We restrict access to your Information to employees who we have determined need it in order to provide products or services to you. We train our employees to safeguard customer information, and we require them to sign confidentiality and nondisclosure agreements.

We maintain strict physical, electronic and procedural safeguards to protect your Information from unauthorized access by third parties.

**Additions to This Privacy Policy**

Additional information for policyholders enrolled in our usage-based insurance program is included in the agreement provided upon enrollment in the program.

**Changes to This Privacy Policy**

Each of our policyholders receives a copy of our privacy policy at least once per year if required by law. In addition, in the event that we make a significant change to our privacy practices, we will send a revised copy of our privacy policy to each of our current policyholders.

**What to Do if You Have Privacy or Security Concerns**

If you have a concern about privacy or security at GEICO, we want to hear about it by mail or email. Please write to us at:

Privacy Administration
GEICO
One GEICO Plaza
Washington, DC 20076

or email us at privacypolicy@geico.com.

This Privacy Policy applies to all of the companies listed at the top of this notice.

## ADDITIONAL LEGAL RIGHTS

**HOW YOU CAN REVIEW RECORDED INFORMATION ABOUT YOU**

If you have any questions concerning GEICO's collection or sharing of information pertaining to you, please write us at the address at the end of this notice. We will need your complete name, address, and all policy numbers under which you are insured. Please include your preferred telephone number(s) so we can contact you should doing so be necessary. You may either see and copy your information in person or we will mail you a copy of your information.

We are not required to give you access to information collected in evaluating a claim under an insurance policy or when the possibility of a lawsuit exists. Any information you request that is in coded form will be translated into plain language and provided in written form. We may charge a reasonable fee to cover our costs incurred in providing a copy of our recorded personal information to you.

**IF YOU DISAGREE WITH OUR RECORDS**

If, after reading the information in your file, you believe it is incorrect, please notify us in writing. Tell us what is inaccurate and why. You have the right to request that we correct, amend or delete information that you believe is incorrect.

Upon receiving your request, we will, within 30 business days, reinvestigate the information you think is incorrect. If we agree with you, we will notify you and make the necessary corrections, amendments or deletions and also notify anyone you specify who may have received such information within the past two (2) years. We will also notify any organization that supplied the information to us. Insurance-support organizations to whom we systematically reveal information will also be informed of the change.

If we do not agree to make the correction, amendment or deletion, we will notify you and tell you our reason(s). You may then file with us a brief statement setting forth what you believe to be the correct, relevant or fair information and why you disagree with our decision not to correct, amend or delete the original information. Your statement will become a permanent part of our file and will be made part of any future disclosure of the original information. In addition, copies of your statement will be sent to any person or insurance-support organization to whom the original information was disclosed or from whom it was received.

**Auto and Umbrella Policy Inquiries**

GEICO
Underwriting Department
One GEICO Center
Macon, GA 31295-0001

**GEICO Motorcycle Policy Inquiries**

GEICO
Underwriting Department
1345 Perimeter Pkwy
Virginia Beach, VA 23454



**GEICO**®

**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

# Illinois
# Family
# Automobile
# Insurance
# Policy

GEICO CASUALTY COMPANY

*2000014494613492120220004512*

## POLICY INDEX

Page

**SECTION I**
**Liability Coverages**
**Your Protection Against Claims From Others**
Definitions ............................................................. 3
Losses We Will Pay For You ..................................... 4
Additional Payments We Will Make Under The
    Liability Coverages. .......................................... 4
      Legal Expenses And Court Costs
      Bail And Appeal Bonds
      First Aid Expenses
Exclusions: When Section I Does Not Apply ............... 4
Persons Insured: Who Is Covered ............................. 6
Financial Responsibility Laws .................................. 6
Out Of State Insurance .......................................... 6
Limits Of Liability ................................................. 6
Other Insurance ................................................... 6
Conditions ........................................................... 6
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured Action
    Against Us
    Subrogation

**SECTION II**
**Automobile Medical Payments Coverage**
**Protection For You And Your Passengers For Medical Expenses**
Definitions ........................................................... 7
Payments We Will Make .......................................... 7
Exclusions: When Section II Does Not Apply ............. 8
Limit Of Liability ................................................... 9
Other Insurance ................................................... 9
Conditions ........................................................... 9
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**
**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**
Definitions ........................................................... 9
Losses We Will Pay ............................................... 10
    Comprehensive Coverage .................................. 10
    Collision Coverage ......................................... 11
Additional Payments We Will Make Under The
    Physical Damage Coverages .............................. 11
    Car Rental If Your Car Is Stolen
Exclusions: When The Physical Damage
    Coverages Do Not Apply ................................. 11
Limit Of Liability ................................................... 12
Other Insurance ................................................... 12

Page

Conditions ........................................................... 12
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To
    Bailee Subrogation
    Assignment

**SECTION IV**
**Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By Uninsured And Hit And Run Motorists**
Definitions ........................................................... 14
Losses We Pay ...................................................... 15
Exclusions: When Section IV Does Not Apply ............. 15
Limits Of Liability ................................................. 15
Other Insurance ................................................... 16
Arbitration. .......................................................... 16
Trust Agreement .................................................. 17
Conditions ........................................................... 17
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical
    Reports Payment Of Loss

**SECTION V**
**General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory .............................................................. 18
Premium .............................................................. 18
Changes .............................................................. 18
Assignment .......................................................... 18
Policy Period ........................................................ 18
Cancellation By The Insured .................................. 18
Cancellation By Us ............................................... 18
Cancellation By Us Is Limited. ............................... 18
Renewal .............................................................. 19
Other Insurance ................................................... 19
Dividend Provision ............................................... 19
Declarations ........................................................ 19
Fraud And Misrepresentation ................................ 20
Examination Under Oath. ...................................... 20
Terms Of Policy Conformed To Statutes .................. 20
Disposal of Vehicle .............................................. 20
Choice of Law ...................................................... 20

**SECTION VI**
**Amendments And Endorsements**
Special Endorsement
    United States Government Employees .................. 20

**Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."**

**AGREEMENT**

**We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:**

---

## SECTION I - LIABILITY COVERAGES
### Your Protection Against Claims from Others
### Bodily Injury Liability and Property Damage Liability

---

### DEFINITIONS

The words italicized in Section I of this policy are defined below.

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease or death.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4. ***Insured*** means a person or organization described under **PERSONS INSURED**.

5. ***Non-owned auto*** means a *private passenger auto*, *farm auto*, *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your* relative, other than a *temporary substitute auto*. *You* or *your relative* must be using the *non-owned auto* or *trailer* within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

   A *non-owned auto* does not include:

   (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

   (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

   (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

   (d) any motor vehicle rented or leased by *you* or a *relative* which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

6. ***Owned auto*** means:

   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;

   (b) A *trailer* owned by *you*;

   (c) A *private passenger auto*, *farm auto* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if

      (i) It replaces an *owned auto* as defined in (a) above; or

      (ii) We insure all *private passenger autos*, *farm autos* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

   (d) A *temporary substitute auto*.

7. ***Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.

8. ***Relative*** means a person related to *you* by blood, marriage, civil union, or adoption who resides in *your* household.

9. ***Temporary substitute auto*** means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

   A *temporary substitute auto* does not include:

   (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

   (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

   (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

*2000014494613492120220004513*

(d) any motor vehicle rented or leased by **you** or a **relative** which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

10. **Trailer** means a trailer designed to be towed by a **private passenger auto**, if not being used for business or commercial purposes with a vehicle other than a **private passenger auto**, **farm auto** or **utility auto**.

11. **Utility auto** means a vehicle, other than a **farm auto**, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. **War** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. **You** and **your** mean the Named Insured shown in the Declarations or his or her spouse or party to a civil union, if a resident of the same household.

14. **Personal vehicle sharing program** means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

15. **Ride-sharing** means the use of any vehicle by any **insured** in connection with a **transportation network company** from the time an **insured** logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an **insured** logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. **Transportation network company** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an **insured** becomes legally obligated to pay because of:

1. **Bodily injury**, sustained by a person, or
2. Damage to or destruction of property;

arising out of the ownership, maintenance or use of the **owned auto** or a **non-owned auto**. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.
2. All court costs charged to an **insured** in a covered lawsuit.
3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.
4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.
5. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto** or **non-owned auto**, not to exceed $250 per bail bond.
6. We will upon request by an **insured**, provide reimbursement for the following items:
   (a) Costs incurred by any **insured** for first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.
   (c) All reasonable costs incurred by an **insured** at our request.

**Your** available limits of liability coverage will not be reduced by our payment of any costs listed under this provision.

## EXCLUSIONS

### When Section I Does Not Apply

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

Section I does not apply:

1. To **bodily injury** to any **insured** or any family member of an **insured** residing in the **insured's** household.

   **Insured** means the person against whom claim is made or suit is brought if that person is an **insured** as defined in Section I of the policy.

   This exclusion does not apply:
   (a) When a third party acquires a right of contribution against a member of the injured person's family; or
   (b) When any person not in the **insured's** household was driving the vehicle of the **insured** involved in the accident.

2. To *bodily injury* or property damage arising out of the ownership, maintenance, or use of any vehicle:
   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) while being used for *ride-sharing*.
   However, this exclusion does not apply to a vehicle used in an ordinary car pool or where *bodily injury* or property damage results from *your* occupancy of such a non-owned vehicle as other than the operator.
   An ordinary car pool is one where:
   (i) An *insured* receives no payment for using a vehicle for a car pool ride; or
   (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

3. To *bodily injury* or property damage caused intentionally by or at the direction of an *insured*.

4. To *bodily injury* or property damage that is insured under a nuclear liability policy.

5. To *bodily injury* or property damage arising from the operation of farm machinery.

6. To *bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured*.
   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

7. To *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

8. To a *non-owned auto* while maintained or used by any person while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.

9. To property owned, operated,  transported or used by an *insured*.

10. To property rented to or in charge of an *insured* other than a residence or private garage.

11. To an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

12. To the United States of America or any of its agencies.

13. To any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

14. To any liability assumed under any contract or agreement.

15. To:
    (a) *bodily injury* or property damage caused by an auto driven in or preparing for any prearranged or organized racing, speed, or demolition contest or stunting activity of any nature; or
    (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

16. For any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

17. To any motor vehicle, or series of motor vehicles, leased by *you* or a *relative* for less than six months unless the motor vehicle is described, and premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

18. To any motor vehicle, or series of motor vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the motor vehicle for this coverage, in the declarations of this policy.

*2000014494461349212022004514*

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You* and *your relatives*;
2. Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following with regard to a *non-owned auto*:

1. (a) *You*;
   (b) *Your relatives* when using a *private passenger auto*, *farm auto* or *utility auto* or *trailer*.

   Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.

   The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages resulting from *bodily injury* sustained by one person in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress, resulting from *bodily injury* sustained by two or more persons as the result of one accident or occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If there is other applicable primary liability insurance available for the *insured*, we will pay only our share of the damages. Our share of the damages is the proportion that our limit of liability bears to the total of all primary liability insurance available for the *insured*.

Any insurance we provide for a *non-owned auto* shall be excess over any other applicable liability insurance available for the *insured*. If the *insured* has other applicable excess liability insurance that applies to the *non-owned auto*, we will pay only our share of the damages. Our share of the damages is the proportion that our limit of liability bears to the total of all applicable excess liability insurance available for the *insured*.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE
   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and

(d)  The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2.  TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3.  ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a)  In the investigation of the occurrence;
(b)  In making settlements;
(c)  In the conduct of suits;
(d)  In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
(e)  At trials and hearings;
(f)  In securing and giving evidence; and
(g)  By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4.  ACTION AGAINST US

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and
(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) By a final judgment against the *insured* after actual trial; or
(ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5.  SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

**SECTION II - AUTO MEDICAL PAYMENTS**
**Protection For You And Your Passengers For Medical Expenses**

---

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage.

In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1.  *You* and each *relative* who sustains *bodily injury* caused by accident:

(a) While *occupying* the *owned auto*; or
(b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
(c) When struck as a pedestrian by an auto or *trailer*.

2.  Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* arising out of the ownership, maintenance, or use of an *owned auto* or *non-owned auto* while being used:

   (a) to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

   (b) for *ride-sharing*.

   However, this exclusion will not apply to ordinary car pools. An ordinary car pool is one where:

   (i) An *insured* receives no payment for using a vehicle for a car pool ride; or

   (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

   This exclusion does not apply to *you* or any *relative* while a passenger and not operating the vehicle.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

   (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

   (b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

7. There is no coverage for:

   (a) *bodily injury* caused by an auto driven in or preparing for any prearranged or organized racing, speed, or demolition contest or stunting activity of any nature; or

   (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

8. There is no coverage for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

9. There is no coverage for *bodily injury* sustained by any *insured* while operating, *occupying*, or when struck as a pedestrian by any vehicle leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

10. There is no coverage for *bodily injury* sustained by any *insured* while operating, *occupying*, or when struck as a pedestrian by any vehicle regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

11. There is no coverage for *bodily injury* to any *insured* arising out of:

    (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

    (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

    (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

    (d) any motor vehicle rented or leased by *you* or a *relative* which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

    This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

## OTHER INSURANCE

If the *insured* has other medical payments insurance against a *loss* covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to this Coverage:

1.  NOTICE

    As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a)  The identity of the *insured*;
    (b)  The time, place and details of the accident; and
    (c)  The names and addresses of the injured, and of any witnesses.

2.  TWO OR MORE AUTOS

    If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3.  ACTION AGAINST US

    Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

4.  MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

    As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

    The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

    We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

5.  SUBROGATION

    When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them. This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

## SECTION III - PHYSICAL DAMAGE COVERAGES
## Your Protection For Loss or Damage To Your Car

## DEFINITIONS

The definitions of the terms *auto business*, *farm auto*, *personal vehicle sharing program*, *private passenger auto*, *relative*, *ride-sharing*, *temporary substitute auto*, *transportation network company*, *utility auto*, *you*, *your* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1.  *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.
2.  *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
3.  *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4.  *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a)  Are permanently installed or attached; or
    (b)  Alter the appearance or performance of a vehicle;

*2000014494613492120220045 16*

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5. **Depreciation** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

6. **Insured** means:
   (a) Regarding the **owned auto**:
      (i) **You** and **your relatives**;
      (ii) A person or organization maintaining, using or having custody of the auto with **your** permission, if his use is within the scope of that permission.
   (b) Regarding a **non-owned auto**; **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. **Loss** means direct and accidental loss of or damage to:
   (a) The auto, including its equipment; or
   (b) Other insured property.

8. **Non-owned auto** means a **private passenger auto**, **farm auto** or **utility auto** or **trailer** not owned by or furnished for the regular use of either **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner. A motor vehicle rented or leased for more than 30 days will be considered as furnished for regular use.
   A **non-owned auto** does not include:
   (a) any motor vehicle rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. A motor vehicle is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the motor vehicle to be used for **ride-sharing** with a **transportation network company**; or
   (b) any motor vehicle rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or
   (c) any motor vehicle rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or
   (d) any motor vehicle rented or leased by **you** or a **relative** which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

9. **Owned auto** means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) A **private passenger auto**, **farm auto** or **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more; if
      (i) It replaces an **owned auto** as described in (a) above, or
      (ii) We insure all **private passenger autos**, **farm autos**, **utility autos** and **trailers** owned or leased by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;
   (c) A **temporary substitute auto**.

10. **Trailer** means a trailer designed to be towed by a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY FOR YOU
### Comprehensive (Excluding Collision)

1. We will pay for each **loss**, less the applicable deductible, caused other than by **collision**, to the **owned auto** or **non-owned auto**. This includes breakage of glass and **loss** caused by:

   (a) Missiles;
   (b) Falling objects;
   (c) Fire;
   (d) Lightning;
   (e) Colliding with a bird or animal;
   (f) Windstorm;
   (g) Hail;
   (h) Water;
   (i) Theft;
   (j) Larceny;
   (k) Explosion;
   (l) Earthquake;
   (m) Flood;
   (n) Malicious mischief;
   (o) Vandalism;
   (p) Riot; or
   (q) Civil commotion

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:
   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Theft of the entire automobile;
   (e) Falling objects;
   (f) Earthquake; or
   (g) Explosion.

   The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

**Collision**

1. We will pay for *collision loss* to the *owned auto* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*.

   The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

   Reimbursement will not exceed $25 per day nor more than $750 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

3. We will pay for the replacement of a child passenger restraint system when the restraint system is in the insured auto at the time *loss*.

**EXCLUSIONS**

**When The Physical Damage Coverages Do Not Apply**

1. There is no coverage for any vehicle:
   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products or
   (b) while being used for *ride-sharing*.

   However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:
   (i) An *insured* receives no payment for using a vehicle for a car pool ride; or
   (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by *collision*, are not covered.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover *loss* to any radar or laser detector.

9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger autos*, *farm autos* or *utility autos*.

10. We do not cover *loss* for *custom parts or equipment*, in excess of $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

11. There is no coverage for any liability assumed under any contract or agreement.

12. There is no coverage for any *loss* or damage resulting from:

    (a) The acquisition of a stolen vehicle;

    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or

    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.

    (d) The sale of an *owned auto*.

13. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. There is no coverage for any *loss* caused by:

    (a) an auto driven in or preparing for any prearranged or organized racing, speed or demolition contest or stunting activity of any nature; or

    (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

15. There is no coverage for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

16. We do not cover any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

17. We do not cover any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle. However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

    *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

    As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

    (a) The identity of the *insured*;

    (b) A description of the auto or *trailer*;

    (c) The time, place and details of the *loss*; and

    (d) The names and addresses of any witnesses.

    In case of theft, the *insured* must promptly notify the police.

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully with the policy investigation, with the prosecution of any person(s) charged with theft, and with any civil suit brought by us against the person(s) responsible to recover for the *loss*.

2.  TWO OR MORE AUTOS

    If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3.  ASSISTANCE AND COOPERATION OF THE INSURED

    The *insured* will cooperate and assist us, if requested:

    (a)  In the investigation of the *loss*;
    (b)  In making settlements;
    (c)  In the conduct of suits;
    (d)  In enforcing any right of subrogation against any legally responsible person or organization;
    (e)  At trials and hearings;
    (f)  In securing and giving evidence; and
    (g)  By obtaining the attendance of witnesses.

4.  ACTION AGAINST US

    Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

    If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days.

5.  INSURED'S DUTIES IN EVENT OF LOSS

    In the event of *loss* the *insured* will:

    (a)  Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
    (b)  File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
    (c)  At our request, the *insured* will exhibit the damaged property.

6.  APPRAISAL

    If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

    We will not waive our rights by any of our acts relating to appraisal.

7.  PAYMENT OF LOSS

    We may at our option:
    (a)  Pay for the *loss*; or
    (b)  Repair or replace the damaged or stolen property.

    At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8.  NO BENEFIT TO BAILEE

    This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9.  SUBROGATION

    When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights. This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

*2000014494613492120022004518*

10. ASSIGNMENT
With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

---

## SECTION IV - UNINSURED MOTORIST COVERAGE
### Protection For You and Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists

---

### DEFINITIONS
The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. **Hit-and-run motor vehicle** is a motor vehicle causing **bodily injury** to an **insured** through physical contact with him or with a motor vehicle he is **occupying** at the time of the accident and whose operator or owner cannot be identified, provided the **insured** or someone on his behalf:
   (a) Reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
   (b) Files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
   (c) Makes available for inspection, at our request, the auto **occupied** by the **insured** at the time of the accident.

2. **Insured** means:
   (a) The Named Insured shown on the Declarations and his or her spouse or party to a civil union, if a resident of the same household;
   (b) **Relatives** of (a) above if residents of his household;
   (c) Any other person while **occupying** an **owned auto**;
   (d) Any person who is entitled to recover damages because of **bodily injury** sustained by an **insured** under (a), (b), and (c) above.
   If there is more than one **insured**, our limit of liability will not be increased.

3. **Insured auto** is an auto:
   (a) Described in the declarations and covered by the bodily injury liability coverage of this policy;
   (b) Temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
   (c) Operated by **you** or **your** spouse or party to a civil union, if a resident of the same household.
   But the term **insured auto** does not include:
   (i) An auto used to carry passengers or goods for hire, except in a car pool;
   (ii) An auto being used without the owner's permission; or
   (iii) Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an **insured**.

4. **Occupying** means in, upon, entering into or alighting from.

5. **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6. **Uninsured motor vehicle** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.
   The term **uninsured motor vehicle** does not include:
   (a) An **insured auto**;
   (b) An auto owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
   (c) An auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;
   (d) A land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; or
   (e) Any vehicle, equipment, all terrain vehicle, off road vehicle, or farm type tractor or equipment designed mainly for use off public roads while not upon public roads

**LOSSES WE PAY**

Under the Uninsured Motorists Coverage we will pay damages for *bodily injury* to the *insured* and sustained by the *insured* caused by an accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* or *hit-and-run motor vehicle* arising out of the ownership, maintenance or use of that *uninsured motor vehicle* or *hit-and-run motor vehicle*.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us. The dispute may be arbitrated if an agreement cannot be reached.

**EXCLUSIONS**

**When Section IV Does Not Apply**

1. This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured motor vehicle* owned by an *insured* or a *relative* is not covered.

3. The Uninsured Motorists Coverage will not benefit any workers' compensation insurer, self-insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5. We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages under the uninsured or underinsured motorist coverage of this policy.

7. This coverage does not apply to any liability assumed under any contract or agreement.

8. This coverage does not apply to damage caused by an *insured's*:

   (a) participation in or preparation for any prearranged or organized racing, speed or demolition contest or stunting activity of any nature; or

   (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

9. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

10. There is no coverage for *bodily injury* or property damage under this Section for any person or organization while an *owned auto* or *non-owned auto*:

    (a) is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) is being used for *ride-sharing*.

    However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

    (i) An *insured* receives no payment for using a vehicle for a car pool ride; or

    (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

    This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages resulting from *bodily injury* sustained by one person in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress, resulting from *bodily injury* sustained by two or more persons as the result of one accident or occurrence.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

   If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

   The amount payable under this Coverage will be reduced by all amounts:
   (a) Paid by or for all persons or organizations liable for the injury;
   (b) Paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or
   (c) Paid or payable under any workers' compensation law, disability benefits law or any similar law.

## OTHER INSURANCE

Coverage under Section IV may not be stacked, aggregated, or combined with other uninsured motorist coverage or underinsured motorists coverage.

If there is other applicable uninsured motorist coverage or underinsured motorists coverage, the maximum an *insured* may recover under all applicable uninsured motorist coverages or underinsured motorists coverages is the highest applicable limit of liability for one (1) vehicle under one (1) of the available policies, even though separate premiums may have been paid for each policy or vehicle. If there is other applicable uninsured motorist coverage or underinsured motorists coverage, subject to the LIMITS OF LIABILITY under Section IV, we will pay only our share of the damages.

Our share is the proportion that our limit of liability bears to the total of all available uninsured motorist coverage or underinsured motorists coverage limits.

However, any uninsured motorist coverage or underinsured motorists coverage we provide for *bodily injury* to *you* or a *relative* when not *occupying* an *owned auto*, subject to the LIMITS OF LIABILITY under Section IV, shall be excess over any other uninsured motorist coverage or underinsured motorists coverage and our coverage applies only in the amount by which it exceeds such other uninsured motorist coverage or underinsured motorists coverage.

If more than one uninsured motorist or underinsured motorists policy applies as excess, then:
   (1) the amount payable under this policy shall not exceed the difference between the uninsured motorist coverage or underinsured motorists coverage limit of the policy that applies as primary and the highest applicable uninsured motorist coverage or underinsured motorists coverage limit of any one of the uninsured motorist coverages or underinsured motorists coverages that applies as excess to the primary uninsured motorist or underinsured motorists coverage; and
   (2) we are then liable, subject to the LIMITS OF LIABILITY under Section IV, only for our share which is the proportion that our limit of liability bears to the total of all available uninsured motorist coverage or underinsured motorists coverage limits that applies as excess to the primary uninsured motorist or underinsured motorists coverage.

We will not pay for any damages which would duplicate any payment made for damages under other insurance.

## ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:
(a) The extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or
(b) The amount of damages sustained by the *insured* may be arbitrated at the request of the *insured*. Binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

Upon written demand from the *insured* for arbitration, each part will select an arbitrator and the two arbitrators so named will select a third arbitrator. If such arbitrators are not selected within 45 days of such request, either party may request that the matter be submitted for arbitration to the American Arbitration Association. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Unless both parties agree otherwise, arbitration will take place in the county and *state* in which the *insured* lives. Local rules of law as to procedure and evidence will apply.

Any decision made by arbitrators shall be binding for the amount of damages not exceeding $75,000 for *bodily injury* to or death of any one person, $150,000 for *bodily injury* to or death of 2 or more persons in any one motor vehicle accident, or the corresponding policy limits for *bodily injury* or death, whichever is less.

When an award exceeds $75,000 for *bodily injury* to or death of any one person, or $150,000 for *bodily injury* to or death of 2 or more persons in any one motor vehicle accident, or the corresponding policy limits for *bodily injury* or death, whichever is less, either party shall have the right to a trial on all the issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Where such right is exercised by either party, the judgment of the arbitrators shall not be binding on either party.

We will be obligated to pay no more than the applicable policy limits for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in this policy.

We will pay all arbitration expenses except where recovery by the claimant exceeds the minimum Illinois Safety Responsibility Law limits. If recovery exceeds the minimum limit, the person making claim shall pay his expenses and an equal share of the expenses of the third arbitrator to the extent that recovery exceeds the minimum limit under the law.

**TRUST AGREEMENT**

When we make a payment under this Coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured*, in his own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists Coverage:

1. NOTICE

   As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;

   (b) The time, place and details of the accident; and

   (c) The names and addresses of the injured, and any witnesses.

   If the *insured* or his or her legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED

   After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

   No suit, action, or arbitration proceedings for recovery of any claim may be brought against us until the *insured* has fully complied with all the terms of this policy. The *insured* must file proof of loss with the Company within 1 year from the date of loss. Further, any suit, action, or arbitration will be barred unless commenced within two years after the date the claim was denied in whole or in part. Arbitration proceedings will not commence until we receive *your* written demand for arbitration.

4. PROOF OF CLAIM-MEDICAL REPORTS

   As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

   Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

   The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

   Any amount due is payable:

   (a) To the *insured* or his authorized representative;

   (b) If the *insured* is a minor, to his parent or guardian; or

   (c) If the *insured* is deceased, to his surviving spouse or party to a civil union, if a resident of the same household; otherwise

(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may at our option, pay an amount due in accordance with (d) above.

## SECTION V-GENERAL CONDITIONS

These conditions apply to all Coverages in this policy.

**1.** TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

**2.** PREMIUM

When **you** dispose of, acquire ownership of, or replace a **private passenger auto, farm auto** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3.** CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your state**.

The premium for each auto is based on the information we have in **your** file. **You** agree:

(a) That we may adjust **your** policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) That **you** will cooperate with us in determining if this information is correct and complete.

(c) That **you** will notify us of any changes in this information.

(d) That we may adjust **your** policy premium during the policy term or at renewal if any person who is an **insured** becomes an additional driver during the policy term or at renewal.

Any calculation or recalculation of **your** premium or changes in **your** coverage will be based on the rules, rates and forms on file, if required, for our use in **your** state.

**4.** ASSIGNMENT

Assignment of interest under this policy will not bind us without our written consent. If **you** die, this policy will cover:

(a) **Your** surviving spouse or party to a civil union, if a resident of the same household;

(b) The executor or administrator of **your** estate, but only while operating an **owned auto** and while acting within the scope of his duties;

(c) Any person having proper temporary custody of and operating the **owned auto**, as an **insured**, until the appointment and qualification of the executor or administrator of **your** estate; and

(d) Under the Medical Payments Coverage, a person who was a **relative** at the time of **your** death.

**5.** POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

**6.** CANCELLATION BY THE INSURED

**You** may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be pro-rated.

**7.** CANCELLATION BY US

We may cancel this policy by mailing to **you**, at the last mailing address known to the company, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 30 days in advance in all other cases.

The mailing of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be pro-rated. Payment or tender of unearned premium is not a condition of cancellation.

**8.** CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) **You** do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

(b) **You** obtained the policy through material misrepresentation.

(c) Any **insured** violated any of the terms and conditions of the policy.

(d) **You** failed to disclose fully in **your** application **your** motor vehicle accidents and moving traffic violations for the preceding 36 months.

(e) Any **insured** made a false or fraudulent claim or knowingly aided or abetted another in presenting such a claim.

(f) Any **insured** or customary operator:

    (i) Has within the 12 months prior to the notice of cancellation, had his driver's license under suspension or revocation;

    (ii) Is or becomes subject to epilepsy or heart attacks and cannot produce a certificate from a physician testifying to his unqualified ability to operate a motor vehicle.

    (iii) Has an accident record, conviction record (criminal or traffic), physical, mental or other condition which is such that his operation of an auto might endanger the public safety.

(g) Any **insured** or customary operator, within 36 months prior to the notice of cancellation or non-renewal, has been addicted to the use of narcotics or drugs.

(h) Any **insured** or customary operator has been convicted or forfeited bail during the 36 months immediately preceding the notice of cancellation for:

    (i) Any felony;

    (ii) Criminal negligence in death, homicide or assault arising out of the operation of a motor vehicle;

    (iii) Operating a motor vehicle while in an intoxicated condition;

    (iv) Operating a motor vehicle while under the influence of drugs;

    (v) Leaving the scene of an accident without stopping to report;

    (vi) Theft or an unlawful taking of an auto; or (vii) making false statements in an application for a driver's license.

(i) Any **insured** or customary operator has been convicted of or forfeited bail for 3 or more violations within the 12 months immediately preceding the notice of cancellation, of any law, ordinance or regulation limiting the speed of motor vehicles, of any of the provisions of motor vehicle laws of any state, violation of which is a misdemeanor, whether or not the violations were the repetitions of the same offense or different offenses.

(j) The insured auto is mechanically defective to the extent that its operation might endanger public safety.

(k) The insured auto is used in carrying passengers for hire or compensation. However, the use of any auto for a car pool shall not be considered use of an auto for hire or compensation.

(l) The insured auto is used in the business of transporting flammables or explosives.

(m) The insured auto is an authorized emergency vehicle.

(n) The insured auto is modified or changed in condition so as to increase the risk substantially.

(o) The insured auto is subject to an inspection law and has not been inspected or, if inspected, has failed to qualify.

Our failure to cancel for any of these reasons will not obligate us to renew the policy.

**9.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 30 days prior to the expiration date (or 60 days prior to the expiration date if this policy has been in effect or renewed for 5 or more years). The mailing of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) **You** do not pay any premium as we require to renew this policy.

(b) **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.

(c) **You** do not accept our offer to renew or **you** refuse to provide us with renewal classification and rating information as we may require.

**10.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**11.** DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**12.** DECLARATIONS

By accepting this policy, **you** agree that:

(a) The statements in **your** application and in the declarations are **your** agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**13.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time of application; or

(b) At any time during the policy period; or

(c) In connection with the presentation or settlement of a claim.

**14.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**15.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Illinois are amended to conform to those statutes.

**16.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date **you** do so.

**17.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Illinois.

---

## SECTION VI-AMENDMENTS AND ENDORSEMENTS

**1.** SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

2. Rented motor vehicles used for United States Government business, when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this Coverage:

1. A $100 deductible applies to each occurrence.

2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

   (a) The **actual cash value** of the property at the time of the occurrence; or

   (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

   (c) Two months basic pay of the **insured**; or

   (d) The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

   (a) The **actual cash value** of the property at the time of the occurrence; or

   (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

   (c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

William E. Roberts
President

# GEICO

**Automobile Policy Endorsement**

GEICO CASUALTY COMPANY

**Rental Reimbursement Endorsement**

Policy Number: 4494-61-34-92

We agree with **you** that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the **insured** toward costs the **insured** incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the **owned auto** has been:

1. Returned to **you**; or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
   (a) Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
   (b) Seventy-two (72) hours after our initial settlement offer;
   whichever comes first.

However, when there is a total theft of an **owned auto**, reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to **you** or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the **actual cash value** of the **owned auto**.
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the **insured** must promptly notify the police that the vehicle was stolen. The **insured** must cooperate fully with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the **loss**.

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

William E. Roberts
President

A-431IL (05-11)



Policy Number: 4494-61-34-92

# AUTOMOBILE POLICY AMENDMENT

## ILLINOIS

## UNDERINSURED MOTORISTS COVERAGE AMENDMENT

*Your* policy provisions are amended as follows:

With respect to such insurance as is afforded by the policy for damages because of *bodily injury* caused by accident and arising out of the ownership, maintenance, or use of an *uninsured motor vehicle* the definition of *uninsured motor vehicle* is amended to include *underinsured motor vehicle,* subject to the following provision:

1. The limits of liability for this insurance as shown in the declarations shall be the total limit of the company's liability for all damages because of *bodily injury* as the result of any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident arising out of the ownership, maintenance or use of an *underinsured motor vehicle* , less those amounts actually recovered under the applicable bodily injury insurance policy, bonds or other security maintained on the *underinsured motor vehicle.*

2. When used in reference to this insurance (including this and other amendments forming a part of the policy):

   *underinsured motor vehicle* means a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the limits for underinsured motorists coverage provided the *insured* by this policy.

   *motor vehicle* means a land motor vehicle or trailer other than: (a) a farm type tractor or other vehicle designed for use principally off public roads, while not upon public roads; (b) a vehicle operated on rails or crawler-treads; or (c) a vehicle while located for use as a residence or premises.

3. In the event of any payment under this coverage, we shall be subrogated to the extent of such payment to all of the *insured's* rights of recovery therefor. The *insured* shall do nothing after loss to prejudice such rights.

4. Unless otherwise agreed, no payment will be made under this coverage until all bodily injury liability limits, or portion thereof, which apply to the *underinsured motor vehicle* and its operators are partially or fully exhausted by payment of judgment or settlement.

5. The maximum amount payable under this coverage is the *Underinsured Motorists Coverage* limit less the amount actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the *underinsured motor vehicle.*

We affirm this amendment.

W. C. E. Robinson
Secretary

GEICO Casualty Company

William E. Roberts
President



GEICO CASUALTY COMPANY

Policy Number: 4494-61-34-92

# Automobile Policy Amendment
## Emergency Road Service Coverage

*Your* policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an *insured* incurs for the *owned* or *non-owned auto*, for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3. if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

*You* may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the *insured* calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the *insured's* expense.

**HIRED SERVICES**

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

*200001449461349212022004523*



**Policy Number:  4494-61-34-92**
**GEICO CASUALTY COMPANY**

One GEICO Center
Macon, GA 31295-0001

October 28, 2019



Ms Briana COOPER
970 LUCINDA DR
BUFFALO GROVE IL  60089-1459

Dear Briana Cooper,

Thank you for being part of the GEICO family!

You're ready for **renewal!** Enclosed in this packet are your policy renewal documents.

## Policy Summary
**Policy Term:**          12-01-19  -  06-01-20

**New Premium:**          $945.57
**Prior Premium:**        $946.91
**Your Total Discounts:** $74.18  Review your discounts at geico.com



**Thanks for Being Paperless**
Not only are you reducing the amount of
mail you receive, but you're also
helping the environment.



**Use the GEICO Mobile App**
45 out of 50 states
accept Digital ID Cards!
(Excludes CT, NM, NH, VA, MA & DC)



**Stick with GEICO**
Saving customers money
for over 75 years.



**24/7 Access**
Claims and Service accessibility
with 97% customer satisfaction.

Sincerely,

William E. Roberts
President

COVER_LTR_0_INC (11-18)

It's never been easier to contact GEICO!      Mobile App      1-800-841-3000     geico.com

**GEICO** ILLINOIS INSURANCE CARD
geico.com   1-800-841-3000

GEICO CASUALTY COMPANY
One GEICO Center • Macon, GA 31295-0001

COMPANY CODE: 41491

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 4494-61-34-92 | 12-01-19 | 06-01-20 |

| YEAR | MAKE | MODEL | VEHICLE ID NO. |
|---|---|---|---|
| 2015 | M BENZ | GLA250 | WDCTG4GB0FJ082655 |

INSURED:
BRIANA COOPER

**GEICO** ILLINOIS INSURANCE CARD
geico.com   1-800-841-3000

GEICO CASUALTY COMPANY
One GEICO Center • Macon, GA 31295-0001

COMPANY CODE: 41491

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 4494-61-34-92 | 12-01-19 | 06-01-20 |

| YEAR | MAKE | MODEL | VEHICLE ID NO. |
|---|---|---|---|
| 2015 | M BENZ | GLA250 | WDCTG4GB0FJ082655 |

INSURED:
BRIANA COOPER

## Important Information

Here are your Policy Identification Cards. Two cards have been provided for each vehicle insured. Please destroy your old cards when the new cards become effective.

Due to space limitations on the ID card, only the Named Insured and the Co-insured are listed. For a full list of drivers covered under this policy, please reference the Drivers section of your Declarations Page (page 5).

Please notify us promptly of any change in your address to be sure you receive all important policy documents. Prompt notification will enable us to service you better.

Your policy is recorded under the name and policy number shown on the card.

If you would like additional ID cards, you can go online to **geico.com** or call us at **1-800-841-3000.**

Ms Briana COOPER
970 LUCINDA DR
BUFFALO GROVE IL 60089-1459

VOID    VOID

VOID    VOID

*400021449461349212022002947*

THE INSURANCE POLICY REPRESENTED BY THIS IDENTIFICATION CARD DOES NOT REPRESENT ANY DRIVER WHO HAS BEEN EXCLUDED FROM THIS POLICY. EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.

**What to do at the time of an accident.**

- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

*Need a tow or roadside assistance?*
Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

U-4-IL (01-13)

THE INSURANCE POLICY REPRESENTED BY THIS IDENTIFICATION CARD DOES NOT REPRESENT ANY DRIVER WHO HAS BEEN EXCLUDED FROM THIS POLICY. EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.

**What to do at the time of an accident.**

- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

*Need a tow or roadside assistance?*
Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

U-4-IL (01-13)



**GEICO.**
geico.com

**Tel:** 1-800-841-3000

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO CASUALTY COMPANY**
One GEICO Center
Macon, GA 31295-0001

**Policy Number: 4494-61-34-92**
**Coverage Period:**
12-01-19 through 06-01-20
12:01 a.m. local time at the address of the named insured.

Date Issued: October 28, 2019

Ms Briana COOPER
970 LUCINDA DR
BUFFALO GROVE IL  60089-1459

Email Address: cooper.briana87@gmail.com

| **Named Insured** | **Additional Drivers** |
|---|---|
| Briana Cooper | None |

| **Vehicle** | | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|---|
| 1 2015 M Benz | Gla250 | WDCTG4GB0FJ082655 | Buffalo Grove IL 60089 | Wells Fargo Dealer Svcs |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** |
|---|---|---|
| Bodily Injury Liability | | |
| Each Person/Each Occurrence | $50,000/$100,000 | $184.50 |
| Property Damage Liability | $25,000 | $274.95 |
| Medical Payments | $1,000 | $11.13 |
| Uninsured Motorists | | |
| Each Person/Each Occurrence | $50,000/$100,000 | $16.48 |
| Underinsured Motorist | | |
| Each Person/Each Occurrence | $50,000/$100,000 | $8.31 |
| Comprehensive | $500 Ded | $42.11 |
| Collision | $500 Ded | $346.27 |
| Emergency Road Service | Full | $11.73 |
| Rental Reimbursement | $50 Per Day | $50.09 |
| | $1,500 Max | - |
| **Total Six Month Premium** | | **$945.57** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

T-V
DEC_PAGE (03-14)  (Page 1 of 2)

*40000144946134921202200293948*

**Discounts**

| The total value of your discounts is | $74.18 |
|---|---|
| Restraint | $4.77 |
| Seat Belt | $0.59 |
| Anti-Theft | $2.22 |
| Good Driver | $19.66 |
| Persistency | $28.72 |
| Anti-Lock Brake | $18.22 |

**The following discounts have also been applied**

| Driving Experience | Included |
|---|---|
| Financial Responsibility | Included |

**Contract Type:** A30IL
**Contract Amendments:** ALL VEHICLES - A30IL

**Unit Endorsements:** A431IL (VEH 1); CC1102 (VEH 1); CC115 (VEH 1); UE316I (VEH 1)

---

### Important Policy Information

-We welcome you to our GEICO family in the Auto Voluntary C20 rate program.

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-GEICO complies with the Illinois Religious Freedom Protection and Civil Union Act, which recognizes civil union rights.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

---

GEICO CASUALTY COMPANY

## COMPLAINT DEPARTMENT ADDRESSES FOR ILLINOIS POLICYHOLDERS

If you have a complaint at any time concerning your insurance policy, you may contact us at the address given below.

Automobile Department:

Regional Vice President
GEICO
One GEICO Center
Macon, GA  31295-0001
Telephone Number:  1-800-841-3000

Motorcycle Department:

Director
GEICO Motorcycle
One GEICO Landing
Virginia Beach, VA  23454
Telephone Number:  1-800-841-3000

Assigned Risk Department:

Regional Vice President
GEICO
PO Box 9015
Woodbury, NY  11797-9015
Telephone Number:  1-800-645-7264

GEICO Umbrella Department:

Manager
GEICO Umbrella Department
One GEICO Boulevard
Fredericksburg, VA 22412
Telephone Number:  1-866-272-5192

Or, if you wish to contact the Illinois State Department of Insurance, write to:

PUBLIC SERVICE DIVISION
Department of Insurance
320 West Washington Street
Springfield, IL  62767-0001

## <u>IMPORTANT INFORMATION ABOUT YOUR COVERAGES</u>

Now is a good time to consider all the coverage options available to you and decide whether you want to make any changes to your coverages. You have the right to increase your coverage, decrease your coverage, change your deductibles, reject certain coverages, or you can add any coverage previously rejected. Please be aware that some coverages are required by law and cannot be rejected.

Adjusting your coverages could result in either an increase or decrease in your six month premium. You can quickly adjust your coverages and see the impact on your premium by logging into **geico.com** or accessing your policy through the **GEICO mobile app**.

### <u>WE OFFER OPTIONAL COMPREHENSIVE AND COLLISION COVERAGE DEDUCTIBLES</u>

Higher deductibles can be an economical way to offset increasing insurance costs. The more you increase your deductibles, the more you can lower the cost of your insurance. If you avoid having accidents, the lower rates you pay by carrying higher deductibles can amount to a substantial savings over the years.

GEICO is accessible to you 24 hours a day, 365 days a year to ensure that we are always available to serve you.

GEICO CASUALTY COMPANY

## ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number: 4494-61-34-92

Effective Date: 12-01-19

Any covered **loss** under the Physical Damage Coverages of the policy will be paid jointly to the **insured** and the Lienholder in the Declarations. We may settle a claim at our option by separate payment to the **insured** and the Lienholder. The Lienholder's interest will not be protected:

1. When fraud, misrepresentation, or material omission has knowingly been committed by or at the direction of any **insured**; or

2. In any case of conversion, embezzlement, or secretion to the vehicle(s) by or at the direction of any **insured**, or any owner of the vehicle(s); or

3. When intentional damage has knowingly been committed to the vehicle(s) by or at the direction of any **insured**, or any owner of the vehicles(s). This exclusion does not apply to the interest of an innocent co-insured who did not cooperate in or contribute to the creation of the **loss** if the **loss** arose out of a pattern of criminal domestic violence and the perpetrator of the **loss** is criminally prosecuted for the act causing the **loss**.

4. For any **loss** or damage caused by, or reasonably expected to result from, a criminal act or omission of any **insured** or any owner of the vehicle(s). This applies regardless of whether any **insured**, or any owner of the vehicle(s) is actually charged with, or convicted of a crime. For the purpose of this clause, criminal acts or omissions do not include traffic violations.

The Lienholder has no greater rights under the provisions of the policy than any **insured**.

The Lienholder must notify us if they become aware of any increased hazard or change of ownership of the vehicle(s) or they will lose all rights under this policy.

If any **insured** fails to file with us a Proof of Loss within 91 days after the **loss**, the Lienholder must do so within the following 60 days.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of our payment to the Lienholder. If the policy is in effect as to the Lienholder but has been canceled as to any **insured**, the Lienholder must assign the loan to us to the extent of our payment, if we ask.

We will notify the Lienholder at least 10 days and not less than the notice period required by law before we cancel their interest in the policy.

This endorsement forms a part of **your** policy. It is effective at 12:01 A.M. local time at **your** address on the effective date shown above.



**GEICO**®

**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

---

# Illinois
# Family
# Automobile
# Insurance
# Policy

---

GEICO CASUALTY COMPANY

*4000014494613492120220029562*

# POLICY INDEX

Page

**SECTION I**
**Liability Coverages**
**Your Protection Against Claims From Others**
Definitions...........................................................3
Losses We Will Pay For You........................................ 4
Additional Payments We Will Make Under The
    Liability Coverages. ........................................... 4
      Legal Expenses And Court Costs
      Bail And Appeal Bonds
      First Aid Expenses
Exclusions: When Section I Does Not Apply................ 4
Persons Insured: Who Is Covered ............................... 6
Financial Responsibility Laws ...................................... 6
Out Of State Insurance ............................................. 6
Limits Of Liability ..................................................... 6
Other Insurance ...................................................... 6
Conditions .............................................................. 6
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured Action
    Against Us
    Subrogation

**SECTION II**
**Automobile Medical Payments Coverage**
**Protection For You And Your Passengers For Medical Expenses**
Definitions...........................................................7
Payments We Will Make ........................................... 7
Exclusions: When Section II Does Not Apply .............. 8
Limit Of Liability...................................................... 9
Other Insurance ...................................................... 9
Conditions .............................................................. 9
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**
**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**
Definitions...........................................................9
Losses We Will Pay ................................................ 10
    Comprehensive Coverage...................................... 10
    Collision Coverage............................................... 11
Additional Payments We Will Make Under The
    Physical Damage Coverages.................................. 11
    Car Rental If Your Car Is Stolen
Exclusions: When The Physical Damage
    Coverages Do Not Apply ...................................... 11
Limit Of Liability..................................................... 12
Other Insurance ..................................................... 12

Page

Conditions .............................................................12
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To
    Bailee Subrogation
    Assignment

**SECTION IV**
**Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By Uninsured And Hit And Run Motorists**
Definitions...........................................................14
Losses We Pay....................................................... 15
Exclusions: When Section IV Does Not Apply ............. 15
Limits Of Liability ................................................... 15
Other Insurance ..................................................... 16
Arbitration............................................................. 16
Trust Agreement .................................................... 17
Conditions .............................................................17
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical
    Reports Payment Of Loss

**SECTION V**
**General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory................................................................18
Premium................................................................ 18
Changes................................................................18
Assignment ........................................................... 18
Policy Period.......................................................... 18
Cancellation By The Insured...................................... 18
Cancellation By Us .................................................. 18
Cancellation By Us Is Limited. ...................................18
Renewal ............................................................... 19
Other Insurance ..................................................... 19
Dividend Provision .................................................. 19
Declarations........................................................... 19
Fraud And Misrepresentation .................................... 20
Examination Under Oath........................................... 20
Terms Of Policy Conformed To Statutes...................... 20
Disposal of Vehicle ................................................. 20
Choice of Law......................................................... 20

**SECTION VI**
**Amendments And Endorsements**
Special Endorsement
    United States Government Employees................... 20

**Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."**

**AGREEMENT**

**We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:**

---

**SECTION I - LIABILITY COVERAGES**
**Your Protection Against Claims from Others**
**Bodily Injury Liability and Property Damage Liability**

---

**DEFINITIONS**

The words italicized in Section I of this policy are defined below.

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease or death.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4. ***Insured*** means a person or organization described under **PERSONS INSURED**.

5. ***Non-owned auto*** means a *private passenger auto*, *farm auto*, *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your* relative, other than a ***temporary substitute auto***. ***You*** or ***your relative*** must be using the ***non-owned auto*** or ***trailer*** within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

   A ***non-owned auto*** does not include:

   (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

   (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

   (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

   (d) any motor vehicle rented or leased by *you* or a *relative* which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

6. ***Owned auto*** means:

   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;

   (b) A *trailer* owned by *you*;

   (c) A *private passenger auto*, *farm auto* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if

      (i) It replaces an *owned auto* as defined in (a) above; or

      (ii) We insure all *private passenger autos*, *farm autos* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

   (d) A *temporary substitute auto*.

7. ***Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.

8. ***Relative*** means a person related to *you* by blood, marriage, civil union, or adoption who resides in *your* household.

9. ***Temporary substitute auto*** means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

   A ***temporary substitute auto*** does not include:

   (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

   (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

   (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

(d) any motor vehicle rented or leased by *you* or a *relative* which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

10. *Trailer* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger auto*, *farm auto* or *utility auto*.

11. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *You* and *your* mean the Named Insured shown in the Declarations or his or her spouse or party to a civil union, if a resident of the same household.

14. *Personal vehicle sharing program* means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

15. *Ride-sharing* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. *Transportation network company* means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *Bodily injury*, sustained by a person, or
2. Damage to or destruction of property;

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.
2. All court costs charged to an *insured* in a covered lawsuit.
3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.
4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.
5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto* or *non-owned auto*, not to exceed $250 per bail bond.
6. We will upon request by an *insured*, provide reimbursement for the following items:
   (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
   (c) All reasonable costs incurred by an *insured* at our request.

*Your* available limits of liability coverage will not be reduced by our payment of any costs listed under this provision.

## EXCLUSIONS

### When Section I Does Not Apply

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

Section I does not apply:

1. To *bodily injury* to any *insured* or any family member of an *insured* residing in the *insured's* household.

   *Insured* means the person against whom claim is made or suit is brought if that person is an *insured* as defined in Section I of the policy.

   This exclusion does not apply:
   (a) When a third party acquires a right of contribution against a member of the injured person's family; or
   (b) When any person not in the *insured's* household was driving the vehicle of the *insured* involved in the accident.

2. To **bodily injury** or property damage arising out of the ownership, maintenance, or use of any vehicle:

   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

   (b) while being used for **ride-sharing**.

   However, this exclusion does not apply to a vehicle used in an ordinary car pool or where **bodily injury** or property damage results from **your** occupancy of such a non-owned vehicle as other than the operator.

   An ordinary car pool is one where:

   (i) An **insured** receives no payment for using a vehicle for a car pool ride; or

   (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

3. To **bodily injury** or property damage caused intentionally by or at the direction of an **insured**.

4. To **bodily injury** or property damage that is insured under a nuclear liability policy.

5. To **bodily injury** or property damage arising from the operation of farm machinery.

6. To **bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured**.

   However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

7. To **bodily injury** to a fellow employee of an **insured** if the fellow employee's **bodily injury** arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend **you** if suit is brought by a fellow employee against **you** alleging use, ownership or maintenance of an auto by **you**.

8. To a **non-owned auto** while maintained or used by any person while such person is employed or otherwise engaged in (1) any **auto business** if the accident arises out of that business; (2) any other business or occupation of any **insured** if the accident arises out of that business or occupation except a **private passenger auto** used by **you** or **your** chauffeur or domestic servant while engaged in such other business.

9. To property owned, operated, transported or used by an **insured**.

10. To property rented to or in charge of an **insured** other than a residence or private garage.

11. To an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.

12. To the United States of America or any of its agencies.

13. To any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

14. To any liability assumed under any contract or agreement.

15. To:

   (a) **bodily injury** or property damage caused by an auto driven in or preparing for any prearranged or organized racing, speed, or demolition contest or stunting activity of any nature; or

   (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

16. For any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.

17. To any motor vehicle, or series of motor vehicles, leased by **you** or a **relative** for less than six months unless the motor vehicle is described, and premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

18. To any motor vehicle, or series of motor vehicles, regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the motor vehicle for this coverage, in the declarations of this policy.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You* and *your relatives*;
2. Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following with regard to a *non-owned auto*:

1. (a) *You*;
   (b) *Your relatives* when using a *private passenger auto*, *farm auto* or *utility auto* or *trailer*.
   Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;
2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.
   The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages resulting from *bodily injury* sustained by one person in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress, resulting from *bodily injury* sustained by two or more persons as the result of one accident or occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If there is other applicable primary liability insurance available for the *insured*, we will pay only our share of the damages. Our share of the damages is the proportion that our limit of liability bears to the total of all primary liability insurance available for the *insured*.

Any insurance we provide for a *non-owned auto* shall be excess over any other applicable liability insurance available for the *insured*. If the *insured* has other applicable excess liability insurance that applies to the *non-owned auto*, we will pay only our share of the damages. Our share of the damages is the proportion that our limit of liability bears to the total of all applicable excess liability insurance available for the *insured*.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE
   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and

(d) The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a) In the investigation of the occurrence;
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and
(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:
    (i) By a final judgment against the *insured* after actual trial; or
    (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

**SECTION II - AUTO MEDICAL PAYMENTS**
**Protection For You And Your Passengers For Medical Expenses**

---

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage.

In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. *You* and each *relative* who sustains *bodily injury* caused by accident:

(a) While *occupying* the *owned auto*; or
(b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
(c) When struck as a pedestrian by an auto or *trailer*.

2. Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

## EXCLUSIONS

### When Section II Does Not Apply

1. There is no coverage for *bodily injury* arising out of the ownership, maintenance, or use of an *owned auto* or *non-owned auto* while being used:

   (a) to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

   (b) for *ride-sharing*.

   However, this exclusion will not apply to ordinary car pools. An ordinary car pool is one where:

   (i) An *insured* receives no payment for using a vehicle for a car pool ride; or

   (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

   This exclusion does not apply to *you* or any *relative* while a passenger and not operating the vehicle.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

   (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

   (b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

7. There is no coverage for:

   (a) *bodily injury* caused by an auto driven in or preparing for any prearranged or organized racing, speed, or demolition contest or stunting activity of any nature; or

   (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

8. There is no coverage for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

9. There is no coverage for *bodily injury* sustained by any *insured* while operating, *occupying*, or when struck as a pedestrian by any vehicle leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

10. There is no coverage for *bodily injury* sustained by any *insured* while operating, *occupying*, or when struck as a pedestrian by any vehicle regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

11. There is no coverage for *bodily injury* to any *insured* arising out of:

    (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

    (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

    (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

    (d) any motor vehicle rented or leased by *you* or a *relative* which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

    This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

## OTHER INSURANCE

If the *insured* has other medical payments insurance against a *loss* covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to this Coverage:

1.  NOTICE

    As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a) The identity of the *insured*;
    (b) The time, place and details of the accident; and
    (c) The names and addresses of the injured, and of any witnesses.

2.  TWO OR MORE AUTOS

    If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3.  ACTION AGAINST US

    Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

4.  MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

    As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

    The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

    We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

5.  SUBROGATION

    When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them. This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

## SECTION III - PHYSICAL DAMAGE COVERAGES
## Your Protection For Loss or Damage To Your Car

## DEFINITIONS

The definitions of the terms *auto business*, *farm auto*, *personal vehicle sharing program*, *private passenger auto*, *relative*, *ride-sharing*, *temporary substitute auto*, *transportation network company*, *utility auto*, *you*, *your* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1.  *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.
2.  *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
3.  *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4.  *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle;

*40001449461349212022002956*

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5. ***Depreciation*** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

6. ***Insured*** means:
   (a) Regarding the *owned auto*:
      (i) *You* and *your relatives*;
      (ii) A person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.
   (b) Regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. ***Loss*** means direct and accidental loss of or damage to:
   (a) The auto, including its equipment; or
   (b) Other insured property.

8. ***Non-owned auto*** means a *private passenger auto*, *farm auto* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner. A motor vehicle rented or leased for more than 30 days will be considered as furnished for regular use.

   A *non-owned auto* does not include:
   (a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or
   (b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or
   (c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or
   (d) any motor vehicle rented or leased by *you* or a *relative* which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

9. ***Owned auto*** means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) A *private passenger auto*, *farm auto* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more; if
      (i) It replaces an *owned auto* as described in (a) above, or
      (ii) We insure all *private passenger autos*, *farm autos*, *utility autos* and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;
   (c) A *temporary substitute auto*.

10. ***Trailer*** means a trailer designed to be towed by a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY FOR YOU
### Comprehensive (Excluding Collision)

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned auto* or *non-owned auto*. This includes breakage of glass and *loss* caused by:
   (a) Missiles;
   (b) Falling objects;
   (c) Fire;
   (d) Lightning;
   (e) Colliding with a bird or animal;
   (f) Windstorm;
   (g) Hail;
   (h) Water;
   (i) Theft;
   (j) Larceny;
   (k) Explosion;
   (l) Earthquake;
   (m) Flood;
   (n) Malicious mischief;
   (o) Vandalism;
   (p) Riot; or
   (q) Civil commotion

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

(a) Fire;
(b) Lightning;
(c) Flood;
(d) Theft of the entire automobile;
(e) Falling objects;
(f) Earthquake; or
(g) Explosion.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

**Collision**

1. We will pay for *collision loss* to the *owned auto* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $25 per day nor more than $750 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

3. We will pay for the replacement of a child passenger restraint system when the restraint system is in the insured auto at the time *loss*.

**EXCLUSIONS**

**When The Physical Damage Coverages Do Not Apply**

1. There is no coverage for any vehicle:

(a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products or

(b) while being used for *ride-sharing*.

However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

(i) An *insured* receives no payment for using a vehicle for a car pool ride; or

(ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by *collision*, are not covered.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover *loss* to any radar or laser detector.

9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger autos*, *farm autos* or *utility autos*.

10. We do not cover *loss* for *custom parts or equipment*, in excess of $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

11. There is no coverage for any liability assumed under any contract or agreement.

12. There is no coverage for any *loss* or damage resulting from:
   (a) The acquisition of a stolen vehicle;
   (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
   (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
   (d) The sale of an *owned auto*.

13. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. There is no coverage for any *loss* caused by:
   (a) an auto driven in or preparing for any prearranged or organized racing, speed or demolition contest or stunting activity of any nature; or
   (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

15. There is no coverage for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

16. We do not cover any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

17. We do not cover any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss.* Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle. However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.
   *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE
   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.
   In case of theft, the *insured* must promptly notify the police.

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully with the policy investigation, with the prosecution of any person(s) charged with theft, and with any civil suit brought by us against the person(s) responsible to recover for the *loss*.

2. TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a) In the investigation of the *loss*;
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of subrogation against any legally responsible person or organization;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days.

5. INSURED'S DUTIES IN EVENT OF LOSS

In the event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
(c) At our request, the *insured* will exhibit the damaged property.

6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF LOSS

We may at our option:
(a) Pay for the *loss*; or
(b) Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights. This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

**10.** ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

---

## SECTION IV - UNINSURED MOTORIST COVERAGE
### Protection For You and Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists

---

### DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1.  **Hit-and-run motor vehicle** is a motor vehicle causing **bodily injury** to an **insured** through physical contact with him or with a motor vehicle he is **occupying** at the time of the accident and whose operator or owner cannot be identified, provided the **insured** or someone on his behalf:

    (a) Reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

    (b) Files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

    (c) Makes available for inspection, at our request, the auto **occupied** by the **insured** at the time of the accident.

2.  **Insured** means:

    (a) The Named Insured shown on the Declarations and his or her spouse or party to a civil union, if a resident of the same household;

    (b) **Relatives** of (a) above if residents of his household;

    (c) Any other person while **occupying** an **owned auto**;

    (d) Any person who is entitled to recover damages because of **bodily injury** sustained by an **insured** under (a), (b), and (c) above.

    If there is more than one **insured**, our limit of liability will not be increased.

3.  **Insured auto** is an auto:

    (a) Described in the declarations and covered by the bodily injury liability coverage of this policy;

    (b) Temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or

    (c) Operated by **you** or **your** spouse or party to a civil union, if a resident of the same household.

    But the term **insured auto** does not include:

    (i) An auto used to carry passengers or goods for hire, except in a car pool;

    (ii) An auto being used without the owner's permission; or

    (iii) Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an **insured**.

4.  **Occupying** means in, upon, entering into or alighting from.

5.  **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6.  **Uninsured motor vehicle** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

    The term **uninsured motor vehicle** does not include:

    (a) An **insured auto**;

    (b) An auto owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

    (c) An auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;

    (d) A land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; or

    (e) Any vehicle, equipment, all terrain vehicle, off road vehicle, or farm type tractor or equipment designed mainly for use off public roads while not upon public roads

**LOSSES WE PAY**

Under the Uninsured Motorists Coverage we will pay damages for *bodily injury* to the *insured* and sustained by the *insured* caused by an accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* or *hit-and-run motor vehicle* arising out of the ownership, maintenance or use of that *uninsured motor vehicle* or *hit-and-run motor vehicle*.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us. The dispute may be arbitrated if an agreement cannot be reached.

**EXCLUSIONS**

**When Section IV Does Not Apply**

1. This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured motor vehicle* owned by an *insured* or a *relative* is not covered.

3. The Uninsured Motorists Coverage will not benefit any workers' compensation insurer, self-insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5. We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages under the uninsured or underinsured motorist coverage of this policy.

7. This coverage does not apply to any liability assumed under any contract or agreement.

8. This coverage does not apply to damage caused by an *insured's*:

   (a) participation in or preparation for any prearranged or organized racing, speed or demolition contest or stunting activity of any nature; or

   (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

9. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

10. There is no coverage for *bodily injury* or property damage under this Section for any person or organization while an *owned auto* or *non-owned auto*:

    (a) is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) is being used for *ride-sharing*.

    However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

    (i) An *insured* receives no payment for using a vehicle for a car pool ride; or

    (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

    This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages resulting from *bodily injury* sustained by one person in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress, resulting from *bodily injury* sustained by two or more persons as the result of one accident or occurrence.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

   If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

   The amount payable under this Coverage will be reduced by all amounts:

   (a) Paid by or for all persons or organizations liable for the injury;
   (b) Paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or
   (c) Paid or payable under any workers' compensation law, disability benefits law or any similar law.

## OTHER INSURANCE

Coverage under Section IV may not be stacked, aggregated, or combined with other uninsured motorist coverage or underinsured motorists coverage.

If there is other applicable uninsured motorist coverage or underinsured motorists coverage, the maximum an *insured* may recover under all applicable uninsured motorist coverages or underinsured motorists coverages is the highest applicable limit of liability for one (1) vehicle under one (1) of the available policies, even though separate premiums may have been paid for each policy or vehicle. If there is other applicable uninsured motorist coverage or underinsured motorists coverage, subject to the LIMITS OF LIABILITY under Section IV, we will pay only our share of the damages.

Our share is the proportion that our limit of liability bears to the total of all available uninsured motorist coverage or underinsured motorists coverage limits.

However, any uninsured motorist coverage or underinsured motorists coverage we provide for *bodily injury* to *you* or a *relative* when not *occupying* an *owned auto*, subject to the LIMITS OF LIABILITY under Section IV, shall be excess over any other uninsured motorist coverage or underinsured motorists coverage and our coverage applies only in the amount by which it exceeds such other uninsured motorist coverage or underinsured motorists coverage.

If more than one uninsured motorist or underinsured motorists policy applies as excess, then:

(1) the amount payable under this policy shall not exceed the difference between the uninsured motorist coverage or underinsured motorists coverage limit of the policy that applies as primary and the highest applicable uninsured motorist coverage or underinsured motorists coverage limit of any one of the uninsured motorist coverages or underinsured motorists coverages that applies as excess to the primary uninsured motorist or underinsured motorists coverage; and

(2) we are then liable, subject to the LIMITS OF LIABILITY under Section IV, only for our share which is the proportion that our limit of liability bears to the total of all available uninsured motorist coverage or underinsured motorists coverage limits that applies as excess to the primary uninsured motorist or underinsured motorists coverage.

We will not pay for any damages which would duplicate any payment made for damages under other insurance.

## ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

(a) The extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or

(b) The amount of damages sustained by the *insured* may be arbitrated at the request of the *insured*. Binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

Upon written demand from the *insured* for arbitration, each part will select an arbitrator and the two arbitrators so named will select a third arbitrator. If such arbitrators are not selected within 45 days of such request, either party may request that the matter be submitted for arbitration to the American Arbitration Association. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Unless both parties agree otherwise, arbitration will take place in the county and *state* in which the *insured* lives. Local rules of law as to procedure and evidence will apply.

Any decision made by arbitrators shall be binding for the amount of damages not exceeding $75,000 for *bodily injury* to or death of any one person, $150,000 for *bodily injury* to or death of 2 or more persons in any one motor vehicle accident, or the corresponding policy limits for *bodily injury* or death, whichever is less.

When an award exceeds $75,000 for *bodily injury* to or death of any one person, or $150,000 for *bodily injury* to or death of 2 or more persons in any one motor vehicle accident, or the corresponding policy limits for *bodily injury* or death, whichever is less, either party shall have the right to a trial on all the issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Where such right is exercised by either party, the judgment of the arbitrators shall not be binding on either party.

We will be obligated to pay no more than the applicable policy limits for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in this policy.

We will pay all arbitration expenses except where recovery by the claimant exceeds the minimum Illinois Safety Responsibility Law limits. If recovery exceeds the minimum limit, the person making claim shall pay his expenses and an equal share of the expenses of the third arbitrator to the extent that recovery exceeds the minimum limit under the law.

**TRUST AGREEMENT**

When we make a payment under this Coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured*, in his own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists Coverage:

1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a) The identity of the *insured*;

(b) The time, place and details of the accident; and

(c) The names and addresses of the injured, and any witnesses.

If the *insured* or his or her legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

No suit, action, or arbitration proceedings for recovery of any claim may be brought against us until the *insured* has fully complied with all the terms of this policy. The *insured* must file proof of loss with the Company within 1 year from the date of loss. Further, any suit, action, or arbitration will be barred unless commenced within two years after the date the claim was denied in whole or in part. Arbitration proceedings will not commence until we receive *your* written demand for arbitration.

4. PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable:

(a) To the *insured* or his authorized representative;

(b) If the *insured* is a minor, to his parent or guardian; or

(c) If the *insured* is deceased, to his surviving spouse or party to a civil union, if a resident of the same household; otherwise

*4000014494613492120022002960*

(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may at our option, pay an amount due in accordance with (d) above.

---

## SECTION V-GENERAL CONDITIONS

These conditions apply to all Coverages in this policy.

1. **TERRITORY**

   This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. **PREMIUM**

   When **you** dispose of, acquire ownership of, or replace a **private passenger auto, farm auto** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. **CHANGES**

   The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

   We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your state**.

   The premium for each auto is based on the information we have in **your** file. **You** agree:

   (a) That we may adjust **your** policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

   (b) That **you** will cooperate with us in determining if this information is correct and complete.

   (c) That **you** will notify us of any changes in this information.

   (d) That we may adjust **your** policy premium during the policy term or at renewal if any person who is an **insured** becomes an additional driver during the policy term or at renewal.

   Any calculation or recalculation of **your** premium or changes in **your** coverage will be based on the rules, rates and forms on file, if required, for our use in **your** state.

4. **ASSIGNMENT**

   Assignment of interest under this policy will not bind us without our written consent. If **you** die, this policy will cover:

   (a) **Your** surviving spouse or party to a civil union, if a resident of the same household;

   (b) The executor or administrator of **your** estate, but only while operating an **owned auto** and while acting within the scope of his duties;

   (c) Any person having proper temporary custody of and operating the **owned auto**, as an **insured**, until the appointment and qualification of the executor or administrator of **your** estate; and

   (d) Under the Medical Payments Coverage, a person who was a **relative** at the time of **your** death.

5. **POLICY PERIOD**

   Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

6. **CANCELLATION BY THE INSURED**

   **You** may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

   If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be pro-rated.

7. **CANCELLATION BY US**

   We may cancel this policy by mailing to **you**, at the last mailing address known to the company, written notice stating when the cancellation will be effective.

   We will mail this notice:

   (a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

   (b) 30 days in advance in all other cases.

   The mailing of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

   If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be pro-rated. Payment or tender of unearned premium is not a condition of cancellation.

**8.** CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) **You** do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

(b) **You** obtained the policy through material misrepresentation.

(c) Any **insured** violated any of the terms and conditions of the policy.

(d) **You** failed to disclose fully in **your** application **your** motor vehicle accidents and moving traffic violations for the preceding 36 months.

(e) Any **insured** made a false or fraudulent claim or knowingly aided or abetted another in presenting such a claim.

(f) Any **insured** or customary operator:

(i) Has within the 12 months prior to the notice of cancellation, had his driver's license under suspension or revocation;

(ii) Is or becomes subject to epilepsy or heart attacks and cannot produce a certificate from a physician testifying to his unqualified ability to operate a motor vehicle.

(iii) Has an accident record, conviction record (criminal or traffic), physical, mental or other condition which is such that his operation of an auto might endanger the public safety.

(g) Any **insured** or customary operator, within 36 months prior to the notice of cancellation or non-renewal, has been addicted to the use of narcotics or drugs.

(h) Any **insured** or customary operator has been convicted or forfeited bail during the 36 months immediately preceding the notice of cancellation for:

(i) Any felony;

(ii) Criminal negligence in death, homicide or assault arising out of the operation of a motor vehicle;

(iii) Operating a motor vehicle while in an intoxicated condition;

(iv) Operating a motor vehicle while under the influence of drugs;

(v) Leaving the scene of an accident without stopping to report;

(vi) Theft or an unlawful taking of an auto; or (vii) making false statements in an application for a driver's license.

(i) Any **insured** or customary operator has been convicted of or forfeited bail for 3 or more violations within the 12 months immediately preceding the notice of cancellation, of any law, ordinance or regulation limiting the speed of motor vehicles, of any of the provisions of motor vehicle laws of any state, violation of which is a misdemeanor, whether or not the violations were the repetitions of the same offense or different offenses.

(j) The insured auto is mechanically defective to the extent that its operation might endanger public safety.

(k) The insured auto is used in carrying passengers for hire or compensation. However, the use of any auto for a car pool shall not be considered use of an auto for hire or compensation.

(l) The insured auto is used in the business of transporting flammables or explosives.

(m) The insured auto is an authorized emergency vehicle.

(n) The insured auto is modified or changed in condition so as to increase the risk substantially.

(o) The insured auto is subject to an inspection law and has not been inspected or, if inspected, has failed to qualify.

Our failure to cancel for any of these reasons will not obligate us to renew the policy.

**9.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 30 days prior to the expiration date (or 60 days prior to the expiration date if this policy has been in effect or renewed for 5 or more years). The mailing of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) **You** do not pay any premium as we require to renew this policy.

(b) **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.

(c) **You** do not accept our offer to renew or **you** refuse to provide us with renewal classification and rating information as we may require.

**10.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**11.** DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**12.** DECLARATIONS

By accepting this policy, *you* agree that:

(a) The statements in *your* application and in the declarations are *your* agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**13.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time of application; or

(b) At any time during the policy period; or

(c) In connection with the presentation or settlement of a claim.

**14.** EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**15.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Illinois are amended to conform to those statutes.

**16.** DISPOSAL OF VEHICLE

If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an *owned auto*, any coverage provided by this policy for that vehicle will terminate on the date *you* do so.

**17.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Illinois.

## SECTION VI-AMENDMENTS AND ENDORSEMENTS

**1.** SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

2. Rented motor vehicles used for United States Government business, when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this Coverage:

1. A $100 deductible applies to each occurrence.

2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

(a) The *actual cash value* of the property at the time of the occurrence; or

(b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

(c) Two months basic pay of the *insured*; or

(d) The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

(a) The *actual cash value* of the property at the time of the occurrence; or

(b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

(c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

William E. Roberts
President


**GEICO**

GEICO CASUALTY COMPANY

Policy Number: 4494-61-34-92

# Automobile Policy Endorsement
## Rental Reimbursement Endorsement

We agree with **you** that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the **insured** toward costs the **insured** incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and

2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and

3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the **owned auto** has been:

1. Returned to **you**; or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
    (a) Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
    (b) Seventy-two (72) hours after our initial settlement offer;
    whichever comes first.

However, when there is a total theft of an **owned auto**, reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to **you** or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the **actual cash value** of the **owned auto**.
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the **insured** must promptly notify the police that the vehicle was stolen. The **insured** must cooperate fully with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the **loss**.

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

William E. Roberts
President

A-431IL (05-11)



# AUTOMOBILE POLICY AMENDMENT

## ILLINOIS

## UNDERINSURED MOTORISTS COVERAGE AMENDMENT

Policy Number:  4494-61-34-92

*Your* policy provisions are amended as follows:

With respect to such insurance as is afforded by the policy for damages because of *bodily injury* caused by accident and arising out of the ownership, maintenance, or use of an *uninsured motor vehicle* the definition of *uninsured motor vehicle* is amended to include *underinsured motor vehicle,* subject to the following provision:

1.  The limits of liability for this insurance as shown in the declarations shall be the total limit of the company's liability for all damages because of *bodily injury* as the result of any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident arising out of the ownership, maintenance or use of an *underinsured motor vehicle* , less those amounts actually recovered under the applicable bodily injury insurance policy, bonds or other security maintained on the *underinsured motor vehicle.*

2.  When used in reference to this insurance (including this and other amendments forming a part of the policy):

    *underinsured motor vehicle* means a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the limits for underinsured motorists coverage provided the *insured* by this policy.

    *motor vehicle* means a land motor vehicle or trailer other than: (a) a farm type tractor or other vehicle designed for use principally off public roads, while not upon public roads; (b) a vehicle operated on rails or crawler-treads; or (c) a vehicle while located for use as a residence or premises.

3.  In the event of any payment under this coverage, we shall be subrogated to the extent of such payment to all of the *insured's* rights of recovery therefor.  The *insured* shall do nothing after loss to prejudice such rights.

4.  Unless otherwise agreed, no payment will be made under this coverage until all bodily injury liability limits, or portion thereof, which apply to the *underinsured motor vehicle* and its operators are partially or fully exhausted by payment of judgment or settlement.

5.  The maximum amount payable under this coverage is the *Underinsured Motorists Coverage* limit less the amount actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the *underinsured motor vehicle*.

We affirm this amendment.

W. C. E. Robinson
Secretary

GEICO Casualty Company

William E. Roberts
President



**GEICO**

GEICO CASUALTY COMPANY

Policy Number: 4494-61-34-92

# Automobile Policy Amendment
## Emergency Road Service Coverage

*Your* policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an *insured* incurs for the *owned* or *non-owned auto*, for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3. if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

*You* may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the *insured* calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the *insured's* expense.

**HIRED SERVICES**

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

*400001449461349212022002963*