UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANA SIEGAL, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 1:20-cv-04306

Judge Sharon Johnson Coleman

**MEMORANDUM OPINION AND ORDER**

In September 2020, Plaintiff Briana Siegal filed a five-count Amended Complaint challenging defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company's (collectively "GEICO" or "defendants") auto insurance premium rates as unconscionably excessive in light of an alleged reduction in the insurance risk pool due to the COVID-19 pandemic. GEICO moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part GEICO's motion and dismisses Counts I, II, and V of Siegal's Amended Complaint.

**Background**

Defendants are Maryland corporations with their principal place of business in Chevy Chase, Maryland. Defendants sell personal automobile insurance in states across the country, including Illinois. Siegal has two auto insurance policies through GEICO Casualty Company. She renewed her auto insurance policies with GEICO for the period beginning June 1, 2020, and received a "GEICO Giveback" discount of 15% of her premium for six months due to the COVID-19 pandemic. Siegal alleges that this discount is insufficient to account for the diminished insurance risk pool during the pandemic.

In response to the COVID-19 pandemic, Illinois issued "Stay-at-Home" orders to minimize the virus's spread. States across the nation implemented similar policies. Many businesses shut down their in-person operations, and significantly fewer people were driving to work or school, to shop or run errands. These various safety measures drastically reduced the number of cars on the road beginning in March 2020.

Auto insurance premiums are calculated, in part, based on an overall risk pool. When there are more cars on the road, the risk of accidents increases. Those higher risks are reflected in higher insurance premiums. The opposite is also true. When there are fewer cars on the road, insurance premiums will (theoretically) be lower. Customers purchase an insurance policy with premiums that are determined in part by the insurer's prediction of the risk pool during the life of that policy. Siegal's specific policy also contained a provision that allowed her to cancel at any time by providing GEICO with notice. This provision also included that, in the event of her cancellation, she may be entitled to a pro-rated premium refund.

For their part, many auto insurers responded to the pandemic by creating discount programs. GEICO developed the previously discussed "GEICO Giveback" program, which provided new or renewing customers a 15% discount on their 6 or 12 month policy. GEICO explained this program on its website by stating that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

Siegal alleges (1) GEICO breached its contract with her and those similarly situated by exercising its discretion in bad faith, (2) she is entitled to declaratory relief under the doctrine of frustration of purpose, (3) GEICO violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") by engaging in unfair conduct, (4) GEICO violated the ICFA by engaging in deceptive conduct, and (5) GEICO was unjustly enriched through its allegedly unlawful behavior. At its core, this litigation is about two issues: whether GEICO had a duty to refund its customers after an unexpected drop in auto insurance risk and GEICO's potential liabilities created by its discount program.

*Breach of Contract – Duty of Good Faith*

Under Illinois law, every contract implies a covenant of good faith and fair dealing between its parties. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). This covenant does not, however, create an independent cause of action or an additional source of duties for the parties to the contract. *Id.* Instead, it serves as a guide to the construction of explicit terms in the agreement. *Id.; McArdle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751, 755 (7th Cir. 2013). It may thus inform a breach of contract claim if "the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc v. Paramont Prop.,* 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (St. Eve, J.).

Here, Siegal relies on the "Changes" section of her insurance contract with GEICO. That

section reads:

> The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.
>
> We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your state*.
>
> The premium for each auto is based on the information we have in *your* file. *You* agree:
>
> (a) That we may adjust your *policy* premiums during the policy term if any of this information on which the premiums are based in incorrect, incomplete or changed.
>
> (b) That *you* will cooperate with us in determining if this information is correct and complete.
>
> (c) That *you* will notify us of any changes in the information.
>
> (d) That we may adjust *your* policy premium during the term or at renewal if any person who is an *insured* becomes an additional driver during the policy term or at renewal.

(FAC ¶ 33.) (emphasis in original). Siegal argues that this section vested GEICO with discretion to alter her premium in response to a change in the underlying conditions of her policy—in this case, the reduction in the insurance risk pool due to the pandemic. She points specifically to the provision that GEICO "may adjust . . . premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed."

But Siegal fails to read this language in the context of the agreement, as a whole, as required under Illinois' well-established rules of contract construction. *See Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 776 (Ill. 2016). The sentence that Siegal cites is a subsection of a provision relating to her unique policy: "[t]he premium for each auto is based on the information we have in *your* file." The section delineates Siegal's duties to update GEICO with changes in the information underlying her policy. GEICO is vested with some discretion, but only to provide "more coverage without an increase in premium," not to decrease the premium in response to changing circumstances.

4

Siegal cites *North American Elite Ins. Co. v. Menard*, 2020 WL 5810411 (N.D. Ill. Sept. 30, 2020) (Ellis, J.) and *LaSalle Bank Nat'l Ass'n*, 588 F. Supp. 2d 840 to support the proposition that GEICO was required to exercise any contractual discretion reasonably and, in a manner not inconsistent with its policy-holders' reasonable expectations. While she reads these cases correctly, neither applies here. In *LaSalle Bank*, borrower-defendants alleged that a lender acted in bad faith by failing to exercise discretion that it had expressly under their contract. 588 F. Supp. 2d at 858 (finding that lender had "unlimited discretion" under the contract). In *Menard*, by contrast, the movant's claim for failure to exercise explicit discretion in bad faith failed. 2020 WL 5810411, at *5. The *Menard* court instead found gaps in the contract that required discretion and that, when filled, would not modify any express terms of the agreement. *Id.* Here, GEICO had neither the express discretion to reduce premiums nor gaps to fill in good faith. The only discretion that GEICO had in the contract was to provide more coverage without increasing Siegal's premium. There were no gaps to be filled because the rest of the "Changes" section clearly relates to plaintiff's specific information underlying her policy. Reading the contract otherwise would not fill gaps, but modify express terms of the agreement.

In asserting her claim, Siegal must identify "in the express contract of the parties a satisfactory basis which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties making the contract." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (1st Dist. 2004). Even read in the light most favorable to Siegal, her contract with GEICO vests it with no such discretion to refund her premiums based on a decrease in the general risk pool. She therefore fails to state a claim for breach of contract based on a theory of breach of the implied duty of good faith.

*Frustration of Purpose*

Siegal seeks a declaration that "full payment of premiums is no longer required, and that any

excessive premiums paid to date must be disgorged by GEICO" based on the doctrine of frustration of purpose. (FAC ¶ 62.) This doctrine—also known as "commercial frustration"—is generally understood as an affirmative defense to the enforcement of a contract. *See United States v. Southwestern Elec. Co-op., Inc.*, 869 F.2d 310, 315 (7th Cir. 1989); *see also Northern Ill. Gas Co. v. Energy Coop., Inc.*, 461 N.E.2d 1049, 1059 (3d Dist. 1984). Siegal attempts to use the doctrine as a theory of liability. Putting aside whether Siegel can use the doctrine in this way, the claim fails on its merits.

To succeed with a claim of frustration of purpose, the invoking party "must show that (1) the frustrating event was not reasonably foreseeable and (2) the value of counterperformance has been totally or nearly totally destroyed by the frustrating event." *Southwestern Elec.*, 869 F.2d at 315. Prong one presents a problem for Siegal. She purchased two auto insurance policies from GEICO. She purchased the first in late 2019. At that time, the COVID-19 pandemic, and certainly its impact on the auto insurance risk pool, was not reasonably foreseeable. But she then renewed her policy for the period beginning on June 1, 2020 with a "GEICO Giveback credit." *Id.* At this point, the impact of the pandemic was not only reasonably foreseeable, but in some sense *known*. As to the renewal, Illinois courts have refused to apply the doctrine of frustration of purpose based on far less foreseeable circumstances. *See Illinois-Am. Water Co. v. City of Peoria*, 774 N.E.2d 383, 391 (3d Dist. 2002) (invoking party "failed to present any evidence that the enactment of [statute] was not foreseeable by the parties when the contract was entered into").

If prong one of the test is questionable, prong two is fatal. The frustrating event alleged must totally or nearly totally destroy the value of performance. *See Smith v. Roberts*, 370 N.E.2d 271 (4th Dist. 1977) (prong satisfied where tenants refused to occupy small leased premises after connecting main store burned down). Here, Siegal's vehicles remained insured at the same level throughout the relevant period—though she contends that the purpose and value of the policy was "insurance at rates based on an accurate assessment of risk." Even accepting Siegal's broad

definition of her benefit from the bargain, she had an out under her policy because she had the right to cancel at any time and receive a pro-rated premium refund, guaranteed by Illinois law. *See* 215 ILCS 5/143.12a.

In the end, rapid and unexpected market changes are endemic to our economy. Standing alone, they cannot constitute a frustrating event sufficient to excuse a party from performing on a contract. *See Northern Ill. Gas Co.*, 461 N.E.2d at 1059. Siegal retained the right to cancel her policy anytime that she believed the assessment of risk was not reflected in her insurance rates. Instead of doing so, she renewed her policy. Accordingly, her attempt to use the frustration of purpose doctrine as a theory of liability is inappropriate for this case. Count II of the complaint is dismissed.

*Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")*

Next, Siegal brings claims of deception and unfair conduct under ICFA, "a regulatory and remedial statute intended to protect consumers ... against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). To prevail on such claims, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Id.* (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)).

The pleading standards for deceptive and unfair claims differ, however, and each has its own unique elements. To succeed at the motion to dismiss stage with a deception claim, the "plaintiff must plead with particularity the circumstances constituting fraud" under Federal Rule of Civil Procedure 9(b). *Benson*, 944 F.3d at 645. Because fraud is not an element of an unfair conduct claim, Rule 9(b)'s heightened standard does not apply, but rather the notice pleading standard under Rule 8(a) does. *Id.* The Court thus addresses Siegel's deceptive and unfair claims separately.

*Deception*

Siegal presents four statements and omissions by GEICO that she alleges amount to actionable deceptive business practices: (1) GEICO's claim on its website that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers"; (2) GEICO's failure to disclose to its customers the fact or amount of its excessive profits caused by COVID-19; (3) GEICO's failure to disclose that its premiums are not based on an accurate assessment of risk during COVID-19; and (4) GEICO's failure to disclose that its "GEICO Giveback" program compares unfavorably with the refund programs of all or nearly all other major auto insurers. For Siegal to succeed on this claim, one or more of these statements must establish that: "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017). While element (3) is satisfied, each of the others merits its own discussion.

Siegal must first allege with particularity that GEICO undertook a deceptive act or practice. An act is deceptive "if it creates a likelihood of deception or has the capacity to deceive" a reasonable consumer. *See Benson*, 944 F.3d at 646. For example, in *Benson*, a candy company's empty space in its opaque packaging was considered deceptive because it caused reasonable consumers to think that the boxes contained more chocolate than they actually did. *Id.* Also, courts must view the alleged false statements or omissions in the context of all the information available to the plaintiff. *Id.* Siegal allegations of GEICO's failure to disclose its profits and its "GEICO Giveback" program's comparison to its competitors, numbers (2) and (4) above, cannot meet this standard. Siegal does not allege that she was prevented from comparing GEICO's prices to those of its competitors. Further, she does not allege any facts to show that an insurance company's profits

8

inform buyers' decision making. Indeed, no reasonable consumer could expect a company to disclose its competitors' allegedly superior products or its increases in profits during or after a transaction.

Statement (1) and omission (3), however, require a deeper analysis. Siegal alleges that, by claiming to pass on the savings based on a pandemic-related reduction in the risk pool, GEICO meant *all of the savings*. Siegel relies on *Benson*, which explained that plaintiff's "assertion that she and others attach importance to the size of a package is enough for now to indicate that a 'reasonable consumer' does so too." *Id.* Similarly, Siegal asserts that she and possibly others attached importance to GEICO's statement, which she interpreted to mean GEICO was passing all the savings based on decreased risk to benefit its customers. The statement specifically said, "shelter in place laws have reduced driving, and we are passing *these savings* on to our auto, motorcycle, and RV customers." (emphasis added). A reasonable consumer might conclude that "these savings" in the statement refers to those savings based on the earlier described reduction in driving. This statement has the capacity to deceive consumers as to the portion of savings that GEICO was passing on to them via their "GEICO Giveback" program.[1]

Siegal further alleges that she and others expected insurance premiums to be based on an accurate risk assessment, that she believed this is what she was getting considering GEICO's failure to tell her otherwise, and that it was not in fact what she got. To constitute fraud, an omission must be of a material fact that a consumer would rely on in making her decision, or that would have caused her to act differently had she known of it. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482,

---

[1] The Court notes that in a similar lawsuit, *Ridings v. American Family Ins,* No. 20 C 5715, 2021 WL 722856, at *3 (N.D. Ill. Feb. 24, 2021), Judge Manish Shah came to the conclusion that the plaintiff had failed to allege anything that would deceive a reasonable consumer. Unlike here, where Siegel relies on an objective statement concerning the GEICO Giveback, the allegations in *Ridings* were based on puffery, which is not actionable as fraud. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926, 316 Ill.Dec. 522, 538, 227 Ill.2d 45, 73 (Ill. 2007).

9

504, 675 N.E.2d 584, 595 (Ill. 1996). But Siegal fails to allege any facts to show that she, or reasonable insurance consumers generally, even considered GEICO's underlying assessment of the insurance risk pool when determining which insurance policy to purchase on the market. Nor does she allege that she would have refused to renew her policy had she known about GEICO's omission. Without more, this allegation amounts to a mere legal conclusion that GEICO had an obligation to explicitly state its policy pricing mechanisms. Under Rule 9(b)'s heightened pleading standard, this allegation alone is not enough to withstand a motion to dismiss. Thus, only statement (1) satisfies the first element.

Next, Siegal must allege that GEICO intended that she rely on statement (1), its "GEICO Giveback" statement that it was passing on the savings from reduced driving to its customers. The ICFA intent requirement "is merely the defendant's intent that the plaintiff in the action rely on the ... information the defendant gave to plaintiff as opposed to any intent to deceive." *Miller*, 326 Ill. App. 3d at 655. The statute does not require that plaintiffs "show actual reliance or diligence in ascertaining the accuracy of misstatements." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). GEICO certainly intended that consumers rely on the "GEICO Giveback" program in deciding to purchase or renew a policy, which is the very purpose of corporate promotions. The second element is satisfied by statement (1), the "GEICO Giveback" announcement.

To allege the fourth element of deception, Siegal must show that she suffered actual damage. A plaintiff properly alleges actual loss when she asserts with particularity that the seller's deception deprived her "of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Benson*, 944 F.3d at 647 (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). In *Benson*, as discussed above, the plaintiffs alleged that a chocolate manufacturer's excessive empty space in its boxes constituted a deceptive practice. 944 F.3d at 644. The Seventh Circuit, however, concluded that the plaintiffs failed to allege actual damage because they did not claim that the

chocolates in the box were worth less than the amount they paid for them. *Id.* at 648. Siegal, unlike the *Benson* plaintiffs, alleges that her policy was worth less than she paid for it, even with the "GEICO Giveback" discount. She also alleges facts to support this conclusion in the form of reports by the Center for Economic Justice and the Consumer Federation of America. That is enough to meet Rule 9(b)'s heightened pleading standard.

GEICO, citing the Seventh Circuit's *Kim* decision, argues that Siegal failed to allege that but for its "Giveback" statement she could have shopped around for a cheaper policy, and that she thus fails to allege actual damage from its statement. GEICO misreads *Kim*, which stands for the proposition that plaintiffs may prove actual damage by showing *either* that they paid more than the actual value of the bargain *or* that they were prevented from shopping around for a better price in the market place; they need not allege both. 598 F.3d 365-66. Later Seventh Circuit cases interpreting *Kim* support this reading. *See Benson*, 944 F.3d at 647-48; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014). Because Siegal properly alleges actual pecuniary damage, she need not allege that but for GEICO's statement she would have shopped around for a better price. She therefore satisfies element four.

For the fifth element, Siegal must allege that GEICO's deceptive conduct was the proximate cause of her actual loss. The key to an ICFA proximate cause allegation is timing: "plaintiffs can state a valid claim of consumer fraud only where premised upon statements made prior to their dates of purchase," and where no intervening cause broke that causal chain. *Miller*, 326 Ill. App. 3d at 656. The required proximate cause allegation is minimal, as the determination is best left to the trier of fact. *Id.*; *Connick*, 174 Ill. 2d at 504. In Siegal's case, the causal chain is clear. She alleges the "GEICO Giveback" statement induced her to renew her policy, which she claims was worth less than she paid for it. Accordingly, Siegal has adequately plead a claim for deception under ICFA as to the "GEICO Giveback" statement. GEICO's motion to dismiss Count IV is denied.

*Unfair Conduct*

Also, Siegel alleges that GEICO violated ICFA by engaging in unfair conduct, which requires that the plaintiff claim the defendant "engaged in unfair conduct and aver[ ] facts that, if proven, make relief more than merely speculative." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008). The Court must consider three factors to determine whether conduct is unfair under ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Benson*, 944 F.3d at 647. A claim need not satisfy all three criteria, rather, the Court must consider the degree to which the conduct meets each factor. *Id.*

Siegal's unfairness claim under the ICFA is that GEICO violated public policy and acted immorally, unethically, oppressively, or unscrupulously by (1) failing to charge premiums based on an accurate assessment of risk and failing to refund its customers based on this erroneous calculation, and (2) falsely claiming to consumers that its "GEICO Giveback" program provided full relief based on this reduction in risk. Again, the Seventh Circuit's decision in *Benson* is instructive. The *Benson* plaintiffs alleged that the defendant-chocolate manufacturer's "slack-fill" in its boxes amounted to false advertising, and thus was unethical and offended public policy. *Id.* The plaintiffs also claimed that these practices seriously injured consumers by providing them with less chocolate than they expected based on the size of the box. *Id.* The Seventh Circuit held that this was enough to meet the federal notice pleading standard, as the facts that the plaintiffs stated, if proven, made relief more than merely speculative. *Id.*

Siegal has also alleged sufficient facts to meet this low barrier. Specifically, she alleges that GEICO's premium prices became unconscionably high when the pandemic drastically reduced the risk pool. She argues that this pricing violates Illinois public policy regarding insurance premiums. She also alleges, similar to the *Benson* plaintiffs, that the "GEICO Giveback" program amounted to

12

less of a refund than it would have if GEICO truly "pass[ed] on all of the savings," as she expected. She does not allege that she received less than a 15% discount, but that the 15% discount itself was insufficient to account for what she believed GEICO promised in its "Giveback" statement. She presents data from consumer protection organizations to back up these claims. GEICO, of course, disputes all of these facts with its own. However, the dispute over these facts must be left to a later stage of this litigation.

To support her claim of unfair conduct, Siegal must also allege actual damage as a result of that conduct. As discussed, she has sufficiently alleged damages for the "GEICO Giveback" statement. As to the unfairness claim based on GEICO's failure to charge lower premiums or provide refunds, Siegal must allege that she was deprived of the benefit of her bargain. *Id.*; *Kim*, 598 F.3d at 365. She plainly does so. If proven, her allegation that GEICO failed to refund her excessive premiums amounts to a tangible, financial loss for her. She alleges facts to show that she paid too much for the policy she received. GEICO's motion to dismiss Count III is thus denied.

*Unjust Enrichment*

In the alternative to her breach of contract claim, Siegal alleges that GEICO has been unjustly enriched by its failure to fully refund excessive auto insurance premiums in Count V. Under Illinois law, there is generally no stand-alone unjust enrichment claim, and such a claim is unavailable where there is a specific contract that governs the relationship of the parties. *Benson*, 944 F.3d at 648; *Toulon*, 877 F.3d at 742. Still, "a party may plead claims in the alternative, *i.e.*, she may plead a claim for breach of contract as well as unjust enrichment." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). This inconsistent-pleading option is limited, a plaintiff may allege: "(1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Id.*

There is no question that an insurance contract governs the relationship between Siegal and GEICO. Siegal does not allege, in her alternative claim, a theory not based on an express contract. She could not. She argues in Count V that, even if GEICO's unlawful and improper conduct does not constitute a breach of an express contract, GEICO nonetheless received excessive payments from her and those similarly situated due to that conduct. But those excessive payments only make sense in relation to her express insurance contract. "[W]hile [a] plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment." *Id.* (quoting *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (1st Dist. 2005)). Siegal's unjust enrichment claim is therefore improper in this case. GEICO's motion to dismiss Count V is granted.

*Standing to Sue GEICO Indemnity and GEICO General Insurance*

Last, GEICO moves this Court to dismiss defendants GEICO Indemnity Company and GEICO General Insurance Company because Siegal has a contractual relationship with only GEICO Casualty Company. This presents an issue of standing. Generally, to have standing to sue, a plaintiff must allege that the very defendant (or defendants) that she is suing has wronged her in a legally cognizable way. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Yet the issue becomes more complicated in class action suits. As the Seventh Circuit explains, in such cases, "[t]he real question … is whether for standing purposes we may look only to the named plaintiffs, or if, once the requirements of Rule 23 are met, the true plaintiff is the class as a whole." *Payton v. Cty. of Kane*, 308 F.3d 673, 678 (7th Cir. 2002). The *Payton* court answered that class certification questions must precede such standing questions, and, once a class is properly certified, standing requirements must be assessed with reference to the class as a whole. *Id.* at 680. So, while it is true that Siegal alone lacks standing to sue GEICO Indemnity Company and GEICO General Insurance

14

Company, she correctly argues that this issue is properly decided after this Court rules on class certification. As such, GEICO's motion to dismiss GEICO Indemnity Company and GEICO General Insurance Company as defendants is denied.

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part GEICO's motion to dismiss. The Court dismisses Counts I, II, and V with prejudice. The Court denies GEICO's motion as to Counts III and IV and denies GEICO's motion to dismiss defendants GEICO Indemnity Company and GEICO General Insurance Company at this time.

**IT IS SO ORDERED.**

Date: 3/4/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge