## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JAMES G. THOMAS and,
ROXANNE G. THOMAS, individually and
on behalf of all others similarly situated,

          Plaintiffs,                         Case No. 1:20-cv-04306

v.

                                         **JURY TRIAL DEMANDED**

GEICO CASUALTY COMPANY,
GEICO INDEMNITY COMPANY, and
GEICO GENERAL INSURANCE COMPANY,

          Defendants.

---

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, James G. Thomas and Roxanne G. Thomas ("Plaintiffs"), by and through undersigned counsel and on behalf of themselves and all others similarly situated, hereby submit this Second Amended Class Action Complaint against Defendants GEICO Casualty Company, GEICO indemnity Company, and GEICO General Insurance Company ("GEICO" or "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1.    This case is filed to end GEICO's practice of unfairly profiting from the global COVID-19 pandemic. As of the date of the filing of the First Amended Complaint, the United States has confirmed well over 6 million coronavirus cases, and over 200,000 deaths. The State of Illinois alone has over 250,000 confirmed cases and more than 8,500 deaths. The numbers continue to rise.

2.    Beginning in March 2020, states across the country, including Illinois, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing

1

schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3.      While many companies, industries, and individuals have suffered as a result of the COVID-19 pandemic, auto insurers like GEICO have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. As a result of this decrease in driving and accidents, the premiums charged by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April.

4.      Despite full knowledge of these facts, GEICO has continued to charge and collect excessive premiums, and has failed to issue adequate refunds. The company's "GEICO Giveback" program is woefully inadequate to compensate for the excessive premiums that customers have paid as a result of COVID-19. The program applies a 15% discount on new and renewal auto insurance policies only. It does not apply to the premiums that the customer has already paid or will continue to pay on policies already existing at the start of the COVID-19 pandemic. And even with respect to new and renewal policies, the 15% credit falls well short of what has been conservatively estimated as an adequate return of premiums.

5.      To remedy Defendants' unlawful conduct, Plaintiffs bring this class action alleging violations of Illinois state law. Plaintiffs seek disgorgement of the ill-gotten gains obtained by GEICO to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

2

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

7.      Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391 because Defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8.      Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company are Maryland corporations with their principal place of business in Chevy Chase, Maryland. Defendants sell personal automobile insurance in states around the country, including Illinois. GEICO issued personal auto, motorcycle, and/or RV insurance policies to Plaintiffs and the members of the putative class during the relevant time period.

9.      Plaintiffs are former adult residents of Chicago, Illinois, currently residing in Katy, Texas. Plaintiffs held Illinois personal auto insurance policies purchased from GEICO during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the premiums paid by Plaintiffs for these policies were unconscionably excessive. Despite this, GEICO failed to issue full refunds.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.      The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

3

10.     In late December 2019, a cluster of cases of pneumonia was reported in Wuhan, China. A novel coronavirus was identified, which became known as SARS-CoV-2. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States, and the virus quickly spread.

11.     By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and well over 100 in the State of Illinois alone.

12.     Like many states around the country, Illinois responded to the worsening COVID-19 crisis with a series of measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

13.     On March 9, 2020, Governor J. B. Pritzker issued a disaster proclamation, declaring all counties in the State of Illinois a disaster area. Thereafter, the state rolled out a variety of social distancing measures that included, for example, the closing of schools, bars, restaurants, and casinos, and cancellation of all gatherings of 50 or more people.

14.     On March 21, Governor Pritzker instituted a statewide stay-at-home order. With some exceptions, the order mandated that all individuals living within the State of Illinois were to stay at home or at their place of residence and were allowed to leave only for essential activities or other specified reasons.[1] The order mandated that: "[a]ll travel, including, but not limited to, travel by automobile, motorcycle, scooter, bicycle, train, plane, or public transit, except Essential Travel and Essential Activities as defined herein, is prohibited."[2]

---

[1] *See* COVID-19 Executive Order No. 8 § 1(1) (Mar. 20, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx.

[2] *Id.* § 1(4).

15.     The stay-at-home order was scheduled to remain in place until April 7, 2020. However, due to the increasing severity of the COVID-19 crisis, Governor Pritzker extended the order until April 30, 2020, and again to May 29, 2020. Just as in the original stay-at-home order, the Governor ordered that "[a]ll travel, including, but not limited to, travel by automobile, motorcycle, scooter, bicycle, train, plane, or public transit, except Essential Travel and Essential Activities as defined herein, is prohibited." [3]

16.     On May 5, 2020, Governor Pritzker unveiled "Restore Illinois," a plan to slowly reopen the state in five phases. But progress has been slow, and the state is still far from achieving full reopening and economic recovery. Indeed, even under the current stage—Phase 4 "Revitalization"—businesses in all industries are instructed to permit employees to work from home when it is possible to do so.

17.     In addition to the measures it has taken to slow the spread of the virus, the State of Illinois has also sought to stop unscrupulous businesses from profiting from the pandemic. The Illinois Attorney General has urged consumers to report price-gouging and fraud as a result of COVID-19, reflecting a public policy against taking financial advantage of the pandemic.

**B.      GEICO Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

18.     Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry—stands to secure a windfall from COVID-19. The reason is simple. As one recent report put it: "With shelter-

---

[3] *See* COVID-19 Executive Order No. 30 § 2(4) (Apr. 30, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-32.aspx.

in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[4]

19.    Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the State of Illinois. Through the use of cell phone location data, it has been reported that vehicle miles traveled in Illinois dropped significantly from their January 2020 average in March and April of 2020:[5]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -42% |
| March 22 - March 28 | -67% |
| March 29 - April 4 | -67% |
| April 5 - April 11 | -67% |
| April 12 - April 18 | -68% |
| April 19 - April 25 | -64% |

Upon information and belief, decreases in pre-COVID miles traveled continued in May, June, July, and August 2020, and will continue for the foreseeable future.[6]

20.    Automobile accidents have also decreased. For example, the Illinois State Police reported that between April 1, 2020 and April 26, 2020 alone, statewide car crash rates dropped by more than half when compared to 2019 rates.[7] Although GEICO does not report crash

---

[4] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.

[5] *See id.* at 6-8.

[6] *See id.* at 2.

[7] Mary Wisniewski, *With fewer people on the roads, crashes are down — but some drivers see lack of traffic as excuse to speed*, Chicago Tribune, May 1, 2020, https://www.chicagotribune.com/coronavirus/ct-coronavirus-speeding-up-crashes-down-20200501-vgr3yinpibh3xkmc45dmvxycwa-story.html.

statistics to the State of Illinois, a submission to Ohio regulators estimated a decline in claims frequency between 25% and 50%.[8]

21.     As a result of this dramatic decrease in driving and auto accidents, the rates set—and thus the premiums charged—by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive. Auto insurance rates, including those set by GEICO, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the recent joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[9]

22.     The excessive premiums collected by GEICO during the COVID-19 pandemic have led to a substantial windfall in profits. It has been reported that for the first quarter of 2020 alone, GEICO generated a pretax underwriting gain of $984 million.[10] This was an increase of 27.8% from result for the same period in 2019. And according to its parent company, Berkshire

---

[8] *Geico's claim frequency falling even faster than Q1 data shows*, S&P Global (May 4, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-claims-frequency-falling-even-faster-than-q1-data-shows-58431662.

[9] CEJ/CFA Report, *supra*, at 4.

[10] *Geico's claim frequency falling even faster than Q1 data shows*, S&P Global (May 4, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-claims-frequency-falling-even-faster-than-q1-data-shows-58431662.

Hathaway, in the second quarter of 2020, GEICO generated pre-tax underwriting earnings of $2.1 billion, which was an increase of 424% compared to the second quarter of 2019.

23.      GEICO's astonishing windfall is a direct result of the fact that its premiums are excessive and not based on an accurate assessment of risk since the pandemic began, in violation of Illinois public policy.

24.      In modern society, most people must drive, and therefore must buy insurance in order to go about their daily lives. Because people must, as a practical matter, buy auto insurance, Illinois courts have long held that insurance policies implicate the public interest, and that rates must be based on risk.

## C.      GEICO Has Failed to Refund Excessive Premiums to Plaintiffs and Other Policyholders in Illinois

25.      According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[11]

26.      At all relevant times, GEICO has been aware of the excessive premiums that it has charged to and collected from policyholders in Illinois as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits. Despite this, GEICO has failed to adequately return these profits to its customers.

27.      In spring 2020, GEICO announced the "GEICO Giveback." Under the program, GEICO will give customers a 15% credit on their personal auto insurance premiums, but only if

---

[11] CEJ/CFA Report, *supra*, at 12-13.

8

they are new customers, or existing customers who renew their policy during the applicable time period. Specifically, the credit is given for six-month policies renewed or newly purchased between April 8, 2020 and October 8, 2020 and twelve-month policies renewed or newly purchased between April 8, 2020 and October 7, 2021.

28.     GEICO's credit program is inadequate to compensate for the excessive premiums that its customers have paid as a result of COVID-19. For existing customers who renew their policies, the credit does not apply at all to excessive premiums that the customer paid on their previous policies. And even with respect to new and renewal policies, the 15% credit is nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund of premiums.

29.     With full knowledge that its refund program was inadequate, GEICO has falsely claimed to its customers that it is in fact providing substantial and full relief. For example, on its website, GEICO falsely claims that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."[12] GEICO does not disclose that its program does not, in fact, fully pass the company's saving on to its customers, and GEICO does not disclose the amount of its excessive profits.

30.     Not surprisingly, GEICO's credit program has been met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade, which places GEICO at or near the bottom of insurers receiving grades.[13] The CEJ/CFA report

---

[12] FAQs About The Geico Giveback, https://www.geico.com/about/coronavirus/giveback/ (last visited September 15, 2020).

[13] *Report Card to Date on the $6.5 Billion+ Promised To Auto Insurance Customers as People Drive Less Due To COVID-19*, Consumer Federation of America (April 4, 2020), https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/.

explains that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and is "wrongly attempting to take credit for future – and in most cases distant future – rate reductions as if it were actually providing relief today to current policyholders."[14]

31.     GEICO does not disclose the fact that its program compares unfavorably with the refund programs of all or nearly all other major auto insurers.

32.     In January 2020, Plaintiffs purchased a renewal Illinois auto insurance policy from GEICO for the period beginning on January 22, 2020 and ending on July 22, 2020. Plaintiffs paid $2,314.38 in premiums for that policy. Plaintiffs again renewed the Illinois policy for the period beginning on July 22, 2020, and ending on January 22, 2021.[15] Premiums were $2,016.06, which includes the "GEICO Giveback credit" of $355.78 received on June 17, 2020.

33.     GEICO's insurance policies, including the policies of Plaintiffs and the members of the putative class, contain the following provision:

> 3.     CHANGES
>
> The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.
>
> We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your state**.
>
> The premium for each auto is based on the information we have in **your** file. **You** agree:

---

[14] CEJ/CFA Report, *supra*, at 16.
[15] Effective September 20, 2021, Plaintiffs moved to Texas and changed their Illinois GEICO policy to a Texas policy.

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) That *you* will cooperate with us in determining if this information is correct and complete.

(c) That *you* will notify us of any changes in this information.

(d) That we may adjust *your* policy premium during the policy term or at renewal if any person who is an *insured* becomes an additional driver during the policy term or at renewal.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

34.     This provision gives GEICO broad discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect.

35.     Plaintiffs' policies described above were in effect during the time period during which most of the United States, including Illinois, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic. Despite this, GEICO only gave Plaintiffs an inadequate 15% credit on their Illinois renewal policy beginning on July 22, 2020, and no refund or credit for Plaintiffs' previous policies.

36.     Upon information and belief, thousands of other policyholders in Illinois have been injured by GEICO's policy and practice of charging and failing to refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic.

## **CLASS ACTION ALLEGATIONS**

37.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiffs brings this action individually and on behalf of all similarly situated individuals.

11

38.     The proposed class is defined as follows: All Illinois residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 21, 2020 to the present.

39.     The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from GEICO's records.

40.     There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

41.     The common questions of law and fact include, but are not limited to:

a.   Whether GEICO has a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

b.   Whether GEICO's insurance rates and premiums were excessive;

c.   Whether GEICO violated the covenant of fair dealing and good faith;

d.   Whether the payment of full premiums by Plaintiffs and the members of the putative class is excused by frustration of purpose;

e.   Whether GEICO was unjustly enriched as a result of its charging and failure to fully refund excessive auto insurance premiums;

f.   Whether GEICO's charging and failure to fully refund excessive auto insurance premiums offends public policy;

g.   Whether GEICO's charging and failure to fully refund excessive auto insurance premiums is immoral, unethical, oppressive, or unscrupulous;

h.   Whether GEICO has violated ICFA through its charging and failure to fully refund excessive auto insurance premiums; and

i.   the proper measure and calculation of damages.

12

42.     The questions of law and fact listed above will yield common answers for Plaintiffs and the class as to whether GEICO is liable for the alleged legal violations.

43.     Plaintiffs' claims are typical of those of the members of the class. Plaintiffs, like other class members, were subject to the unlawful practices described herein.

44.     Plaintiffs will fairly and adequately protect the interests of the class and have retained counsel experienced in complex class action litigation.

45.     Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because GEICO has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

46.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to GEICO's policies and practices. There will be no difficulties in managing this action.

47.     In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CAUSES OF ACTION[16]

## COUNT I

---

[16] The Court has dismissed Counts I, II, and V. (ECF No. 43.)

**Breach of Contract**
**(On Behalf of Plaintiffs and the Putative Class)**

48.     Plaintiffs restate and incorporate by reference the above paragraphs as if fully set forth herein.

49.     The insurance policies GEICO issued to Plaintiffs and the putative class are contracts.

50.     Plaintiffs and the members of the putative class performed under those contracts by paying the policy premiums.

51.     GEICO's insurance contracts give GEICO the discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect.

52.     Under Illinois law, a covenant of fair dealing and good faith is implied into every contract. A party is not permitted to engage in opportunistic advantage-taking, or lack of cooperation depriving the other contracting party of their reasonable expectations. A contracting party breaches the covenant when it exercises its discretion under the contract in bad faith.

53.     GEICO breached the insurance contracts by exercising its contractual discretion in violation of the covenant of fair dealing and good faith. GEICO had discretion to adjust or refund the premiums when the information underlying the premiums become incorrect, incomplete, or changed. That information changed and became incomplete and incorrect when the COVID-19 pandemic emptied Illinois's roads. But GEICO failed to exercise its contractual discretion to properly reduce or refund the now-excessive premiums.

54.     GEICO exercised its contractual discretion unreasonably, without proper motive, in a manner inconsistent with the parties' reasonable expectations, and in bad faith.

14

55.     By profiting from the uncontemplated and unforeseeable COVID-19 pandemic, GEICO has engaged in opportunistic advantage-taking and lack of cooperation, depriving Plaintiffs and the putative class of their reasonable expectations under the insurance contracts.

56.     GEICO has injured Plaintiffs and the members of the putative class by retaining their excessive premium payments and by not reducing or refunding those excessive premiums. These injuries are a direct and proximate result of GEICO's unlawful conduct.

## COUNT II
### Declaratory Relief—Frustration of Purpose
### (On Behalf of Plaintiffs and the Putative Class)

57.     Plaintiffs restate and incorporate by reference the above paragraphs as if fully set forth herein.

58.     Plaintiffs plead this Count II in the alternative to Count I.

59.     Under Illinois law, a party's performance of a contract is excused when the purpose of the contract is frustrated by an event that was not reasonably foreseeable at the time the contract was formed, and the value of the contract has been nearly totally destroyed by the frustrating event.

60.     At the time Plaintiffs and the members of the putative class purchased insurance policies from GEICO, the global COVID-19 pandemic and its effects were not reasonably foreseeable.

61.     As a result of the global COVID-19 pandemic, the related stay-at-home orders, and the drastic reduction in driving among the risk pool, the purpose of the policies—providing insurance coverage at rates based on an accurate assessment of risk—has been frustrated, and the value of the policies has been totally or nearly totally destroyed.

62.    Plaintiffs and the members of the putative class seek a declaration that full payment of premiums is no longer required, and that any excessive premiums paid to date must be disgorged by GEICO.

**COUNT III**
**Illinois Consumer Fraud and Deceptive Business Practices Act – Unfairness**
**(On Behalf of Plaintiffs and the Putative Class)**

63.    Plaintiffs restate and incorporate by reference the above paragraphs as if fully set forth herein.

64.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") makes unlawful:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

65.    GEICO has violated and continues to violate ICFA by, at least, charging and failing to fully refund unconscionably excessive premiums with full knowledge of the amount and extent of their excess; failing to refund unconscionably excessive premiums to the consumers who initially paid those premiums, and instead giving a credit only for new or renewal business, thereby intentionally using the global COVID-19 pandemic as a means to gain new business and obtain unfair economic advantage; falsely claiming to its customers that it is providing substantial and full relief through its "Giveback" program and failing to disclose that the program does not, in fact, provide full relief; failing to disclose the fact that it is earning excessive profits, or the amount

16

of those profits; failing to disclose the fact that its "GEICO Giveback" program compares unfavorably with the refund programs of all or nearly all other major auto insurers; and violating fundamental principles of rate-setting by failing to charge premiums that reflect an accurate assessment of risk.

66.     GEICO's unfair conduct, as described herein, is intentional, and GEICO intends for consumers to rely on its unfair and misleading practices.

67.     GEICO's unfair conduct, as described herein, occurred in the course of trade or commerce.

68.     GEICO's conduct, as described herein, violates ICFA because it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers.

69.     GEICO's conduct offends the public policy of Illinois that insurance premiums are to be based on risk. The premiums charged and collected by GEICO are excessive and not based on risk after the COVID-19 pandemic dramatically reduced the amount of driving and the number of insurance claims.

70.     GEICO's conduct offends public policy reflected in the State of Illinois's desire to curb and urge the reporting of price-gouging and fraud as a result of COVID-19, reflecting a public policy against taking financial advantage of the pandemic. GEICO is violating that policy through its conduct described herein.

71.     GEICO's conduct, as described herein, is immoral, unethical and unscrupulous because GEICO has taken advantage of the global COVID-19 pandemic for its own financial gain. Further, GEICO's conduct in claiming to pass its savings from the pandemic on to its customers

is oppressive because it would cause consumers, including Plaintiffs and the members of the putative class, to falsely believe their premiums were fair and not excessive.

72.     GEICO's conduct, as described herein, has caused and continues to cause substantial injury to consumers, including Plaintiffs and the members of the putative class.

73.     The injury caused by GEICO's conduct is significant in light of very conservative calculations that a 30% minimum average premium refund would be required to correct the unfair windfall just for the time period from mid-March through the end of April 2020. Further, the injury is significant because GEICO's excessive premiums have allowed it to increase its profits by 27.8% in the first quarter of 2020, and by an astonishing 424% in the second quarter.

74.     The injury caused by GEICO's conduct is not outweighed by any countervailing benefits to consumers or to competition.

75.     The injury caused by GEICO's conduct could not reasonably have been avoided by consumers because they did not know and could not have known that GEICO was not, in fact, passing its savings on through the "Giveback" program.

76.     Plaintiffs and the members of the putative class have been injured as a direct and proximate result of GEICO's unfair conduct in violation of ICFA. Plaintiffs and the members of the putative class paid excessive premiums to GEICO and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of GEICO's unfair conduct.

77.     Through its unfair practices, GEICO has improperly obtained and continues to improperly obtain and retain money from Plaintiffs and the members of the putative class.

18

78.     Plaintiffs therefore request that this Court grant the relief enumerated below. Otherwise, Plaintiffs and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## COUNT IV
### Illinois Consumer Fraud and Deceptive Business Practices Act – Deception
### (On Behalf of Plaintiffs and the Putative Class)

79.     Plaintiffs restate and incorporate by reference the above paragraphs as if fully set forth herein.

80.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") makes unlawful:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

81.     GEICO's conduct, as described herein, violates ICFA.

82.     GEICO made deceptive statements and omissions regarding its premiums during the COVID-19 pandemic. GEICO's website has claimed throughout the relevant time period, and even now, that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." GEICO does not disclose the fact or amount of its excessive profits caused by COVID-19 to its customers. GEICO does not disclose that its premiums are not based on an accurate assessment of risk during COVID-19. GEICO does not disclose the fact that its "GEICO Giveback" program compares unfavorably with the refund programs of all or nearly all other major auto insurers.

83.     GEICO's deceptive statements and omissions are material because they concern premiums, which are among the types of information that consumers, including Plaintiffs and the members of the putative class, would be expected to rely upon in making insurance decisions.

84.     GEICO's deceptive statements and omissions have the capacity to deceive consumers, including Plaintiffs and the putative class, by inducing them to purchase, renew, and not cancel their policies with GEICO.

85.     GEICO intended for consumers, including Plaintiffs and the putative class, to rely on its deceptive statements and omissions by purchasing, renewing, and not canceling their policies with GEICO.

86.     GEICO made its deceptive statements and omissions in the course of conduct involving trade or commerce.

87.     Plaintiffs and the members of the putative class have been injured as a direct and proximate result of GEICO's deceptive conduct in violation of ICFA. Plaintiffs and the members of the putative class paid excessive premiums to GEICO and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of GEICO's deceptive statements and omissions.

88.     Through its deceptive practices, GEICO has improperly obtained and continues to improperly obtain and retain money from Plaintiffs and the members of the putative class.

89.     Plaintiffs therefore request that this Court grant the relief enumerated below. Otherwise, Plaintiffs and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

### COUNT V
### Unjust Enrichment

**(On Behalf of Plaintiffs and the Putative Class)**

90.     Plaintiffs plead this Count V in the alternative to Count I.

91.     If GEICO's conduct does not constitute a breach of an express contract, GEICO is nevertheless liable for unjust enrichment.

92.     Illinois law prohibits a party from unjustly retaining a benefit at another party's expense contrary to fundamental principles of justice, equity, and good conscience.

93.     GEICO engaged in unlawful and improper conduct in violation of ICFA, as described above in Counts III and IV.

94.     As a result of its unlawful and improper conduct, GEICO received excessive payments from Plaintiffs and the putative class, to the detriment of Plaintiffs and the members of the putative class. GEICO's retention of these payments violates fundamental principles of justice, equity, and good conscience.

95.     Plaintiffs and the members of the putative class have been injured as a direct and proximate result of GEICO's unlawful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the putative class, pray for relief as follows:

A.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.     The appointment of Plaintiffs as class representatives and their counsel as class counsel;

C.     A declaration that the practices complained of herein are unlawful and violate the laws of Illinois alleged herein;

D.     An injunction against Defendants from engaging in the unlawful practices complained of herein;

21

E.      Awarding Plaintiffs and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, treble damages, punitive damages, and any other damages provided under relevant laws;

F.      Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment;

G.      An order awarding Plaintiffs and the class attorneys' fees, costs, and expert costs;

H.      An order awarding Plaintiffs and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

I.      Such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 5, 2021                    Respectfully Submitted,


                                          By: */s/ Matthew H. Morgan*

                                          Ryan F. Stephan
                                          James B. Zouras
                                          Teresa M. Becvar
                                          STEPHAN ZOURAS, LLP
                                          100 N. Riverside Plaza, Suite 2150
                                          Chicago, IL 60606
                                          (312) 233-1550
                                          (312) 233-1560 *f*
                                          rstephan@stephanzouras.com
                                          jzouras@stephanzouras.com
                                          tbecvar@stephanzouras.com

                                          Matthew H. Morgan, MN Bar No. 0304657*
                                          Robert L. Schug, MN Bar No. 0387013*
                                          Chloe A. Raimey, MN Bar No. 0398257
                                          NICHOLS KASTER, PLLP
                                          4700 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN  55402
                                          Tel: (612) 256-3200
                                          Fax: (612) 215-6870

morgan@nka.com
schug@nka.com
craimey@nka.com
(*admitted *pro hac vice*)

David A. Neiman
Antonio M. Romanucci
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
dneiman@rblaw.net
aromanucci@rblaw.net

*Attorneys for Plaintiffs and the Putative Class*