UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES G. THOMAS and ROXANNE G. THOMAS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 20-cv-04306 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| GEICO CASTUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

In October 2021, plaintiffs James Thomas and Roxanne Thomas filed a five-count Amended Complaint challenging defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company's (collectively "GEICO" or "Defendants") auto insurance premium rates as unconscionably excessive in light of an alleged reduction in the insurance risk pool due to the COVID-19 pandemic. Currently before the Court is Defendants' motion [152] for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth, Defendants' motion is denied.

**Background**

The Court assumes familiarity with the facts of this case, as laid out in its Opinion and Order of March 4, 2021 [43]. During the COVID-19 pandemic, Illinois instituted social distancing measures in an effort to control the spread of the disease. As a result of these measures, there was a reduction in driving and driving-related accidents. In response to reduced rates of driving and

1

driving-related accidents, Defendants instituted a "GEICO Giveback" program, which applied a 15% premium reduction to new and renewed auto insurance policies. Plaintiffs allege that this premium deduction was insufficient as compared to the overall reduction in GEICO's customers' risk profiles, and is thus unfair and deceptive, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

**Legal Standard**

A party can move for judgment on the pleadings once the complaint and answer are filed. *See Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2008) (internal citation omitted). A court will only grant a Rule 12(c) motion if there is no doubt that the plaintiffs cannot prove any facts to support their claim and the moving party establishes that no material issues of fact exist. *See id.* Courts apply the same standard for Rule 12(c) motions as is used for motions to dismiss for failure to state a claim under Rule 12(b)(6). *See Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). When considering a Rule 12(c) motion, the pleadings consist of the complaint, answer, and any written documents used as attachments. *See Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009) (Castillo, J.).

**Discussion**

The question presented to this Court is a narrow one: whether the "filed-rate" doctrine prevents the Court from awarding Plaintiffs damages. The filed-rate doctrine prohibits courts from "invalidat[ing] or modify[ing] a rate that has been filed with a public utility or common carrier's regulator." *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001). As a result, plaintiffs generally cannot "seek damages based on the difference between the actual [rate] and a hypothetical lawful [rate]." *Id.* The doctrine is "based both on historical antipathy to rate setting by courts, deemed a task they are inherently unsuited to perform competently, and on a policy of forbidding price discrimination by public utilities and common carriers." *Id.*; *see also Adams v. Northern Illinois Gas Co.*,

211 Ill. 2d 32, 56, 809 N.E.2d 1248, 1264 (Ill. 2004) ("The filed-rate doctrine serves two goals: prevention of price discrimination among rate payers, and preservation of the role of regulatory agencies in deciding reasonable rates for public utilities and services."). Deference to regulatory agencies is prudent because "rate regulation is one of legislative control and is not a judicial function." *Id.* at 64. Though originally a federal common law doctrine, "[s]tates have adopted versions of this doctrine of varying breadth and force, some in statutes and some through case law." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 805 (7th Cir. 2020).

At issue here is whether Illinois' version of the filed-rate doctrine applies to rates for personal automobile insurance, which are filed with the Illinois Department of Insurance (the "Department"). The Illinois legislature has largely deregulated the private automobile insurance market, and the Department apparently has no authority to set, approve, or disapprove these rates; it merely publishes filed rates.[1] Defendants argue that in Illinois, the filing of a rate with a state regulatory agency is sufficient to bring that rate under the protection of the filed-rate doctrine. Plaintiffs counter that the doctrine is triggered only when the rates are filed with an agency that has the authority to approve and disapprove of the rates, and that because the Department lacks that authority, the Illinois filed-rate doctrine is not applicable in the private automobile insurance context.

Underlying the parties' substantive legal dispute is a disagreement over which court's precedent should apply. Defendants argue that the matter is governed by a recent Seventh Circuit decision, *South Branch LLC v. Commonwealth Edison Co.,* 46 F.4th 646 (7th Cir. 2022). Plaintiffs contend that *Corbin v. Allstate Corp.*, 2019 IL App (5th) 170296, 140 N.E.3d 810 (5th Dist. 2019), a decision from an Illinois intermediate appellate case, should govern.

---

[1] The court in *Corbin v. Allstate Corp.* provides a cogent analysis of the Department's lack of rate-setting authority, and describes "Illinois's unique open competition environment in the area of auto insurance rates" that allows insurance companies broad latitude to set their own private automobile insurance rates. 2019 IL App (5th) 170296, 140 N.E.3d 810, 814–16 (5th Dist. 2019).

This is a diversity case, and the Court has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d). Plaintiffs and Defendants agree that Illinois law governs. Illinois law is decided by the Illinois Supreme Court. Under the *Erie* doctrine, the task of a federal court in diversity litigation is—absent a decision by a state's highest court—to "predict what the state's highest court will do." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Opinions of intermediate state courts "lack similar force." *Id.* In the absence of a controlling state supreme court decision, applicable Seventh Circuit holdings on questions of state law are, of course, binding on this Court. *Id.*

The Illinois Supreme Court has not decided the question of whether the Illinois filed-rate doctrine applies in the personal automobile insurance context. The only court to consider and decide this specific question answered in the affirmative. An Illinois intermediate appellate court squarely held that the "filed rate doctrine is not applicable" to auto insurance rates in Illinois. *Corbin*, 140 N.E.3d at 816.

In *Corbin*, the court found that there mere filing of a rate was insufficient, and that "regulatory approval" is needed for the doctrine to apply. 140 N.E.3d at 816. The Seventh Circuit has similarly found that the filed-rate doctrine "protects public utilities and other regulated entities from civil actions attacking their rates if the rates must be filed with the governing regulatory agency *and the agency has the authority to set, approve, or disapprove them.*" *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 607 (7th Cir. 2013) (emphasis added). In *Cohen,* the Seventh Circuit reversed a district court decision that had applied the filed-rate doctrine in the context of property insurance rates. Although the court ultimately did not reach the filed-rate question, it did "question whether it applies" given that "it is not at all clear that the Department has the authority to approve or disapprove property-insurance rates." *Id.* Although the case involved property insurance, and not automobile insurance, the regulatory context was all but the same. And language from the Illinois Supreme Court also

4

suggests that agency rate approval plays a role in determining whether the filed rate doctrine applies. *Adams,* 211 Ill. 2d at 55, 809 N.E. 2d at 1263 (explaining that "[o]nce the Commission approves a tariff, it 'is a law, not a contract, and has the force and effect of a statute'") (citing *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.,* 67 Ill.App. 3d 435, 439, 384 N.E. 2d 543 (5th Dist. 1978), *aff'd,* 78 Ill.2d 56, 398 N.E. 2d 3 (Ill. 1979)).

Defendant argues that the recent *South Branch* decision "resolves" the uncertainty in *Cohen,* but that is far from obvious. In *South Branch,* the Seventh Circuit applied the filed-rate doctrine to a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against a public utility. Defendants argue in the alternative that even if the holding in *South Branch* does not control, it does suggest that, contrary to the language in *Cohen* and holdings from Illinois courts, agency approval power is not needed to trigger the filed-rate doctrine because the *South Branch* court was unable to find any "case tying the filed rate doctrine's application to the breadth of a regulator's authority." 46 F.4th at 653. The court went on to cite a number of decisions from other circuits holding that filing alone was sufficient for application of the filed-rate doctrine.

Despite defendants' contentions, *South Branch* is not controlling, given that it concerned a public utility, which is regulated by the Illinois Commerce Commission ("ICC"), a state agency with different authorities and responsibilities than the Department, and because the underlying claim was under federal, not state, law. And a closer look at the analysis and underlying facts in *South Branch* suggests the logic contained within may be of limited applicability here. In that case, plaintiffs sought alleged RICO damages from increased electricity rates because ComEd, the public utility in question, had bribed the former Speaker of the Illinois Speaker of the House to pass laws weakening the authority of the ICC and enabling ComEd to raise rates. *Id.* at 648. The court's analysis rested, at least in part, on (1) the exclusive authority of the ICC to regulate utility rates, and (2) a preemption analysis that found that Congress did not intend RICO to preempt state utility

regulatory authority. *Id.* at 651–52. Neither of those strains of reasoning apply to the present case. The case ultimately stands for the limited proposition that "paying a state's required filed utility rate is not a cognizable injury for a RICO damages claim." *South Branch*, 46 F.4th at 647.

Defendants ask this Court to disregard the *Corbin* and *Cohen* decisions, whose facts more closely resemble those before the Court today, in favor of *South Branch*. The Court declines to do so. In the absence of on-point precedent from the Seventh Circuit, the Court adopts the persuasive reasoning in *Corbin*. One of the two primary aims of the filed-rate doctrine is deference to the regulatory authority of state regulatory agencies. But when the relevant state agency plays no role in insurance rate approval, application of the doctrine makes little sense. Accordingly, this Court will not abdicate the responsibility to assess whether Defendants' pandemic-era rates were deceptive or unfair in deference to non-existent state rate-setting authority.

**Conclusion**

For the forgoing reasons, GEICO's motion [152] for judgment on the pleadings is denied.

**IT IS SO ORDERED.**

Date: 2/6/2023

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

6