UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES G. THOMAS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 20-cv-04306 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| GEICO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs James and Roxanne Thomas ("Plaintiffs"), on behalf of themselves and all others similarly situated, brought suit against GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company (collectively "GEICO" or "Defendants") for violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Defendants move to strike Plaintiffs' expert's testimony. Plaintiffs oppose Defendants' motion to strike and seek class certification. For the reasons stated herein, the Court grants Defendants' motion [197] and denies Plaintiffs' motion [196].

**Background**

Since 2013, Plaintiffs have been GEICO customers. Plaintiffs renewed their insurance policy with GEICO from January 22, 2020, to July 22, 2020. Plaintiffs allege that Defendants violated the ICFA when they engaged in unfair and deceptive practices. Plaintiffs have been active in litigating this case.

Plaintiffs assert that GEICO charged "excessive" premiums during the pandemic, which failed to account for the dramatic reduction in driving during that time. Specifically, Plaintiffs claim the premiums were not reflective of driving risks, which insurance companies assess when determining policy holders' premium rates. Although GEICO instated a Giveback program, which

offered a potential premium credit of 15% upon new and renewal of customers 6- or 12-month policies, Plaintiffs allege the discount inadequately accounted for the diminished insurance risk pool during the pandemic. Plaintiffs state "GEICO provided no *retroactive* relief for consumers who had paid excessive premiums since the start of the pandemic and provided no additional premium relief as the pandemic continued." Plaintiffs allege such actions were unfair.

Plaintiffs' deception claim hinges on GEICO's FAQs section. In their FAQs, GEICO explained the Giveback program was created because "shelter in place laws have reduced driving," and they were "passing these savings on to [their] auto, motorcycle, and RV customers." Plaintiffs allege this description meant the customers would receive *all* savings, which was deceptive because customers only received a 15% discount and GEICO received a windfall of revenue. In his deposition, James Thomas stated GEICO probably guaranteed drivers more refunds.

Ultimately, Plaintiffs seek for GEICO to issue a refund for the "excessive" premiums. Plaintiffs seek monetary damages for (a) policies they entered or renewed with GEICO that had a start date of effectiveness before March 21, 2020, and before GEICO's Giveback program, but continued past March 21, 2020; and (b) policies they entered or renewed with GEICO after GEICO created its Giveback program. To determine what Plaintiffs' refund should be, or damages are, Plaintiffs rely on the testimony of Bernard "Birny" Birnbaum ("Birnbaum"), which Defendants move to strike.

In his report, Birnbaum explains that the *purpose* of his methodology is to calculate what refunds/damages Plaintiffs should receive for paying "excessive" insurance rates since the 2020 pandemic. The Court separates the methodology into two points for clarity. First, Birnbaum will calculate the rate GEICO should have charged for policies in effect on or after March 21, 2020, based on facts GEICO knew or should have known at the time it determined its rates, both related to policies entered before the pandemic and renewed or

2

new policies after GEICO implemented its Giveback program. This first step is the *reasonable rate*. The *reasonable rate* is like a standard calculation for a private passenger automobile ("PPA") insurance rate. One can argue that the two calculations differ because PPA rates determine rates based on *future* risks, whereas the *reasonable rate*, in this case, is *retroactive* since it determines today what rates should have been in 2020. However, both calculations analyze the transfer of risks. Birnbaum supports his *reasonable rate* calculation by citing to actuarial principles and model laws, which are rooted in PPA ratemaking. Second, Birnbaum will subtract the *reasonable rate* by the rate GEICO charged Plaintiffs. The difference between the first and second step is what GEICO would refund Plaintiffs. Birnbaum labels this refund *reasonable premium relief*.

Although the end date of the calculation is uncertain, as Birnbaum will need to assess GEICO's records at the merits stage, Birnbaum will perform his methodology to correspond with the relevant class members' policy dates of effectiveness.

Plaintiffs seek class certification for the following two classes:

Unfairness class. All Illinois residents who purchased or renewed personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the period from March 21, 2020, to present.

Deception class. All Illinois residents who purchased or renewed personal automobile, motorcycle, or RV insurance from GEICO during the period in which the GEICO giveback was in place and visited the "What if I'm driving less?" Or "Why are we doing this?" FAQs on GEICO's website.[1]

---

[1] The parties agree that not all unfairness class members visited the FAQs. In their class certification reply, Plaintiffs amended their original deceptive class definition with this present definition. During oral argument, Defendants did not object to such amendment. The Court therefore accepts the amendment.

**Legal Standard**

*Motion to Strike: Rule 702*

To rule on the admissibility of expert evidence the Court must decide whether the evidence offered is reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). When determining reliability, the Court's role is to assess whether the expert is qualified in the relevant field and to examine the methodology he used in reaching his conclusions. *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). When assessing reliability, the Court focuses on the expert's methodology, not his conclusions. *Kopplin v. Wisconsin Central Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). To be relevant, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795, 125 L. Ed. 2d 469 (referencing Fed. R. Evid. 702). The expert's proponent has the burden of establishing the admissibility of the expert's opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

*Class Certification: Rule 23(a) and Rule 23(b)*

To be entitled to class certification, Plaintiffs must satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternatives set forth in Rule 23(b). Rule 23(a) requires that a proposed class meet requirements of numerosity, typicality, commonality, and adequacy of representation. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also show that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)). The proponents need to further show that a class action is superior to other available methods of resolving the controversy. *Id.*

Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (internal quotation marks and citation omitted). Certification is proper only if, "after rigorous analysis," the Court is satisfied that the prerequisites of Rule 23 have been met. *Id.* at 33. Although Plaintiffs bear the burden of showing that a proposed class meets the Rule 23 requirements by preponderance of the evidence, they are not required to make that showing to a degree of absolute certainty. *Messner*, 669 F.3d at 811 (citations omitted); *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015).

**Discussion**

*Motion to Strike*

First, the Court will analyze Defendants' motion to strike Birnbaum's testimony. During oral argument, Defendants represented they do not dispute that Birnbaum is qualified. Similarly, Defendants do not dispute that his testimony is relevant. However, the parties disagree on whether Birnbaum's methodology is reliable, as required under *Daubert*, and whether it is admissible in this case.

Both in their briefing and oral argument, Defendants argue Birnbaum's methodology is unreliable and therefore cannot satisfy Federal Rule of Evidence 702. *See Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795, 125 L. Ed. 2d 469. Defendants argue that Birnbaum's methodology is not a recognized method. Defendants explain that the *reasonable premium relief* the Plaintiffs seek is applied retroactively, unlike other insurance calculations that are applied prospectively. Defendants argue such a method allows Birnbaum to determine what he believes GEICO should have charged for insurance rates based on what he knows now; whereas insurers usually issue premiums by assessing future risks based on information they know at that given time. According to Defendants, Plaintiffs seek to calculate excess profits. During oral argument, Defendants stated Birnbaum's methodology

5

is not sound because it is arbitrary, a novel calculation, not transparent, and has never been peer reviewed.

The Defendants support their assertions by showing that Birnbaum fails to cite to relevant examples, case law that found the method reliable, statutes, actuarial standards, model laws, or treatises that recognize *reasonable premium relief*. Defendants also argue that the sources Birnbaum does cite never reference the term *reasonable premium relief* or are not recognized in Illinois.

In response, Plaintiffs explain Birnbaum's methodology is rooted in industry standard and actuarial principles, which Birnbaum cites. Plaintiffs assert the standard Birnbaum will use is the same methodology that GEICO developed to create the Giveback program. Plaintiffs specify that the standards Birnbaum relies on explains that PPA rates may not be excessive, and thus should reflect the cost of the transfer of risks. Plaintiffs further attempt to clarify that the method is not applied *retroactively*, instead it is applied *prospectively*, as it is based on information GEICO knew at the time it decided the criteria and discount of the GEICO Giveback program.

The Supreme Court has provided a non-exhaustive list to aid courts when analyzing whether an expert's testimony is reliable. *Timm*, 932 F.3d at 994. Courts can consider (a) "whether the expert's theory 'can be (and has been tested),'" (b) if "it 'has been subjected to peer review or publication,'" (c) "the known or potential rate of error," and (d) "whether the expert's theory has achieved 'general acceptance' in the relevant expert community." *Id.* (quoting *Daubert*, 509 U.S. at 593–95, 113 S. Ct. at 2798, 125 L. Ed. 2d 4690). Ultimately, the correct assessment for courts to make when determining whether a methodology is scientifically valid is to focus on the soundness and care the expert demonstrated to draw their opinion. *Anderson v. Raymond Corp.*, 61 F.4th 505 (7th Cir. 2023) (holding that the expert's methodology was sound because it rested on recognized scientific principles).

Though not the focus of either party's argument, it is key that Birnbaum's methodology is sound *as a whole*. The only time Plaintiffs cited a standard to support their arguments is when referring to ordinary PPA insurance ratemaking, and/or determining what a *reasonable rate* would be. However, the methodology before the Court today is not an ordinary PPA insurance rate. Instead, determining the PPA rate is only *one* part to the methodology, as Birnbaum will first determine what the PPA rate or *reasonable rate* should have been and then subtract that rate by the rate GEICO charged the Plaintiffs.[2] The parties and Birnbaum agree that the methodology's purpose is to determine what *return* Plaintiffs should receive. Avoiding semantics, PPA rates determine *future costs*, while Birnbaum's methodology seeks to calculate *returns*. The two are hardly one in the same. The Court does not disagree with the accuracy of the methodology or its conclusion, but the Court cannot rule that Birnbaum's methodology is sound when the Plaintiffs only attempt to support half of his methodology.

To be clear, the Plaintiffs fail to raise in their briefing and oral argument that Birnbaum's report cites a recognized methodology that mirrors the *reasonable premium relief* methodology. It is not up to the Court to go on expedition to support or create Plaintiffs' arguments. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

The Court cannot simply rely on Plaintiffs' assertions that Birnbaum says that his methodology is rooted in industry standards. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (explaining "[t]he critical inquiry in determining the reliability of expert testimony under . . . *Daubert* is whether there is a connection between the data employed and the opinion

---

[2] The parties engage in extensive briefing on whether the *reasonable rate* is applied *retroactively* or *prospectively*. However, it is unnecessary for the Court to analyze these arguments because its decision does not depend on the definition of a *reasonable rate*.

7

offered; it is the opinion connected to existing data only by the ipse dixit of the expert that is properly excluded."). Plaintiffs must instead show how Birnbaum's methodology is supported by industry standards. They have not.

Plaintiffs argue that this Court should follow *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) (Freeman, J.), where a court found a different plaintiff's expert's testimony was reliable. However, that case involves a different expert, a different report, and is in a different state. The *Day* case is not binding on this Court and the Court does not find it persuasive for the same differentials above.

Related to Plaintiffs' damages methodology, the Court makes clear it did not "recognize" Plaintiffs' damages theory for its truth, when denying the Defendants' motion to dismiss. Instead, the Court gave Plaintiffs an opportunity to produce a sound method to prove damages. For now, Plaintiffs have failed to do so.

For these reasons, the Court grants Defendants' motion to strike.

*Class Certification*[3]

**1. Rule 23(a)**

*a. Numerosity*

Plaintiffs have demonstrated that their proposed classes are sufficiently numerous for class treatment. Numerosity requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). According to the Plaintiffs, the unfairness class will consist of 300,000 members and the deception class will consist of approximately 6,000, under the newly defined class. Obviously, joinder of thousands of plaintiffs would be impracticable. *See Marquez v.*

---

[3] The Court reminds the parties that a finding on the merits is inappropriate at this stage. The Court will consider the merits of this case only if they are relevant to determine if the Plaintiffs satisfy Rule 23's prerequisites for class certification. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

8

*Weinstein, Pinson & Riley, P.S.*, No. 14 C 739, 2017 WL 4164170, at *5 (N.D. Ill. Sept. 20, 2017) (Tharp, J.) ("Although there is no 'magic number' of class members for numerosity purposes, when a class reaches forty, joinder is typically considered impracticable."). Accordingly, Plaintiffs' proposed classes satisfy the numerosity requirement of Rule 23(a).

b. *Commonality*

Only a single common question is necessary to meet the Plaintiffs' burden of establishing commonality. *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016). Plaintiffs satisfy that there are common questions of law and fact related to the unfairness class but do not regarding the deception class.

i. <u>Unfairness Class</u>

Plaintiffs rely on seven questions of fact as to commonality for the unfairness class: (1) "[w]hether GEICO had a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;" (2) "[w]hether GEICO's insurance rates became excessive during the pandemic;" (3) "[w]hether the alleged conduct offends public policy, is immoral, unethical, oppressive, or unscrupulous, and/or causes substantial injury to consumers;" (4) "[w]hether GEICO intended for consumers to rely on the alleged unfair practices;" (5) "[w]hether the alleged unfair practices occurred in a course of conduct involving trade or commerce;" (6) "[w]hether the alleged conduct caused injury to the members of the Unfairness Class;" and (7) "[t]he proper calculation and measure of damages."

GEICO's allegedly unfair practice, which was applied to every GEICO customer, has the potential of satisfying or not satisfying Plaintiffs' claims of the practice offending public policy, is immoral or unethical, or resulted in substantial injury. Accordingly, Plaintiffs satisfy commonality concerning the unfairness class.

9

> ii. *Deception Class*

Plaintiffs present five questions to establish commonality for the deception class: (1) "[w]hether GEICO's statement created a likelihood of deception or had the capacity to deceive;" (2) "[w]hether GEICO intended consumers to rely on the statement;" (3) "[w]hether the statement was made in the course conduct involving trade or commerce;" (4) "[w]hether the alleged conduct caused injury to the members of the Deception Class;" and (5) "[t]he proper calculation and measure of damages."[4]

Opposite of the unfairness class, the "common" questions Plaintiffs present for the deception class are mere recitals of the ICFA elements, which is insufficient for class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (explaining questions like "Is that an unlawful employment practice?" and "What remedies should we get?" are mere recitals, and thus insufficient to establish commonality). These questions do not demonstrate the extent of common injury suffered by the class members, and thus are insufficient for class certification.

c. *Typicality and Adequacy*[5]

Since Defendants have no direct objection to Plaintiff Roxanne Thomas serving as a class representative, the Court solely considers the typicality and adequacy of Plaintiff James Thomas.

Defendants argue that James Thomas is atypical and inadequate because (a) he testified that GEICO "probably" made a commitment to make additional refunds if the pandemic continued, which is not compensable under the ICFA, as such a belief is a breach of contract claim, and (b)

---

[4] Since the Court has accepted Plaintiffs' amendment to the deception class definition, Defendants' argument that the Plaintiffs have not demonstrated commonality since the proposed definition is overly broad is moot.
[5] Because the Defendants raise the same objections of James Thomas's adequacy and typicality, the Court analyzes the two factors together.

10

James Thomas renewed his GEICO policy and is still a GEICO customer today; therefore, he would be subjected to a materiality defense.

Rule 23 requires Plaintiffs' claims and defenses be typical to those of the entire class. Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) *(quoting Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)). Typicality is an important factor because it ensures the named plaintiffs vigorously litigate all classmates claims. *Id.* at 606.

Defendants' reasoning for its typicality opposition is unconvincing. Whether or not James Thomas's deposition testimony changes the nature of his claims, is not for the Court to decide now; such language interpretation will happen at the merits stage. *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 665 (N.D. Ill. 1996) (Castillo, J.) (explaining arguments presented regarding language interpretation of a document was pointless, as the case was at a class certification stage and not the merits stage). The cases that Defendants rely on to support their contention that James Thomas's claim is not compensable resolved issues at the motion to dismiss or summary judgment stage, after a trial, or is not binding on the Court. Too, the fact that James Thomas renewed his policy does not negate typicality, as the unfairness class's definition includes class members who renewed their policies.

Plaintiffs' and the potential unfairness class members' claims arise from the same course of action: GEICO not refunding the Plaintiffs for "excessive" premiums. Plaintiffs' claims and the potential class members claims arise from the same legal theory: a violation of ICFA. Accordingly, Plaintiffs have satisfied the typicality requirement.

The final requirement under Rule 23(a) is that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of

11

representation is composed of two parts: the adequacy of the named plaintiffs' counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). To be an adequate representative, the named plaintiffs must not have "antagonistic or conflicting claims." *Id.* at 598.

There is no dispute that the class counsel is experienced and qualified. Instead, Defendants assert the same arguments of James Thomas being inadequate as they do for him being atypical. For the reasons already stated, the Court rejects these arguments and finds James Thomas adequate because: (a) his claims are based on GEICO's allegedly unfair actions, a violation of the ICFA, which is the same for the proposed class; (b) he has shown his commitment to vigorously prosecuting the litigation, as he has sufficiently participated in the litigation; and (c) he does not have any interests antagonistic to the class, instead he shares the interest of receiving a refund for "excessive" premiums.

2. **Rule 23(b)(3)**

After determining Plaintiffs meet the Rule 23(a)'s requirement regarding the unfairness class, Plaintiffs must also show "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Plaintiffs assert that each essential element of the unfairness class will be met through common proof, applicable to the entire class.[6] "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). In addition, the Supreme Court has made clear that when a court evaluates class certification, plaintiff's

---

[6] Defendants did not raise direct arguments regarding this issue.

12

must show their damages model is capable of measurement on a class wide basis. *Comcast Corp.*, 569 U.S. at 34, 133 S. Ct. 1426. In *Comcast Corp.,* the Supreme Court found that the Third Circuit "ran afoul" to precedent when it did not conduct such an inquiry. *Id.*

Plaintiffs do not have a damages model. Like *Comcast Corp*, the Court reasons: without presenting a reliable methodology, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* Plaintiffs simply do not establish predominance; therefore, the Court need not analyze whether class treatment is the superior method of resolving the controversy. Consequently, the Court denies Plaintiffs' motion for class certification.[7]

**Conclusion**

For the reasons above, the Court grants Defendants' motion to strike Birnbaum's expert report and denies Plaintiffs' motion for class certification.[8] The Court gives Plaintiffs 30 days to cure these deficiencies.

IT IS SO ORDERED.

Date: 3/12/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

---

[7] Plaintiffs request that the Court bifurcate liability or other issues and grant their class certification motion if the Court found the individualization of issues is its basis for denying class certification. Because the outcome of this decision did not depend on the individualized issues, the Court denies Plaintiffs' request.
[8] Plaintiffs request for this Court to appoint David A. Neiman as additional class counsel. Since the Court denies Plaintiffs' motion for class certification, Plaintiffs' request for additional class counsel is moot.