UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES AND ROXANNE THOMAS, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 1:20-cv-04306 |
| GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY, | ) ) Hon. Sharon J. Coleman ) ) ) ) ) |
| Defendants. | ) |

**GEICO'S RESPONSE TO PLAINTIFFS' ATTEMPT
TO CURE DEFICIENCIES IN BIRNBAUM OPINION**

GEICO hereby responds to Plaintiffs' attempt to cure the deficiencies in the opinion of their expert Birny Birnbaum. The Court identified the core deficiency as follows:

> To be clear, the Plaintiffs fail to raise in their briefing and oral argument that Birnbaum's report cites a recognized methodology that mirrors the *reasonable premium relief* methodology.

ECF No. 208, at 7 (italics in original). In their Brief, Plaintiffs identify no such recognized methodology for reasonable premium relief and thus fail in their attempt to cure. Further, the *ipse dixit* and arbitrary nature of Mr. Birnbaum's opinion remains just as true now as then.

The recent amendment of Federal Rule of Evidence 702 reinforces the wisdom of the Court's ruling to strike Mr. Birnbaum's opinion. The Advisory Committee explained that the reason for the amendment to the rule was to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." FED. R. EVID. 702

advisory committee's note to 2023 amendment. "The recent amendment is . . . a refocusing of the Supreme Court's instruction for district court judges to act as a 'gatekeeper' to ensure 'proposed expert testimony "is not only relevant, but reliable"' when testimony is challenged." *West v. Home Depot U.S.A.*, No. 21-CV-1145, 2024 WL 1834112, at *2 (N.D. Ill. Apr. 26, 2024) (quoting *Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024)). *See also In re Paraquat Prods. Liab. Litig.*, No. 3:21-MD-3004-NJR, 2024 WL 1659687, at *33 (S.D. Ill. Apr. 17, 2024) (internal Seventh Circuit citations omitted) ("[R]ule 702 requires more than the label of a reliable methodology. The expert must also 'reliabl[y] appl[y]' her chosen methodology on her way to reaching a conclusion.").

## ARGUMENT

**I. MR. BIRNBAUM IDENTIFIES NO RECOGNIZED METHODOLOGY FOR REASONABLE PREMIUM RELIEF.**

Mr. Birnbaum proposes to do something that has never been done before. There is no recognized methodology to go back in time (starting in early 2020), and purport "prospectively" to calculate new "reasonable rates" against which to measure "excessive profits" at various points in time of his choosing. He cites no standards or procedures from the National Association of Insurance Commissioners (the "NAIC") or from actuarial bodies such as the Casualty Actuarial Society to perform such a time-travel exercise. While he cites the Casualty Actuarial Society and a state regulator, he does not cite recognized methods to do as he proposes – let alone does he then reliably apply them.

Recognized methods are lacking for Mr. Birnbaum's unprecedented calculations for "reasonable premium relief." He identifies no standards to isolate purported "pandemic" factors from other cost factors. He identifies no standards to select parameters for creating new "prospective" rates, including the length of time that the new rates should last and how the new

rates should be applied to in-force policies. And, of course, he identifies no standards for how to create new rates in the past when all "future" information is already known.

Mr. Birnbaum's proposal to create many new "reasonable" rates for past years is wildly inconsistent with industry and actuarial practice, as well as Illinois law. There are no standards dictating the amount of "reasonable rates" in Illinois, which is an "open competition" state. There has been no such statutory or regulatory standard for personal auto insurance rates in Illinois since 1969, as detailed in prior *Daubert* briefing. ECF No. 129, at 6 (discussing, *inter alia*, the Seventh Circuit's incorporation of the non-rebate principle stated in *Couch in Insurance* found in *Mashallah, Inc. v. West Bend Mutual Ins. Co.*, 20 F.4th 311 (7th Cir. 2021)).

Mr. Birnbaum's proposed calculations would be entirely results-oriented. It would be based on his many judgments alone with no standards that could serve as guardrails. If one can be sure of anything, it is that Mr. Birnbaum will not go back in time to identify periods where there should be retroactive *surcharges* on policyholders when insurance volatility swung in the other direction. His calculations would necessarily be "unclear, inconsistently applied, not replicable, and at times transparently reverse-engineered." *In re Paraquat Prods. Liab. Litig.*, No. 3:21-MD-3004-NJR , 2024 WL 1659687, at *33 (S.D. Ill. Apr. 17, 2024) (striking expert report for those reasons). *See also City of Rockford v. Mallinckrodt Ard, Inc.*, No. 3:17-CV-50107, 2024 WL 1363544, at *9 (N.D. Ill. Mar. 29, 2024) (striking damages model of expert as unreliable because proposed use of yardstick was not supported by "reasoned assurance that it is in fact an appropriate point of comparison, [nor by] attempt to analyze the magnitude of any of the factors that might have varied").

Plaintiffs argue as if the flexibility of the *Daubert* standard is a license to have no recognized methods at all, and to have no *Daubert* factors (peer review; general acceptance; error rate; replicability; and so forth). There is no legal support for that proposition, especially in the

3

face of the recent amendments to Rule 702. While Plaintiffs stress that this is a purportedly "unique" situation, there is nothing unique about insurance volatility.[1] ECF No. 210, at 3-5.

Plaintiffs' argument is essentially a (disfavored) motion to reconsider the Court's ruling, not an acceptance of the Court's invitation to identify a recognized methodology for reasonable premium relief. *See Consolino v. Dart*, No. 17-C-9011, 2023 WL 6141311, at *9 (N.D. Ill. Sept. 20, 2023) ("The party seeking reconsideration "bears a heavy burden, and motions for reconsideration 'are not at the disposal of parties who want to "rehash" old arguments.'") (citation omitted).

## II. MR. BIRNBAUM OFFERS IMPERMISSIBLE *IPSE DIXIT* SUPPORT.

Instead of citing and applying recognized methodologies in support of what he proposes to do, Mr. Birnbaum offers *ipse dixit*. While he notes some general industry principles, they do not contain recognized methodologies for his calculations. Instead, his proposal to calculate "reasonable premium relief" impermissibly boils down to his say-so.

In words that resonate here:

> The Court does not simply assume an expert's opinions are reliable and place the burden on the challenging party to prove otherwise, and will not allow an expert to offer opinions to the jury that are based merely on the expert's own say-so. [Plaintiff did not] point[] to any *Daubert* factors, such as whether [the expert's] methodology has been tested, subject to peer review or publication, or has attracted widespread acceptance, or anything else indicating that his [calculations] analysis is reliable by a preponderance of the evidence.

---

[1] Insurance is characterized by swings in profits and losses as events unfold. There are natural and unnatural events that affect costs. There is also cost and labor inflation, as well as potential changes in driving behavior and technology.

Pandemics themselves are also, unfortunately, not unique. There were flu-like pandemics in 1918, 1957, 1968, 2001, and 2009. The severe governmental response to the recent COVID-19 pandemic largely created unusual driving conditions. Fewer miles were driven due to lockdown orders, but accidents were generally worse due to more speeding and less traffic-law enforcement.

*Taylor Made Express, Inc. v. Kidd*, No. 21-C-2903, 2024 WL 197231, at *17 (N.D. Ill. Jan. 18, 2024) (excluding expert testimony). *See also Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) ("[I]t is the opinion connected to existing data 'only by the *ipse dixit* of the expert' that is properly excluded under Rule 702.") (internal citation omitted).

> Examples of *ipse dixit* from his new report include as follows:
>
>> "13. . . . My assessment of the sufficiency of the Giveback credit will be based only on information available to GEICO at the time of the Giveback announcement and as the pandemic developed. Thus, my methodology is consistent with and based on industry-standard prospective ratemaking methodologies." ECF No. 210, Exhibit A, PDF page 18.
>>
>> "17. I offer the practice of state insurance regulators as an example to demonstrate that is it possible, and in fact an industry standard practice, to review and evaluate assumptions in proposed rates – just as my damage methodology proposes to do." *Id.,* page 19.
>>
>> "29. As noted in paragraph 19, my methodology is mainstream and grounded in industry standards. My methodology applies industry standard methods to the unique situation of the pandemic." *Id.,* page 23.
>>
>> "33. Based on my training, experience and these courts' analyses, I believe my methodology in this matter is mainstream and grounded in industry standard practices for which I am well-qualified to calculate damages and to offer the opinions expressed above." *Id.,* page 25.

While Mr. Birnbaum can say that his "methodology" for reasonable premium relief is grounded, consistent, and mainstream, how and where is that supported? It is sheer assertion.

Mr. Birnbaum's ultimate *ipse dixit* is his assertion that his plainly retrospective calculations (it is, of course, now the year 2024) should be regarded as "prospective" and thus pull in traditional prospective ratemaking standards (even though he does not purport to perform full rate-makings!).

> "My assessment of the sufficiency of the Giveback credit will be based only on information available to GEICO at the time of the Giveback announcement and as the pandemic developed. Thus, my methodology is consistent with and based on industry-standard prospective ratemaking methodologies." Exhibit A, PDF page 18.

5

While he can say that his work is "prospective," where and how is that supported? It is purely his say-so. There is no example or standard cited – let alone explained and applied by him – in support of his assertion that he can (reliably) apply prospective ratemaking methodologies.

It is not the duty of the Court or of GEICO to dig through his general statements in search of recognized methodologies. "Experts must show their work if their opinions are to be credited." *City of Rockford v. Mallinckrodt Ard, Inc.*, No. 3:17-CV-50107, 2024 WL 1363544, at *10 (N.D. Ill. Mar. 29, 2024) (striking expert report). Once again, his *ipse dixit* should be rejected.

### III. MR. BIRNBAUM'S PRIOR WORK IN LENDER-PLACED INSURANCE PROVES THE POINT. THERE WAS A RECOGNIZED NAIC METHODOLOGY, AND IT DID NOT CALCULATE "EXCESS PROFITS."

Plaintiffs assert that Mr. Birnbaum's "damages methodology regarding the reasonableness of rates has been accepted by several courts." ECF No. 210, at 10. Plaintiffs are referring to Mr. Birnbaum's prior work in the realm of lender-placed insurance where his testimony was found admissible. These cases concerned disgorgement of an allegedly illegitimate expense, which was a commission alleged to have been an "illegal kickback." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 669 (S.D. Fla. 2012). This is much different than purporting to calculate "excessive profits" in this case.

Plaintiffs are essentially moving to reconsider. Plaintiffs have already made this argument to the Court. *See* ECF No. 145 (Plaintiffs' Memo. In Response to Motion to Strike Expert Report), at 9 n.3 ("Mr. Birnbaum testified that the analysis he performed in the *Williams* and *Kunzelmann* cases—both lender-placed insurance cases that involved proposed prospective rate filings—is 'pretty much the exact same analysis of what was a reasonable charge for lender-placed insurance,' adding 'that's exactly what I'll be doing here'…."). Plaintiffs' second go-round presents nothing new.

In any event, Mr. Birnbaum was then applying a recognized methodology—in particular, a highly specific methodology created by the National Association of Insurance Commissioners for lender-placed insurance. He specified recognized methodologies. In those cases, Mr. Birnbaum proposed to use "the component-rating methodology and the loss-ratio methodology," which are "two methods set out in the NAIC's Creditor Placed Insurance Model Act." *Williams*, 280 F.R.D. at 671.

The attorney who retained Mr. Birnbaum expressly told the Court that Mr. Birnbaum was not calculating new rates:

> "[Plaintiff] is not challenging the rates filed by Defendants' insurers," instead [p]laintiff challenges the manner in which Defendants select insurers, the manipulation of the forced-place insurance, and the impermissible kickbacks that were included in the premiums." [D.E. 64] Moreover, Mr. Birnbaum repeatedly testified that he was not challenging the rates of the insurer." *See* (Ex. G – Birnbaum Dep. 160: 10-21, 212: 8-19, June 20, 2012).

ECF No. 151 (GEICO's Reply in Supp. of Mtn to Strike), Ex. L at 14 (available on PACER at Case 9:11-cv-81373-DMM, ECF No. 79).

This was much different work, as previously litigated by the parties. It is worth adding that Mr. Birnbaum did not need to be an actuary to perform that work in applying the NAIC methodology. He is not an actuary. If he is now purporting to do ratemakings in this case (it remains unclear), then he would be outside of his professional qualifications.

7

## IV. THE "REPORT" INCORPORATED INTO THE COMPLAINT FURTHER PROVES THE POINT.

Plaintiffs cite a May 2020 "report" by the Center for Economic Justice that also proves the point that Mr. Birnbaum would not apply a "traditional" methodology (even if he could time travel back to 2020). ECF No. 129, Ex. G. This report is incorporated by reference into the Complaint. ECF No. 79 (Second Amended Complaint), at ¶ 18. Mr. Birnbaum helped write the following in this report:

> Future projections cannot be reliably made because of the unknown nature of the future COVID-19 infections, government actions to continue or loosen restrictions, the timing of such loosening of restrictions, and the behavioral responses from consumers and businesses once restrictions are loosened. Stated differently, ***predictions for what auto insurance claims will look like over the next six months and how that experience compares to recent historical experience is simply unknowable at this time***.

*Id*., at 18 (emphasis added).

His pitch to state regulators in this report gives away the game. There was (and is) no method to be applied. Rather, Mr. Birnbaum and his organization were looking for extra-legal mandates from state insurance regulators, not the application of any traditional ratemaking standards in light of the "unknowability" of the pandemic's effect on insurance projections. There is simply no way to reconcile what Mr. Birnbaum is saying now (albeit only in his *ipse dixit*, labels-only way) with the analysis that he provided then.

**CONCLUSION**

For the aforementioned reasons, Plaintiffs' attempt to cure the deficiencies in Mr. Birnbaum's proposed opinions should be rejected.

Dated: May 8, 2024

/s/ Ronald M. Lepinskas
Ronald M. Lepinskas (#6216428)
Lexie Haralson
DUANE MORRIS LLP
190 South LaSalle, Suite 3600
Chicago, IL 60603

Damon N. Vocke (admitted *pro hac vice*)
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 8, 2024, I filed **GEICO'S RESPONSE TO PLAINTIFFS' ATTEMPT TO CURE DEFICIENCIES IN BIRNBAUM OPINION** with the Clerk of Court using the CM/ECF system, which will provide automatic notification of such filing to all counsel of record.

                                                                 */s/ Ronald M. Lepinskas*